UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAWRENCE G. FARBER, individually and on behalf of all others similarly situated, | § § § | |
| | § | Civil Action No. 4:15-cv-1367 |
| Plaintiff, | § § | JURY TRIAL DEMAND |
| v. | § § | |
| CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC, CRESTWOOD MIDSTREAM HOLDINGS LP, and CRESTWOOD GAS SERVICES GP, LLC, | § § § § § § § § § § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT

Plaintiff Lawrence G. Farber ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this class action on behalf of the unitholders of common partnership units of Crestwood Midstream Partners LP ("Crestwood Midstream" or the "Partnership") against the members of Crestwood Midstream's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Partnership to Crestwood Equity Partners LP ("Equity Partners") and its general partner, Crestwood Equity GP LLC by means of an unfair process and for an unfair price.

2.      On May 6, 2015, the Buyout Group and the Partnership announced that they had entered into a series of agreements that will culminate in the Equity Partners and Crestwood Equity GP LLC, through CEQP ST SUB LLC and MGP GP, LLC (collectively referred to herein as the "Buyout Group"), acquiring all of the outstanding units of Crestwood Midstream in a unit-for-unit transaction.  Crestwood Midstream unitholders will receive 2.75 common units of Equity Partners for each common unit of Crestwood Midstream they own (the "Merger").  In addition, each preferred unit of Crestwood Midstream will be exchanged for 2.75 preferred units of Equity Partners.

3.      The Board has breached its fiduciary duties by agreeing to the Merger for grossly inadequate consideration.  As described in more detail below, given Crestwood Midstream's recent strong performance and distributions to its unitholders, as well as its future growth prospects, the consideration unitholders will receive is inadequate and undervalues the Partnership.

4.      The Board has exacerbated its breaches of fiduciary duty by agreeing to lock up the Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Partnership.  Specifically, pursuant to the merger agreement dated May 5, 2015 (the "Merger Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that prevents the Partnership from pursuing any alternatives to the Merger; and (ii) a provision that provides the Buyout Group with two business days to match any competing proposal that might arise. In addition, approximately 26% of the Partnership's common units are already "locked up" in favor of the Merger.  In conjunction with the Buyout Group and its affiliates' control of Crestwood Midstream, these provisions substantially and improperly limit

the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Crestwood Midstream.

5.     The Individual Defendants, as defined below, have breached their fiduciary duties of loyalty and due care, and the Buyout Group has aided and abetted such breaches by Crestwood Midstream's officers and directors.   Plaintiff seeks to enjoin the Merger unless and until Defendants cure their breaches of fiduciary duty.

<u>JURISDICTION AND VENUE</u>

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of Florida, and no Defendant is a citizen of Florida.

7.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.     Venue is proper in this district because Crestwood Midstream maintains its principal place of business in this district.

<u>PARTIES</u>

9.     Plaintiff is, and has been at all relevant times, the owner of units of Crestwood Midstream.  Plaintiff is a citizen of Florida.

10.     Crestwood Midstream is a limited partnership organized and existing under the laws of the State of Delaware.  It maintains its principal executive offices at 700 Louisiana Street, Suite 2550, Houston, Texas, 77002.

11.     Defendant Crestwood Midstream GP, LLC ("Crestwood GP") is the general partner of the Partnership. Importantly, as is common among publicly traded limited

partnerships, the Partnership is managed by Crestwood GP's directors and officers.  Crestwood GP is a Delaware limited liability company.

12.     Defendant Robert G. Phillips ("Phillips") has been Chairman, President, and Chief Executive Officer of Crestwood Gas Services GP LLC since October 2010 and of Crestwood Equity GP LLC and Crestwood GP since June 2013.  Defendant Phillips is a citizen of Texas.

13.     Defendant Alvin Bledsoe ("Bledsoe") has been a director of Crestwood GP since 2013.  Defendant Bledsoe is a citizen of Texas.

14.     Defendant Michael G. France ("France") has been a director of Crestwood GP since 2013.  Defendant France is a citizen of Texas.

15.     Defendant Philip D. Gettig ("Gettig") has been a director of Crestwood GP since 2013.  Defendant Gettig is a citizen of Texas.

16.     Defendant Warren H. Gfeller ("Gfeller") has been a director of Crestwood GP since 2011.  Defendant Gfeller is a citizen of Texas.

17.     Defendant David Lumpkins ("Lumpkins") has been a director of Crestwood GP since 2013.  Defendant Lumpkins is a citizen of Texas.

18.     Defendant John J. Sherman ("Sherman") has been a director of Crestwood GP since 2011.  Defendant Sherman is a citizen of Missouri.

19.     Defendant David Wood ("Wood") has been a director of Crestwood GP since 2013.  Defendant Wood is a citizen of Texas.

20.     Defendants referenced in ¶¶ 12 through 19 are collectively referred to as the Individual Defendants or the Board.

21.     Defendant Equity Partners is a Delaware limited partnership.  As Equity Partners is the parent of Crestwood GP, Equity Partners' principal executive offices are also located at 700 Louisiana Street, Suite 2550, Houston, Texas, 77002.

22.     Defendant Crestwood Equity GP LLC is a Delaware limited liability company and is the general partner of Equity Partners.

23.     Defendant CEQP ST SUB LLC is a Delaware limited liability company and a wholly owned subsidiary of Equity Partners.

24.     Defendant MGP GP, LLC is a Delaware limited liability company and a wholly owned subsidiary of Equity Partners.

25.     Defendant Crestwood Midstream Holdings LP is a Delaware limited partnership, and is a party to the Merger Agreement.

26.     Defendant Crestwood Gas Services GP, LLC is a Delaware limited liability company and a wholly owned subsidiary of Crestwood GP, and is a party to the Merger Agreement.

<u>CLASS ACTION ALLEGATIONS</u>

27.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Crestwood Midstream units (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

28.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of May 5, 2015, approximately 187.4 million common

units were represented by the Partnership as outstanding. All members of the Class may be identified from records maintained by Crestwood Midstream or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class, including:

(i) Whether the Individual Defendants breached their fiduciary duties of undivided loyalty or due care with respect to Plaintiff and the other members of the Class in connection with the Merger;

(ii) Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Merger;

(iii) Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Partnership or its assets;

(iv) Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;

(v) Whether the Buyout Group aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(vi) Whether the Class is entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

30.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of the defendants' wrongful conduct as alleged herein.

31.     Plaintiff will fairly and adequately protect the interests of the Class and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

32.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class, and conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.  Moreover, Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

<u>FURTHER SUBSTANTIVE ALLEGATIONS</u>

*<u>Partnership Background and Its Poise for Growth</u>*

33.     Crestwood Midstream was formed in 2004 and was formerly known as Inergy Midstream, L.P.  In 2013, Inergy Midstream, L.P. merged with the former Crestwood Midstream Partners LP ("Legacy Crestwood").  In that transaction, Legacy Crestwood merged into Inergy Midstream, L.P., which then changed its name to Crestwood Midstream Partners LP, the current Crestwood Midstream.

34.     Crestwood GP, the Partnership's general partner, is owned by Equity Partners. As disclosed in the Partnership's most recent Annual Report on Form 10-K, filed by the Partnership with the United States Securities and Exchange Commission on March 2, 2015,

Equity Partners is in turn owned and controlled by First Reserve Management, L.P. ("First Reserve"), and accordingly the Partnership is "effectively controlled by First Reserve."

35.     The Partnership is a master limited partnership that is traded on the New York Stock Exchange ("NYSE") under the symbol "CMLP."   The Partnership's primary business objective is to increase the cash distributions that the Partnership pays to its unitholders by growing Crestwood Midstream's business through the development, acquisition, and operation of additional midstream assets situated near developed and emerging shale resources and premium demand centers.

36.     The Partnership develops, acquires, owns, and operates primarily fee-based assets and operations within the energy midstream sector.  The Partnership's primary operating assets include (a) natural gas facilities with approximately 2.5 Bcf/d (billion cubic feet per day) of gathering capacity, 481 MMcf/d (million cubic feet per day) of processing capacity, 1.1 Bcf/d of firm transmission capacity, and 41 Bcf of certificated working gas storage capacity; (b) natural gas liquid facilities with approximately 1.7 million barrels of storage capacity; and (c) crude oil facilities with approximately 125,000 Bbls/d (barrels per day) of gathering capacity, approximately 1.1 million barrels of storage capacity, 48,000 Bbls/d or transportation capacity, and 160,000 Bbls/d of rail loading capacity.

37.     The Partnership has seen increasing success.   On November 5, 2014, the Partnership issued a press release announcing its financial performance for the third quarter of 2014.  The Partnership generated an impressive $116.2 million in adjusted EBITDA in the third quarter, an increase of 36% over the third quarter of 2013 (based on consolidated financial statements of Inergy and Legacy Crestwood) and a 6% increase over the second quarter of 2014. Further, the Partnership turned in net income of $21.3 million in the third quarter of 2014, an

84% increase over the third quarter of 2013 and 82% higher than the second quarter of 2014. Crestwood Midstream also generated $88.7 million in distributable cash flow in the third quarter. In addition, the Partnership announced a quarterly cash distribution of $0.41 per common unit, which represents a $1.64 per common unit annual distribution.

38.     The Partnership's stellar performance continued in the fourth quarter of 2014.  On February 24, 2015, Crestwood Midstream issued a press release announcing the Partnership's financial results for the fourth quarter and full year 2014.   During the fourth quarter, the Partnership generated $117.7 million in adjusted EBITDA, an increase of 29% over the fourth quarter of 2013.   For the entire year, the Partnership generated adjusted EBITDA of $442.5 million.   In addition, the Partnership generated distributable cash flow in the fourth quarter of $89.1 million, a 39% increase over the fourth quarter of 2013.   The press release quoted Defendant Phillips, who summarized Crestwood Midstream's performance: "Consistent with our 2014 objectives, in the fourth quarter Crestwood delivered another quarter of improved Adjusted EBITDA, distributable cash flow and distribution coverage.   This marks five consecutive quarters of improving sequential operating results and highlights the benefit of our balanced and diverse operating platform to produce consistent results in a challenging market environmnent[.]"   The press release also announced the Partnership's entrance into a joint venture with Brookfield Infrastructure Group to acquire Tres Palacios from Equity Partners for approximately $133 million.   Again, the Partnership paid a quarterly cash distribution of $0.41 per common unit, or $1.64 per common unit on an annualized basis.   In the press release, the Partnership also projected continued cash distributions of $1.64 per common unit in 2015.

39.     The Partnership's growth has continued into 2015.  On May 6, 2015, Crestwood Midstream announced the Partnership's financial results for the first quarter of 2015.   The

Partnership generated $124.7 million in adjusted EBITDA, a 26% increase over the first quarter of 2014.  The Partnership also turned in $21.7 million in net income, almost four times the $5.5 million reported in the first quarter of 2014.  Likewise, the Partnership generated distributable cash flow of $93.1 million in the first quarter of 2015, a 34% increase over the first quarter of 2014.  The press release again quoted Defendant Phillips who summarized the Partnership's performance in the first quarter: "Crestwood Midstream delivered another strong quarter showing the growing contribution of investments completed in late 2013 and 2014, . . . and lower overall operating costs due to our successful cost-cutting initiative completed in the first quarter 2015 . . . .  This continues a string of six consecutive quarters of cash flow growth and improving distribution coverage ratio, which reaffirms the value of Crestwood's diverse midstream portfolio.  Volume growth in the recent quarter highlights the solid activity level of our customers despite lower commodity prices."  The press release also projected that the Partnership was "[o]n track to realize approximately $15 million of savings in 2015 and capture $25 million to $30 million of annual run-rate cost reductions[.]"  Once again, Crestwood Midstream announced a quarterly cash distribution of $0.41 per common unit, or $1.64 per common unit annually.

40.     Despite the Partnership's consistently improving financials and strong cash distribution to unitholders, the Board entered into the Merger for consideration that undervalues the Partnership.

### *The Merger Is Unfair*

41.     In a press release dated May 6, 2015, the Partnership announced that it had entered into a series of transactions that would culminate in the Buyout Group acquiring all of the outstanding Partnership units for 2.75 common units of Equity Partners per Crestwood

Midstream common unit. The total consideration unitholders will receive, based on Equity Partners' closing unit price on May 5, 2015, which was the last trading day prior to the announcement of the Merger, would be $18.76 per common unit.

42.     Given the Partnership's recent strong performance and its positioning for growth, the Merger consideration is inadequate and significantly undervalues the Partnership.

43.     On May 5, 2015, the Partnership's common units closed at $16.00 per common unit on the NYSE. Following the announcement of the Merger, however, the Partnership's common units dropped to $15.31 per common unit. Over the following days, Crestwood Midstream common units would drop to close as low as $14.81 per common unit on May 8, 2015.

44.     Although the press release announcing the Merger claims that the Merger offers a 17% premium to Crestwood Midstream unitholders, given the drop in Equity Partners' common units on the NYSE, the Merger will offer no premium. Following the announcement of the Merger, Equity Partners' units dropped from $6.82 on the NYSE to $5.60 on May 6, and as low as $5.20 per unit on May 8, 2015. At $5.60 per unit, Crestwood Midstream's common unitholders would receive consideration worth only $15.40, a negative premium of 3.75% to the Partnership's closing price on May 5, 2015, the last trading day before the announcement of the Merger.

45.     Further, according to Yahoo Finance, among ten financial institutions, Crestwood Midstream had a high price target of $26.00 per unit, a median target of $17.50 per unit, and a mean target of $18.40 per unit.

46.     In fact, as recently as November 28, 2014, the Partnership's units traded above $20 per unit.

47.     Furthermore, Crestwood Midstream offers superior cash distribution to its unitholders.  As stated above, the Partnership distributed, and plans to continue distributing, $1.64 per common unit annually.  On the other hand, Equity Partners distributed only $0.55 per common unit over the last year.  Adjusting for the Merger's conversion ratio, Crestwood Midstream unitholders would receive only $1.51 per unit on an annual basis for each Crestwood Midstream unit exchanged in the Merger.  Accordingly, the Partnership's unitholders will take approximately a $0.13 per unit cut if the Merger is effectuated. But Crestwood Midstream's unitholders are not being properly compensated for this cut.

48.     In addition, the Merger consideration fails to adequately compensate Crestwood Midstream's unitholders for the significant synergies created by the Merger.  The Partnership's May 6, 2015 press release announcing the Merger disclosed "Strategic Highlights" including, among other things, improvements to Equity Partners' ability "to cover the current $0.55 per unit distribution[.]"  But, while the Partnership's public unitholders will receive insufficient consideration in connection with the Merger, the Partnership's controlling entities will benefit from the synergies inuring to Equity Partners.

49.     Despite the significant synergies inherent in the transaction for the Buyout Group, however, the Board failed to secure a fair price for either the intrinsic value of the Partnership's assets or the value of the Partnership's assets to the Buyout Group.

50.     The Buyout Group is seeking to acquire the Partnership at the most opportune time, at a time when the Partnership is performing very well and is positioned for tremendous growth.

## *The Preclusive Deal Protection Devices*

51.     In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Merger a *fait accompli* and ensure that no competing offers will emerge for the Partnership.

52.     Section 6.7 of the Merger Agreement includes a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by the Buyout Group.  Section 6.7(a) demands that the Partnership refrain from soliciting or encouraging any party to submit a proposal to acquire the Partnership.

53.     Pursuant to § 6.7(c) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify the Buyout Group of the bidder's identity and the terms of the bidder's offer.  Thereafter, § 6.7(c) demands that should the Board determine to enter into a superior competing proposal, it must grant the Buyout Group two business days in which the Partnership must negotiate in good faith with the Buyout Group (if the Buyout Group so desires) and allow the Buyout Group to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

54.     In other words, the Merger Agreement gives the Buyout Group access to any rival bidder's information and allows the Buyout Group a free right to top any superior offer simply by matching it.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse because the Merger Agreement unfairly assures that any "auction" will favor the Buyout Group, which can piggy-back upon the due diligence of the foreclosed second bidder.

55.     Moreover, in connection with the Merger, unitholders who collectively own approximately 26% of Crestwood Midstream's common units, have agreed to vote in favor of the Merger.  Accordingly, 26% of Crestwood Midstream's common units are already "locked up" in favor of the Merger.

56.     Ultimately, these preclusive deal protection provisions illegally restrain the Partnership's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative transaction that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

57.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Partnership unitholders will continue to suffer absent judicial intervention.

<u>CLAIMS FOR RELIEF</u>

**COUNT I**
**Breach of Fiduciary Duties**
**(Against all Individual Defendants)**

58.     Plaintiff repeats all previous allegations as if set forth in full herein.

59.     The Individual Defendants have knowingly and recklessly and in bad faith violated the fiduciary duties of care and loyalty owed to the unitholders of Crestwood Midstream and have acted to put their personal interests ahead of the interests of Crestwood Midstream unitholders.

60.     The Individual Defendants' recommendation of the Merger will result in a change of control of the Partnership, which imposes heightened fiduciary responsibilities to maximize Crestwood Midstream's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

61.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the unitholders of Crestwood Midstream because, among other reasons:

(a)     they failed to take steps to maximize the value of Crestwood Midstream to its public unitholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Crestwood Midstream; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the Board's own interrelationships or connection with the Merger.

62.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Crestwood Midstream's assets and will be prevented from benefiting from a value-maximizing transaction.

63.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger to the irreparable harm of the Class.

64.     Plaintiff and the Class have no adequate remedy at law.

**COUNT II**
**Aiding and Abetting**
**(Against the Buyout Group, Crestwood Midstream Holdings LP, and**
**Crestwood Gas Services GP, LLC)**

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     As alleged in more detail above, Defendants the Buyout Group, Crestwood Midstream Holdings LP, and Crestwood Gas Services GP, LLC have aided and abetted the Individual Defendants' breaches of fiduciary duties.

67.     As a result, Plaintiff and the Class members are being harmed.

68.     Plaintiff and the Class have no adequate remedy at law.

JURY DEMAND

69.     Plaintiff requests a trial by jury of all claims that can be so tried.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B)     enjoining, preliminarily and permanently, the Merger;

(C)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

DATED:  May 20, 2015.

Respectfully submitted,

*/s/ Thomas E. Bilek*

Thomas E. Bilek
TX Bar 02313525 / SDTX Bar 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Counsel for Plaintiff*

**OF COUNSEL:**

Shane T. Rowley
**LEVI & KORSINSKY LLP**
30 Broad Street, 24th Floor
New York, NY  10004
Tel: (212) 363-7500
Fax: (212) 363-7171