UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISAAC ARON, individually and on behalf of all others similarly situated, | § § § | |
| | § | Civil Action No. 4:15-cv-1367 |
| Plaintiff, | § § | |
| v. | § § | |
| CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC, CRESTWOOD MIDSTREAM HOLDINGS LP, and CRESTWOOD GAS SERVICES GP, LLC, | § § § § § § § § § § § § § | |
| Defendants. | § § | |

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    SUMMARY OF THE LITIGATION AND DISCOVERY ..................................... 2

III.   THE SETTLEMENT TERMS ............................................................................. 7

IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............ 7

       A.    Standards for Preliminary Approval ....................................................... 7

       B.    The Proposed Settlement Is Fair, Adequate and Reasonable as It Resulted in
             Midstream Unitholders Receiving Material Financial Projections Before the
             Unitholder Vote and the Hurdles to Establishing Liability and Recovering
             Damages Are Significant ....................................................................... 8

       C.    The Proposed Settlement Class Should Be Certified ............................. 12

             1.    The Proposed Settlement Class Satisfies Rule 23(a) ............... 13

                   a.    The Numerosity Requirement Is Satisfied .................... 13

                   b.    The Commonality Requirement Is Satisfied ................. 13

                   c.    The Typicality Requirement Is Satisfied ...................... 14

                   d.    The Adequacy Requirement Is Satisfied ....................... 14

             2.    The Proposed Settlement Satisfies Rule 23(b) ........................ 15

       D.    The Proposed Plan of Class Notice Is Appropriate .............................. 17

       E.    Proposed Schedule of Events ............................................................... 18

V.     CONCLUSION ................................................................................................ 19

**Cases** **Page(s)**

*Brown v. Brewer*,
    No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010)..................5

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
    No. CV 11-2768 PSG, 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013)................16

*Collier v. BrightPoint, Inc.*,
    No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616 (S.D. Ind. Feb. 21, 2013).........9

*In re Crestwood Midstream Partners Unitholder Litig.*,
    No. 4:13-cv-01528 (S.D. Tex. May 16, 2014), ECF No. 66.....................................................9

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .......................................................................................8, 18

*Dieckman v. Regency GP LP*,
    C.A. No. 11130-CB, 2016 Del. Ch. LEXIS 54 (Del. Ch. Mar. 29, 2016)........................11, 12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................................12

*Emps. Ret. Sys. of St. Louis v. TC Pipelines GP, Inc.*,
    CA No. 11603-VCG, 2016 Del. Ch. LEXIS 71 (Del. Ch. May 11, 2016) ........................11, 12

*Hamilton v. First Am. Title Ins. Co.*,
    266 F.R.D. 153 (N.D. Tex. 2010) ...........................................................................................15

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ...................................................................................................17

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004).............................................................................................14

*Lightbourn v. Cnty. of El Paso*,
    118 F.3d 421 (5th Cir. 1997) ...................................................................................................13

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
    148 F. Supp. 2d 1141 (D. Kan. 2001).......................................................................................6

*McNamara v. Bre-X Minerals Ltd.*,
    214 F.R.D. 424 (E.D. Tex. 2002).......................................................................................8, 13

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ...................................................................................................13

*In re OCA, Inc. Sec. & Derivative Litig.*,
    No. 05-2165, 2008 U.S. Dist. LEXIS 84869 (E.D. La. Oct. 17, 2008) ..............................8, 18

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    MDL No. 2328, 2014 U.S. Dist. LEXIS 178989 (E.D. La. Dec. 31, 2014) ............................8

*Rodriguez v. Countrywide Home Loans, Inc.*,
    695 F.3d 360 (5th Cir. 2012) ........................................................................................16, 17

*In re Schering-Plough/Merck Merger Litig.*,
    No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010).......... *passim*

*Smith v. Crystian*,
    91 F. App'x 952 (5th Cir. 2004) ........................................................................................8

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................................13

*Unger v. Amedisys Inc.*,
    401 F.3d 316 (5th Cir. 2005) ............................................................................................14

## Other Authorities

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Manual for Complex Litigation
    § 21.632 (4th ed. 2004) ....................................................................................................13

# I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(e), lead plaintiff Isaac Aron ("Lead Plaintiff"), on behalf of himself and members of the Settlement Class (defined herein), respectfully requests that the Court grant preliminary approval of the proposed Settlement of this class action litigation (the "Action") against Defendants.[1]  Specifically, Lead Plaintiff seeks entry of the [Proposed] Order Preliminarily Approving Settlement and Providing For Notice (the "Preliminary Order")[2] that will: (i) preliminarily approve the Settlement set forth in the Stipulation of Settlement dated June 13, 2016 (the "Stipulation" or "Settlement");[3] (ii) preliminarily certify, for settlement purposes only, a non-opt-out class consisting of Lead Plaintiff and any and all record holders and beneficial owners of any units of Midstream at any time during the period beginning on and including May 5, 2015, through and including September 30, 2015;[4] (iii) approve as to form, manner, and content the Notice to be provided to

---

[1] Defendants are: Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfeller, David Lumpkins, John J. Sherman, David Wood (collectively the "Board" or the "Individual Defendants"), Crestwood Midstream Partners LP, Crestwood Midstream GP LLC, Crestwood Equity Partners LP ("Equity"), Crestwood Equity GP LLC, CEQP ST Sub LLC, MGP GP, LLC, Crestwood Midstream Holdings LP ("Midstream"), and Crestwood Gas Services GP, LLC.

[2] A copy of the Preliminary Order is attached as Exhibit B to the Stipulation.

[3] A copy of the Stipulation is attached as Exhibit 1 to the Declaration of Juan E. Monteverde in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Monteverde Decl.") filed herewith.

[4] Including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them; provided, however, that the Settlement Class shall not include the Kenneth C. Halter Trust ("Halter Trust"), Glenda S. Moore ("Ms. Moore"), Defendants and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns (the "Settlement Class").  Halter Trust and Ms. Moore previously sought to intervene in this Action, but the Court denied their motion.  Halter Trust and Ms. Moore have been excluded from the Settlement Class and are therefore free to individually pursue any claims they wish.

the Settlement Class[5] and order the direct mailing of the Notice; and (iv) schedule a hearing (the "Settlement Hearing") at which the Court will consider final approval of the Settlement and Lead Plaintiff's request for an award of attorneys' fees and expenses.[6]

For the reasons set forth below, Lead Plaintiff and his counsel ("Plaintiff's Counsel")[7] believe that the Settlement is fair, adequate and reasonable to the Settlement Class and respectfully request that the Court enter the Preliminary Order as submitted.

## II.    SUMMARY OF THE LITIGATION AND DISCOVERY

On May 6, 2015, Midstream and Equity announced that they had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Midstream would merge into a wholly owned subsidiary of Equity, and holders of Midstream common units would receive 2.75 common units of Equity in exchange for each unit of Midstream held (the "Simplification Transaction").

On June 16, 2015, Equity filed with the U.S. Securities and Exchange Commission ("SEC") a preliminary proxy statement/prospectus in a Form S-4 (the "Preliminary Proxy"), which purported to provide Midstream unitholders with all material information about the Simplification Transaction and recommended that they vote to approve it.  However, the

---

[5] A copy of the Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing is attached as Exhibit C to the Stipulation.  The [Proposed] Order and Final Judgment is attached as Exhibit D to the Stipulation.

[6] Although this Motion is unopposed, this Memorandum of Law is submitted solely by Lead Plaintiff and does not in all instances represent the views of Defendants.

[7] Plaintiff's Counsel consists of Lead Counsel Faruqi & Faruqi, LLP (the "Faruqi Firm"), Associate Counsel Monteverde & Associates PC (the "Monteverde Firm"), and Liaison Counsel The Bilek Law Firm, L.L.P (the "Bilek Firm").  On June 9, 2016, Faruqi & Faruqi, LLP, attorneys of record for Lead Plaintiff, associated Monteverde & Associates PC and attorney Juan E. Monteverde as co-counsel for Lead Plaintiff.  ECF No. 53.  Mr. Monteverde was formerly a partner at Faruqi & Faruqi, LLP.

Preliminary Proxy failed to disclose certain material information concerning the Simplification Transaction, including: (i) the terms, risks and benefits of various alternative strategic transactions that were considered for Crestwood; (ii) the compensation received by the financial advisor to the conflicts committee of the Midstream Board (the "Conflicts Committee"), Tudor, Pickering, Holt & Co. Advisors, LLC ("TPH"), for the financial advisory services it provided to Midstream and certain affiliated entities during the past two years; and (iii) complete financial projections prepared by Crestwood management and utilized by TPH in connection with its fairness opinion. Accordingly, on July 21, 2015, Lead Plaintiff filed his complaint alleging that Defendants violated Sections 14(a) and 20 of the Exchange Act by filing the materially incomplete and misleading Preliminary Proxy with the SEC.

Because the unitholder vote on whether or not to approve the Simplification Transaction (the "Unitholder Vote") was scheduled for September 30, 2015, quick and decisive action by Lead Plaintiff and Plaintiff's Counsel was necessary to protect the right of Midstream unitholders to receive all material information necessary for them to cast an informed vote on the Simplification Transaction. Lead Plaintiff, through Plaintiff's Counsel, pressed Defendants to disclose the material information that had been omitted from the Preliminary Proxy prior to the Unitholder Vote. As a result of Lead Plaintiff's litigation efforts, Defendants included certain additional material information concerning the Simplification Transaction in the Amendment Nos. 1 and 2 to the Preliminary Proxy and the definitive proxy statement/prospectus (the "Final Proxy") they caused to be filed with the SEC on July 27, 2015 and August 28, 2015, respectively. *See* Exhibit A-2 to the Stipulation.

However, Defendants continued to omit certain key pieces of material information from the Final Proxy, including certain sets of financial projections for Midstream, Equity and the pro

forma combined company which were specifically relied upon by both the Midstream Conflicts Committee and TPH in deciding whether or not to approve the Simplification Transaction. Without these projections, Midstream unitholders were unable to determine whether Midstream was being fairly valued in connection with the Simplification Transaction.

Accordingly, on September 3, 2015, Lead Plaintiff filed a motion for a preliminary injunction,[8] and on September 17, 2015, Lead Plaintiff filed a motion for a temporary restraining order, expedited preliminary injunction hearing, and preliminary injunction. Lead Plaintiff sought an order enjoining the Unitholder Vote until Defendants provided Midstream unitholders with the material information that remained omitted from the Final Proxy, the most critical of which was the missing financial projections. The Court set a hearing on Lead Plaintiff's motion for September 23, 2015.

On September 22, 2015, after arms'-length negotiations regarding a resolution of Lead Plaintiff's claims asserted in this Action and the relief sought in his preliminary injunction motion, Lead Plaintiff and Defendants entered into a memorandum of understanding ("MOU"). Pursuant to the MOU, Defendants agreed to disseminate the financial projections which were omitted from the Final Proxy to Midstream unitholders prior to the Unitholder Vote by filing a Form 8-K containing the projections with the SEC on September 23, 2015 (the "Supplemental

---

[8] The preliminary injunction motion was filed on behalf of Lead Plaintiff Aron and Lawrence G. Farber, another Midstream unitholder who had commenced an action challenging the Simplification Transaction in this Court. On September 4, 2015, the Court consolidated the Farber action and Aron action. ECF No. 14. On September 16, 2015, Mr. Farber filed a Notice of Dismissal, dismissing his claims against defendants. ECF No. 16. Accordingly, only Lead Plaintiff Aron continued to prosecute this Action to ensure that Defendants disclosed the material information that had been omitted from their SEC filings prior to the Unitholder Vote.

Disclosures"),[9] and further agreed to allow Lead Plaintiff to conduct discovery to confirm the fairness of the proposed Settlement afterwards (the "Confirmatory Discovery").[10]

The Supplemental Disclosures included the "upside case" and "downside case" financial forecasts that were prepared by Crestwood management and relied upon by TPH in opining that the Simplification Transaction was fair to Midstream unitholders. These newly disclosed forecasts provided Midstream unitholders with key line item projections for EBITDA, Distributable Cash Flow, Distributable Cash Flow Per LP Unit, Distributions Per LP Unit, and Growth Capital Expenditures, for both Midstream, Equity and the combined company. As a result of the Supplemental Disclosures, Midstream unitholders were able to assess Crestwood's anticipated future financial performance under various scenarios. The Supplemental Disclosures were thus clearly material to Midstream's unitholders, and necessary for them to cast an adequately informed vote concerning the Simplification Transaction. *See Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. There is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.")[11] (Attached to Appendix and Compendium of Unreported Authorities in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Appendix") at App000016).

---

[9] A copy of the Supplemental Disclosures is attached as Exhibit A-1 to the Stipulation.

[10] Any Midstream unitholder wishing to serve as lead plaintiff was required to file a motion by September 28, 2015. Lead Plaintiff was the only Midstream unitholder that moved to serve as Lead Plaintiff, which the Court appointed him on December 8, 2015. ECF No. 50.

[11] Unless otherwise noted, citations, quotation marks and footnotes are omitted.

It was critical that the Supplemental Disclosures were made before the Unitholder Vote. The forthcoming Unitholder Vote on the Simplification Transaction threatened "the free and intelligent voting rights of [Midstream] shareholders," which would have been forever "forfeited if such votes [were] exercised based upon false or misleading information." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001). "Monetary damages [could not] restore the right of shareholders to effectively exercise their corporate suffrage rights." *Id.* After reviewing Supplemental Disclosures, a majority of Midstream's unitholders nevertheless decided to vote in favor of the Simplification Transaction, which was completed on September 30, 2015.

Following the execution of the MOU, Plaintiff's Counsel conducted discovery to confirm the reasonableness of the terms of the Settlement. In particular, Plaintiff's Counsel reviewed non-public documents produced by Defendants and conducted the depositions of: David Lumpkins, a member of the Midstream Conflicts Committee; Aaron S. Blomquist, a managing director at TPH who was directly involved in advising the Midstream Conflicts Committee; and Robert Thornberry Halpin, III, the Senior Vice President and Chief Financial Officer ("CFO") for Equity. Based upon the discovery conducted and an analysis of potential claims involving the Simplification Transaction, Plaintiff's Counsel has determined, based on their extensive experience litigating shareholder class actions,[12] that the Settlement is fair, adequate and reasonable to Midstream unitholders.

Throughout the litigation, Plaintiff's Counsel conducted a thorough investigation into the facts and law relating to the Simplification Transaction. For instance, Lead Plaintiff retained and consulted with a financial expert, reviewed with the expert the Proxies and the Supplemental

_____

[12] *See* resumes of the Faruqi Firm, Monteverde Firm, and Bilek Firm, attached as Exhibits 2-4 to the Monteverde Decl.

Disclosures, discovery materials and relevant public information. After fully analyzing the merits of all parties' contentions, including the impact of the proposed Settlement on Lead Plaintiff and absent Settlement Class members, Lead Plaintiff and Plaintiff's Counsel entered into a Stipulation of Settlement with Defendants providing for the Settlement described below. Importantly, during the negotiations, all parties had a clear view of the strengths and weaknesses of their respective claims and defenses, and the Settlement is the product of arm's-length negotiations between the parties, who were all represented by counsel with extensive experience and expertise in shareholder litigation.

## III.    THE SETTLEMENT TERMS

The Settlement required Defendants to disclose the omitted financial projections to the Settlement Class, which were material and critical to Midstream unitholders' ability to make a fully informed decision regarding whether to vote for, or against, the Simplification Transaction.

The Stipulation provides that, if the Court approves the Settlement, and in consideration of the Supplemental Disclosures, the Settlement Class will release all claims involving the facts and circumstances that gave rise to the Action and the Simplification Transaction against the Released Persons.[13]

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Standards for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class wide basis. Initially, the Fifth Circuit recognizes a

---

[13] The Released Persons are defined as: "the Defendants, and/or each of their parents, divisions, subsidiaries, predecessors, successors, assigns, affiliates, partnerships, and joint ventures, as well as, solely in their capacities as such, past or present officers, directors, employees, agents, contractors, subcontractors, representatives, auditors, accountants, attorneys, and bankers, including any person or entity controlled by, controlling, or under common control with any of them." Stipulation at § I.A ¶ 17.

"strong judicial policy favoring the resolution of disputes through settlement." *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (quoting *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). "Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

At the preliminary approval stage, "[i]f the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2014 U.S. Dist. LEXIS 178989, at *35 (E.D. La. Dec. 31, 2014) (Appendix at App000036); *In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *37 (E.D. La. Oct. 17, 2008) (same) (Appendix at App000049). Further, in assessing the fairness of a settlement, the Fifth Circuit has instructed courts to consider, amongst other factors, the probability of plaintiffs prevailing on the merits and recovering damages. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007).

**B.      The Proposed Settlement Is Fair, Adequate and Reasonable as It Resulted in Midstream Unitholders Receiving Material Financial Projections Before the Unitholder Vote and the Hurdles to Establishing Liability and Recovering Damages Are Significant**

Preliminary approval should be granted where, as here, the settlement appears sufficiently reasonable and offers the Settlement Class members the opportunity to object. Here,

all considerations support preliminary approval of the Settlement. Indeed, courts across the country have consistently found settlements such as the one obtained here, which provide shareholders with material information they had previously been denied concerning an important corporate transaction, to be fair, adequate and reasonable. *See, e.g., In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 25, 2010) (approving settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly.") (Appendix at App000065); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616, at *3 (S.D. Ind. Feb. 21, 2013) (approving settlement that "compel[led] Defendants to make certain disclosures to Defendants' shareholders.") (Appendix at App000070); Order and Final Judgment, *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528 (S.D. Tex. May 16, 2014), ECF No. 66 (Appendix at App000073-80).

From the initiation of this litigation, Lead Plaintiff and Plaintiff's Counsel vigorously pursued this case to ensure that Midstream unitholders received access to the material information that had been omitted from the Proxy prior to the Unitholder Vote. After Lead Plaintiff filed motions seeking a preliminary injunction and temporary restraining order, Defendants agreed to disseminate the Supplemental Disclosures via a filing with the SEC, thereby rendering Lead Plaintiff's disclosure claims moot.

After Midstream unitholders voted to approve the Simplification Transaction, Plaintiff's Counsel conducted discovery to confirm that the terms of the Settlement are fair, adequate and reasonable. Specifically, Plaintiff's Counsel reviewed various documents and took three depositions during which they explored the strategic review process, the Midstream Conflicts

Committee's process of evaluating the fairness of the Simplification Transaction to Midstream unitholders, the valuation analyses utilized by TPH in support of its fairness opinion, and Crestwood Management's projections and views regarding Crestwood's business operations and the relevant industry. Throughout the litigation, Plaintiff's Counsel consulted with their financial expert, who has extensive experience in valuing companies like Crestwood, to evaluate the consideration to be received by Midstream unitholders.

Lead Plaintiff and Plaintiff's Counsel assured themselves that the process undertaken by the Conflicts Committee in connection with evaluating the Simplification Transaction and valuing Midstream was sufficient and consistent with their obligations pursuant to the Crestwood Partnership Agreement.[14] Lead Plaintiff and Plaintiff's Counsel, only after full evaluation of the strengths and weaknesses of potential claims concerning the Simplification Transaction, arrived at the belief that the Settlement is fair, adequate and reasonable.

As an initial matter, Lead Plaintiff's Section 14(a) claims were rendered moot as a result of the Supplemental Disclosures. And, after conducting discovery, including deposing a Midstream Conflicts Committee member, TPH managing director, and Equity's CFO, Plaintiff's Counsel determined that the probability of succeeding on any available claims related to the Simplification Transaction is exceedingly low.

First, because Midstream is a Delaware limited partnership, Delaware law would govern claims for breach of fiduciary duty and breach of the Crestwood Partnership Agreement. Delaware law allows limited partnerships to "eschew a corporate-style suite of fiduciary duties and rights, and instead to provide for modified versions of such duties and rights—or none at all—by contract." *Emps. Ret. Sys. of St. Louis v. TC Pipelines GP, Inc.*, CA No. 11603-VCG,

---

[14] The rights of Midstream unitholders are governed by the First Amended and Restated Agreement of Limited Partnership of Inergy Midstream, L.P., as amended (the "Crestwood Partnership Agreement"), *available at* http://www.sec.gov/Archives/edgar/data/1304464/000119312511348261/d269161dex42.htm.

2016 Del. Ch. LEXIS 71, at *1 (Del. Ch. May 11, 2016) (Appendix at App000082). Here, the likelihood of succeeding on such claims is exceedingly low in light of a series of recent opinions from the Delaware Court of Chancery, which have consistently held that so long as a limited partnership forms a conflicts committee to approve a potentially conflicted transaction, such a transaction "shall not constitute a breach of the agreement or of any duty stated or implied in law or equity," and that common limited partnership agreement provisions (such as the ones in the Crestwood Partnership Agreement)[15] "preclude[] judicial review of the merger under Delaware law, requiring dismissal of plaintiff's complaint." *Regency GP LP*, 2016 Del. Ch. LEXIS 54, at *2, *4 (collecting cases holding same) (Appendix at App000093); *TC Pipelines GP, Inc.*, 2016 Del. Ch. LEXIS 71, at *13 (same) (Appendix at App000086).

Further, because Midstream unitholders voted to approve the Simplification Transaction after the dissemination of the Supplemental Disclosures, the Crestwood Partnership Agreement provisions concerning unitholder approval "shields a conflicted transaction from review," and renders inquiry into whether or not the conflicts committee functioned properly moot. *Regency GP LP*, 2016 Del. Ch. LEXIS 54, at *20 (Appendix at App000098). And, because it would be

---

[15] Specifically, Section 7.9(b) of the Crestwood Partnership Agreement contains provisions identical to those that the Delaware Court of Chancery has consistently held act as "safe harbor" provisions that shield limited partnerships and their directors from liability. As in *Dieckman v. Regency GP LP*, the Crestwood Partnership Agreement contains a "special approval" safe harbor in section 7.9(c)(i) which shields a conflicted transaction from challenge if the transaction is approved by a conflicts committee consisting of one or more directors, none of whom are officers, directors, employees or security holders of the General Partner or any Affiliate and who meet the independence standards required of directors who serve on an audit committee of a board of directors. C.A. No. 11130-CB, 2016 Del. Ch. LEXIS 54 (Del. Ch. Mar. 29, 2016) (Appendix at App000090-103). Section 7.9(c)(ii) is a "unitholder approval safe harbor" which "shields a transaction if it is approved by a majority of the units not held by the General Partner or by any entity controlling, controlled by, or under common control with it." *Regency*, 2016 Del. Ch. LEXIS 54, at *9 (Appendix at App000095). As in *Regency*, the Crestwood Partnership Agreement also eliminates the Board's fiduciary duties by merely requiring that directors act in good faith and "shall not be subject to any higher standard contemplated hereby or under the Delaware Act or any other law, rule or regulation or at equity." Crestwood Partnership Agreement § 7.9 (a). And, as in *Regency*, "Section 7.10(b) provides a conclusive presumption of good faith when the General Partner acts in reliance on legal or financial advisers." *Compare id.* at 10 (Appendix at App000095) *with* Crestwood Partnership Agreement § 7.10 (b).

exceedingly difficult to establish an underlying claim for breach of fiduciary duty or breach of contract, any potential aiding and abetting claims against TPH or other entities would also be unlikely to succeed.  *See id*. at *38 (Appendix at App000103).

Plaintiff's Counsel also does not believe there is a viable securities fraud claim related to the Simplification Transaction.  To state a Section 10(b) claim, a plaintiff would have to show that some currently unknown material misrepresentation or omission which Defendants made with scienter caused the Class to suffer economic loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Here, it has been over one year since the Simplification Transaction was announced, and no facts have emerged during discovery or publicly to suggest a viable securities fraud claim in connection with the Transaction exists, nor is Plaintiff's Counsel aware of any other counsel investigating such claims.

Accordingly, Lead Plaintiff submits that the proposed Settlement is fair and in the best interests of all Midstream unitholders, meets all indicia of fairness and merits the Court's preliminary approval.

### C.     The Proposed Settlement Class Should Be Certified

In connection with granting preliminary approval of a settlement, the Court should determine whether the proposed Settlement Class is a proper class for settlement purposes.  *See McNamara*, 214 F.R.D. at 426-27; *see also* Manual for Complex Litigation § 21.632 (4th ed. 2004).  The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the requirements of Rule 23(a)(1-4) (i.e., numerosity, commonality, typicality, and adequacy of representation).  Fed. R. Civ. P. 23(a)(1)-(4).

## 1. The Proposed Settlement Class Satisfies Rule 23(a)

### a. The Numerosity Requirement Is Satisfied

The class is so numerous that joinder of all members is impracticable. As of May 4, 2015, over 188 million Midstream common units were outstanding. Because there likely are thousands of Midstream unitholders dispersed throughout the United States, the proposed Settlement Class satisfies the numerosity requirement under Rule 23(a)(1). *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable). In addition, the Settlement Class members are too geographically dispersed to be easily joined into one action. *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011).

### b. The Commonality Requirement Is Satisfied

The commonality requirement under Rule 23(a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Here, issues common to the Settlement Class include, *inter alia*, whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act. As these claims affect the entirety of the Settlement Class equally, the proposed Settlement Class meets the commonality requirement. *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *20 ("A common question of fact concerns whether disclosures, pertaining to the proposed transaction, provided to shareholders for the purpose of voting upon the Schering/Merck merger were adequate.") (Appendix at App000059).

### c. The Typicality Requirement Is Satisfied

The typicality requirement under Rule 23(a)(3) is satisfied because Lead Plaintiff's claims arise from a similar course of conduct and assert the same legal theories as the claims of all Settlement Class members.  *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (typicality is found where claims raised by plaintiffs have "a common source and rest upon the same legal and remedial theories" and "[f]actual differences will not defeat typicality"). Here, the typicality requirement is satisfied because Lead Plaintiff's claims arise from the same nucleus of operative facts that give rise to the claims of other class members (i.e., the Simplification Transaction and the sufficiency of the Proxy) and are based on the same legal theories (i.e. violations of the Exchange Act).  Thus, Lead Plaintiff's claims are typical of the Settlement Class.  *In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *22 ("Typicality is present given that the misconduct at issue concerns whether Defendants fulfilled or disregarded obligations and duties to shareholders in consummating the underlying transaction.") (Appendix at App000059).

### d. The Adequacy Requirement Is Satisfied

Lead Plaintiff has adequately represented the interests of the proposed Settlement Class and has retained counsel qualified to pursue the litigation.  *See Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) ("[C]lass representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members.").  The adequacy requirement is met where, as here, "(1) the named plaintiffs' counsel [prosecuted] the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010).

Lead Plaintiff and Plaintiff's Counsel have fairly and adequately represented and protected the interests of all Settlement Class members, as demonstrated by the record showing vigorous prosecution of this litigation. Plaintiff's Counsel is well qualified to litigate on behalf of the proposed Settlement Class as they have litigated numerous shareholder class actions throughout the country, including in this jurisdiction. There are no conflicts of interest between Lead Plaintiff, Plaintiff's Counsel, and the Settlement Class members because their interests are aligned. Thus, Lead Plaintiff and Plaintiff's Counsel satisfy the adequacy requirement. *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *23-24 ("There is an identity of interest with respect to prospective class members and any potential absentees, therefore, the first prong of the adequacy requirement is satisfied. The national reputation of the firms involved in the present matter along with this Court's previous favorable recognition of these firms satisfies the second prong of the adequacy requirement.") (Appendix at App000060).

### 2. The Proposed Settlement Satisfies Rule 23(b)

In addition to meeting all of the requirements of Rule 23(a), the proposed Settlement Class also satisfies both Rules 23(b)(1) and (b)(2). Rule 23(b)(1) authorizes class certification if "prosecuting separate actions by or against individual members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]" Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Here, because all Settlement Class members are former Midstream unitholders who were impacted by the Simplification Transaction, there is a substantial risk of varying or inconsistent results if the Settlement Class is not certified. For example, while one court may find that Defendants violated the Exchange Act in connection with the Simplification Transaction, another court may reach the opposite conclusion. The possibility of conflicting court orders concerning the claims asserted by Lead Plaintiff on behalf of the Settlement Class shows that certification is warranted under Rule 23(b)(1). *See, e.g., In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of the Class—who are likely geographically dispersed, given that CIL was a publicly-traded company—bring separate claims in scattered courts across the country. Such fragmentation would . . . create a risk of inconsistent judgments.") (Appendix at App000108); *see also In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *25-26 ("The Court agrees that individual suits will likely result in disparate treatment where uniformity is otherwise required and practicable. Therefore, this Court concludes that the provision set forth in Fed. R. Civ. P. 23(b)(1)(A) is satisfied.") (Appendix at App000060).

The Court may also certify a class under Rule 23(b)(2) "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). Here, Defendants have acted on grounds generally applicable to the proposed Settlement Class members, as the Proxy was disseminated to the entire Settlement Class prior to the Simplification Transaction and the Simplification Transaction has affected all Midstream

unitholders in the same way. Further, the relief obtained—dissemination of the Supplemental Disclosures—benefitted all members of the Settlement Class equally. As a result of the Settlement, Defendants agreed to disseminate the material Supplemental Disclosures to Midstream unitholders prior to the Unitholder Vote, and thus all Midstream unitholders were able to make an informed decision whether to vote for or against the Simplification Transaction. Accordingly, a mandatory non opt-out class should be certified under Rules 23(b)(1) and (b)(2). *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *27 (certifying settlement class under 23(b)(1) and (b)(2) where "the underlying factual circumstances revolve around Defendants' conduct towards prospective class members, specifically with respect to disclosures advanced and the circumstances surrounding the consummation of the Merger.") (Appendix at App000060).

### D. The Proposed Plan of Class Notice Is Appropriate

In general, "[n]either a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007). Rule 23(c)(2)(A) provides, however, that the Court "may direct the appropriate notice" to a Rule 23(b)(1) or (b)(2) class.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the [Settlement] proposal." Fed. R. Civ. P. 23(e)(1). Here, Lead Plaintiff and Defendants propose mailing Class members a Notice discussing the background and procedural history of this litigation, including the claims asserted against Defendants; a summary of the Settlement terms; an explanation of the persons and claims being released under the Settlement; a detailed explanation of reasons for the Settlement; a description of the Class; the date, time and place of the hearing for final approval; a statement of the Class members' right to appear and object with or without counsel and the procedures which must be

followed to be heard; a statement that Plaintiff's Counsel intend to petition for an award of attorneys' fees and expenses, and whom to contact if more information about the Settlement is desired. *See* Stipulation at § III and Ex. C. Accordingly, the proposed method and content of Notice comports with the requirements of due process and Rule 23 and should be approved by the Court. *See, e.g., DeHoyos*, 240 F.R.D. at 298 (notice sufficient where it "properly identif[ies] the plaintiff class and generally describe the terms of the settlement so as to alert members with adverse viewpoints to investigate and to come forward and be heard."); *OCA*, 2008 U.S. Dist. LEXIS 84869, at *46-52 (mailing of the notice to brokerage houses and/or shareholders constituted best notice practicable under the circumstances.) (Appendix at App000051-52).

### E.  Proposed Schedule of Events

In connection with the preliminary approval of Settlement, the parties request that the Court establish dates by which Notice of the Settlement will be sent to potential Settlement Class members and by which Settlement Class members may object to the Settlement, and set the final approval hearing date.[16] The following is a proposed schedule of events leading to the final approval hearing:

---

[16] Additionally, in connection with the Settlement, Midstream (or its successor(s) in interest and/or insurer(s)) has agreed to pay Plaintiff's Counsel's attorneys' fees and expenses, as awarded by the Court, in an amount not to exceed $575,000 (the "Fee Award"). The Fee Award was negotiated after all substantive terms of the Settlement were agreed to by the parties. Lead Plaintiff will submit further briefing in support of approval of the Fee Award to the Court prior to the final Settlement Hearing.

| **EVENT** | **DATE** |
| --- | --- |
| Final Settlement Hearing and Hearing on Lead Plaintiff's' application for an award of attorneys' fees and expenses | At the convenience of the Court, at least one hundred (100) calendar days from the entry of the Preliminary Order |
| Deadline for Defendants to serve notice of proposed Settlement upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq.* ("CAFA") | Ten (10) days after the filing of the proposed Settlement in Court |
| Deadline for mailing the Notice to the Settlement Class | Fourteen (14) calendar days from the entry of the Preliminary Order |
| Deadline for filing of Lead Plaintiff's motion for final approval of the Settlement and application for an award of attorneys' fees and expenses ("Motion for Final Approval") | Twenty-eight (28) calendar days prior to the final Settlement Hearing |
| Deadline for Class members to file objections to the Settlement, the Order and Final Judgment to be entered in the Action, and/or the application by Lead Plaintiff and Plaintiff's Counsel for an award of attorneys' fees and expenses | Twenty-one (21) calendar days prior to the final Settlement Hearing |
| Deadline for Parties to file response to any objections | Seven (7) calendar days prior to the final Settlement Hearing |
| Deadline for Defendants to file proof of mailing of the Notice and service of the CAFA Notice with the Court | Ten (10) calendar days prior to the final Settlement Hearing |

This schedule is similar to those used in numerous class action settlements and provides due process to the Settlement Class with respect to their rights concerning the Settlement.

## V.     CONCLUSION

Lead Plaintiff respectfully requests that the Court enter the accompanying Preliminary Order, thereby preliminarily approving the Settlement, conditionally certifying the Settlement Class for settlement purposes, directing that Notice of the proposed Settlement be provided to the

proposed Settlement Class, and setting a date for the final Settlement Hearing (and other applicable deadlines).

DATED:  June 15, 2016.

Respectfully submitted,

_____/s/ Thomas E. Bilek_____
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Tel:  212-983-9330
Fax: 212-983-9331

Juan E. Monteverde
Miles D. Schreiner
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, 59th Floor
New York, NY  10118
Tel.: (212) 971-1341

*Counsel for Lead Plaintiff*

## CERTIFICATE OF CONFERENCE

I hereby certify that Lead Plaintiff's counsel conferred with Defendants' counsel regarding the relief requested in this motion. Although this motion is unopposed, Lead Plaintiff's Memorandum of Law is submitted solely by Lead Plaintiff and does not in all instances represent the views of Defendants.

*/s/ Thomas E. Bilek*
Thomas E. Bilek

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the District CM/ECF system on June 15, 2016, which caused an electronic copy of same to be served automatically upon all counsel of record.

*/s/ Thomas E. Bilek*
Thomas E. Bilek