UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISAAC ARON, individually and on behalf of all others similarly situated, | § § § | |
| | § | Civil Action No. 4:15-cv-1367 |
| Plaintiff, | § § | |
| v. | § § | |
| CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC, CRESTWOOD MIDSTREAM HOLDINGS LP, and CRESTWOOD GAS SERVICES GP, LLC, | § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**DECLARATION OF JUAN E. MONTEVERDE IN SUPPORT OF
LEAD PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Juan E. Monteverde, hereby declare as follows:

1.     I am a member in good standing of the bar of the State of New York and am admitted pro hac vice to this Court.  I am a partner in the law firm of Monteverde & Associates, PC.  I submit this declaration in support of the motion filed by Lead Plaintiff Isaac Aron for: (i) preliminary approval of the Settlement set forth in the Stipulation of Settlement dated June 13, 2016 (the "Stipulation" or "Settlement"); (ii) preliminary certification, for settlement purposes only, of a non-opt-out class consisting of Lead Plaintiff and any and all record holders and beneficial owners of any units of Midstream at any time during the period beginning on and

including May 5, 2015, through and including September 30, 2015;[1] (iii) approval as to form, manner and content of the Notice to be provided to the Settlement Class[2] and order the direct mailing of the Notice; and (iv) schedule a hearing (the "Settlement Hearing") at which the Court will consider final approval of the Settlement and Lead Plaintiff's request for an award of attorneys' fees and expenses.

2.      Attached as Exhibits 1 through 4 are true and correct copies of the following:

Exhibit 1:      Stipulation of Settlement;

Exhibit 2:      Firm resume of Faruqi & Faruqi, LLP;

Exhibit 3:      Firm resume of Monteverde & Associates PC; and

Exhibit 4:      Firm resume of The Bilek Law Firm, L.L.P.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed the 15th day of June, 2016, at New York, New York.

*/s/ Juan E. Monteverde*
JUAN E. MONTEVERDE

---

[1] Including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them; provided, however, that the Settlement Class shall not include the Kenneth C. Halter Trust ("Halter Trust"), Glenda S. Moore ("Ms. Moore"), Defendants and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns (the "Settlement Class").  Halter Trust and Ms. Moore previously sought to intervene in this action, but the Court denied their motion.  Halter Trust and Ms. Moore have been excluded from the Settlement Class and are, therefore, free to individually pursue any claims they wish.

[2] A copy of the Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing (the "Notice") is attached as Exhibit c to the Stipulation.  The proposed Order and Final Judgment is attached as Exhibit D to the Stipulation.

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ISAAC ARON, on behalf of all others similarly situated, <br><br>                      Plaintiff, <br><br> v. <br><br> CRESTWOOD MIDSTREAM PARTNERS, LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC CRESTWOOD MIDSTREAM HOLDINGS LP, AND CRESTWOOD GAS SERVICES GP, LLC, <br><br>                      Defendants. | Civil Action No. 4:15-cv-1367 |

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement and Release ("*Stipulation*" or "*Settlement*") is made and entered into as of the 13th day of June 2016, by and between Isaac Aron, individually and on behalf of all others similarly situated, Crestwood Midstream Partners LP, Crestwood Midstream GP LLC, Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfellar, David Lumpkins, John J. Sherman, David Wood, Crestwood Equity Partners LP, Crestwood Equity GP LLC, CEQP ST Sub LLC, MGP GP, LLC, Crestwood Midstream Holdings LP ("*Crestwood Midstream*"), and Crestwood Gas Services GP LLC (collectively, the

"*Parties*" or individually, "*Party*"), through their respective undersigned counsel, subject to the approval of the Court.

## RECITALS

WHEREAS, on May 6, 2015, Crestwood Midstream and Crestwood Equity announced that they had entered into a definitive merger agreement (the "*Merger Agreement*"), pursuant to which Crestwood Midstream would merge into a wholly-owned subsidiary of Crestwood Equity, and holders of Crestwood Midstream common units would receive 2.75 common units of Crestwood Equity in exchange for each unit of Crestwood Midstream held (the "*Simplification Transaction*");

WHEREAS, based on the closing price of Crestwood Equity common units of $6.82 per unit on May 5, 2015, the last trading day before the Merger Agreement was announced, the consideration to be received by Crestwood Midstream unitholders was valued at $18.76 per unit;

WHEREAS, on June 16, 2015, Crestwood Equity filed with the U.S. Securities and Exchange Commission ("*SEC*") a preliminary proxy statement/prospectus in a Form S-4 (together with any exhibits and annexes attached thereto, and as amended or supplemented from time to time, the "*Preliminary Proxy*"), which, among other things, summarized the Merger Agreement, provided an account of the events leading up to the execution of the Merger Agreement, and summarized the financial analyses conducted by Tudor, Pickering, Holt & Co. Advisors, LLC ("*Tudor*"), who served as one of the financial advisors to the conflicts committee of Crestwood Midstream ("*Crestwood Midstream Conflicts Committee*");

WHEREAS, the defendants in the Lawsuit are Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfellar, David Lumpkins, John J. Sherman, David Wood, Crestwood Midstream Partners LP (the "*Partnership*" or "*Crestwood*

2

*Midstream*"), Crestwood Midstream GP LLC, Crestwood Equity Partners LP ("***Crestwood***

***Equity***"), Crestwood Equity GP LLC, CEQP ST Sub LLC, MGP GP, LLC, Crestwood

Midstream Holdings LP, and Crestwood Gas Services GP LLC (collectively the "***Defendants***");

WHEREAS lead plaintiff Isaac Aron ("***Lead Plaintiff***") filed the Lawsuit styled *Aron v.*

*Crestwood, et al*, No. 4:15-cv-02101, on July 21, 2015 ("***Lawsuit***") in the United States District

Court for the Southern District of Texas on behalf of purported public unitholders of Crestwood

Midstream against Defendants challenging the Simplification Transaction.

WHEREAS, on July 27, 2015, Crestwood Equity filed with the SEC Amendment No. 1

to the Preliminary Proxy; on August 28, 2015, Crestwood Equity filed with the SEC Amendment

No. 2 to the Preliminary Proxy; and on August 28, 2015, Crestwood Equity filed the final proxy

with the SEC on Schedule 14A ("***Final Proxy***");

WHEREAS, Plaintiff alleged that the Merger Agreement was entered into by means of an

unfair process and for an unfair price, and whereas the operative consolidated complaint further

alleged that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934

and Rule 14a-9 promulgated thereunder;

WHEREAS, on July 28, 2015, Plaintiff's counsel sent counsel for Defendants a letter

requesting that Defendants agree to produce certain discovery on an expedited basis, and

subsequently conferred with Defendants' counsel concerning their request;

WHEREAS, on August 4, 2015, counsel for Defendants declined Plaintiff's counsel's

request to produce certain discovery on an expedited basis;

WHEREAS, on August 10, 2015, Kenneth C. Halter Trust, by Kenneth C. Halter Trustee,

filed a complaint styled *Halter Trust v. Crestwood Midstream Partners, L.P.*, Case No. 11380, in

the Delaware Court of Chancery ("***Books and Records Lawsuit***") seeking to inspect and make

copies and extracts of certain books and records of Crestwood Midstream related to the Simplification Transaction;

WHEREAS, on August 11, 2015, Plaintiff's Counsel sent counsel for Defendants a letter stating Plaintiff's intent to move for a preliminary injunction enjoining the unitholder vote on the Simplification Transaction unless Defendants agreed to make certain disclosures in the Final Proxy;

WHEREAS, on September 3, 2015, Lead Plaintiff filed a motion for preliminary injunction;

WHEREAS, on September 4, 2015, the Court in the Lawsuit consolidated the Lawsuit into a previously-filed and related action, filed by Lawrence Farber styled *Farber v. Crestwood Midstream Partners LP*, Case No. 4:15-cv-1367 (S.D. Tex.) for purposes of case management;

WHEREAS, on September 16, 2015, Farber filed a voluntary notice of dismissal, which the Court granted on September 18, 2015;

WHEREAS, on September 17, 2015, Plaintiff filed a motion for a temporary restraining order, Expedited preliminary injunction hearing, and preliminary injunction (the "TRO Motion");

WHEREAS, on September 18, 2015, the Court set a hearing on Plaintiff's TRO Motion for September 23, 2015;

WHEREAS, after arm's-length negotiations, the Parties reached an agreement-in-principle concerning a proposed settlement of the Lawsuit, and whereas on September 22, 2015, after such discussion and negotiation, the Parties entered into a Memorandum of Understanding ("***MOU***") setting forth the terms of their agreement-in-principle;

WHEREAS, pursuant to the terms of the MOU, counsel for Plaintiff requested, and was provided by Crestwood Midstream, certain key documents relating to Plaintiff's claims, including minutes from the meetings of the Crestwood Midstream board of directors (the "***Crestwood Midstream Board***") and the Crestwood Midstream Conflicts Committee approving the Simplification Transaction and final presentations by their financial advisors;

WHEREAS, counsel for Plaintiff have reviewed publicly available documents related to the Simplification Transaction, and reviewed confidential internal documents produced by the Crestwood Midstream Board and the Crestwood Midstream Conflicts Committee, including, without limitation, board minutes, banker books, and financial analyses developed by advisors related to the Simplification Transaction;

WHEREAS, Plaintiff's counsel have engaged and consulted extensively with a financial expert for the purposes of evaluating and prosecuting the claims in the Lawsuit and in connection with the settlement set forth in this Stipulation;

WHEREAS, on September 23, 2015, in conjunction with agreeing to the MOU, Crestwood Midstream filed a Form 8-K supplementing the disclosures contained in its definitive proxy statement/materials filed with the SEC on August 28, 2015 (the "***Supplemental Disclosures***"), a copy of which is attached as <u>Exhibit A-1</u>;

WHEREAS, Defendants further acknowledge that the Supplemental Disclosures were caused by Plaintiff's filing and prosecution of the Lawsuit;

WHEREAS, Defendants further acknowledge that certain disclosures made in Amendments Nos.1 and 2 to the Preliminary Proxy and the Final Proxy, which are set forth in the underlined text in <u>Exhibit A-2</u> hereto, were caused by Plaintiff's filing and prosecution of the Lawsuit;

WHEREAS, on September 30, 2015, Crestwood Midstream unitholders voted to approve the Simplification Transaction, and the Simplification Transaction subsequently closed that same day;

WHEREAS, on November 12, 2015, Glenda S. Moore and Kenneth C. Halter Trust, by Kenneth C. Halter Trustee, ("***Intervenors***"), two former unitholders of Crestwood Midstream, filed a motion to intervene in the Lawsuit;

WHEREAS, on December 8, 2015, the Court appointed Aron as Lead Plaintiff, The Bilek Law Firm, L.L.P. as Liaison Counsel for the Class, and Monteverde & Associates PC as Lead Counsel for the Class in the Lawsuit pursuant to the Private Securities Litigation and Reform Act;

WHEREAS, on December 9, 2015, the Court denied the Intervenors' motion to intervene;

WHEREAS, on February 2, 2016 and continued on February 9, 2016, Plaintiff's counsel conducted the deposition of David Lumpkins, a member of the Crestwood Midstream Conflicts Committee;

WHEREAS, on February 17, 2016, Plaintiff's counsel conducted the deposition of a managing director at Tudor, who served as a financial advisor to the Crestwood Midstream Conflicts Committee;

WHEREAS, on March 14, 2016, following agreement by the parties and production of certain books and records of Crestwood Midstream related to the negotiations leading to the Simplification Transaction, the plaintiff in the Books and Records Lawsuit filed a Stipulation of Dismissal in the Delaware Court of Chancery;

WHEREAS, on May 5, 2016, Plaintiff's counsel conducted the deposition of Robert Thornberry Halpin, III, Senior Vice President and Chief Financial Officer for Crestwood Equity;

WHEREAS, without admitting any wrongdoing or that any of the Supplemental Disclosures were material or required to be made, Defendants acknowledge that the prosecution of the Lawsuit and discussions with counsel for Plaintiff were the sole cause of the Supplemental Disclosures;

WHEREAS, Plaintiff represents that he owned Crestwood Midstream units through the consummation of the Simplification Transaction;

WHEREAS, following a full analysis of the strengths and weaknesses of Plaintiff's claims in the Lawsuit, including review and analysis by Plaintiff's counsel and his retained expert of certain confidential non-public documents produced by Crestwood Midstream and the Crestwood Midstream Conflicts Committee and the depositions of a member of the Crestwood Midstream Conflicts Committee, a representative from Tudor, and Crestwood Midstream's Chief Financial Officer, Plaintiff's counsel have concluded that the terms contained in this Settlement are fair, reasonable and adequate and in the best interests of Crestwood Midstream unitholders and that it is reasonable to pursue a settlement of the Lawsuit based upon those terms and the procedures outlined herein;

WHEREAS, Plaintiff believes that his claims had substantial merit when filed and is settling these claims because he believe that the Supplemental Disclosures provided substantial value to the unitholders of Crestwood Midstream in allowing them to make more fully informed decisions as to how to vote their units on the Simplification Transaction;

WHEREAS, Plaintiff's entry into this Stipulation is not an admission as to the lack of any merit of any of the claims asserted in the Lawsuit;

WHEREAS, Defendants, to avoid the uncertainties, costs, disruption and distraction of further litigation, and without admitting the validity of any allegations made in the Lawsuit, or any liability with respect thereto, have concluded that it is desirable that the claims against them be settled on the terms reflected in this Stipulation;

WHEREAS, in connection with settlement discussion and negotiation leading to the execution of the MOU, counsel for the parties to the Lawsuit did not discuss the propriety or potential amount of any potential application by Plaintiff's counsel for an award of attorneys' fees and expenses until after there was agreement on the material terms of a settlement-in-principle reflected in the MOU; and

WHEREAS, Defendants have denied, and continue to deny, that any of them committed, or aided and abetted the commission of, any breach of fiduciary duty, or violation of any other law, or engaged in any of the wrongful acts alleged in the Lawsuit, and expressly maintain that each of them diligently and scrupulously complied with his, her or its fiduciary and other legal duties, to the extent such duties exist, and is entering into this Stipulation solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, subject to the approval of the Court, for the good and valuable consideration set forth herein and conferred on Plaintiff and the Class (as defined below), as follows:

## I. <u>DEFINITIONS</u>

A.     As used in this Stipulation, the following terms have the meanings specified below:

1.     "***Approval Date***" means the date on which the Court enters its Judgment (as hereinafter defined).

2.    "*Attorneys' Fees and Expenses Award*" means the amount of attorneys' fees and expense reimbursement awarded by the Court in response to Plaintiff's counsel's request pursuant to Section IV.

3.    "*Award Payment Date*" means the date by which Crestwood Midstream shall satisfy the Attorneys' Fees and Expenses Award, which date shall be no later than five (5) Business Days following the entry by the Court of the Attorneys' Fees and Expenses Award either as part of the Judgment or through such other order as the Court may issue following the entry of the Judgment.

4.    "*Business Day*" means a day other than a Saturday, Sunday or Legal Holiday.

5.    "*Claims*" means: (i) any and all causes of action, claims, damages, and awards; (ii) equitable, legal and administrative relief; and/or (iii) interest, demands or rights. "*Claims*" includes, without limitation, claims for contribution, disgorgement, subrogation, rescission, restitution, attorney's fees, costs and/or expenses (except as set forth in this Stipulation with respect to Plaintiff's counsel's fees and expenses), unjust enrichment, and all other forms of recovery or damages of any kind, including those in excess of actual damages and whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source.

6.    "*Court*" means the United States District Court for the Southern District of Texas.

7.    "*Effective Date*" means the date by which all of the following have occurred:  (i) the Settlement has been approved in all material respects by the Court (unless any material change has been agreed upon by the Parties); (ii) the Judgment (defined below) has been

entered by the Court; and (iii) the time to appeal the Judgment has expired without the filing of any appeals, or, in the event of any appeal, an order has been entered dismissing the appeal or affirming the Judgment, and any time period for further appeal, including a petition for writ of certiorari, has expired. The Effective Date shall occur even if an appeal is taken from or review is sought of the Judgment, if such appeal(s) or petition(s) for review concerns solely any award to Plaintiffs' Counsel of attorneys' fees and expenses or the allocation of said attorneys' fees and expenses among counsel.

8. "*Final Settlement Date*" means the date on which the Judgment (as hereinafter defined) of the Court becomes Final.

9. "*Final*" means: (i) if no appeal from the Judgment is taken, the date on which the time for taking such an appeal expires; or (ii) if any appeal is taken, the date on which all appeals, including petitions for rehearing or reargument, petitions for writ of review, and petitions for certiorari or any other form of review, have been finally disposed of (whether through expiration of time to file, denial of any request for review, by affirmance on the merits, or otherwise) in a manner that does not result in any material alteration of the Judgment. Notwithstanding the foregoing, the Court's ruling or failure to rule on any application for attorneys' fees, costs and/or expenses, or any modification of the Attorneys' Fees and Expenses Award, shall not preclude the Judgment from becoming Final.

10. "*Judgment*" means the order and/or judgment of the Court approving the Settlement and dismissing with prejudice the claims asserted in the Lawsuit substantially in the form attached hereto as Exhibit D.

11. "*Legal Holiday*" means any day designated as a federal or Texas state holiday.

12.     "*Notice*" means the legal notice of the terms of the Stipulation in the form attached hereto as Exhibit C.

13.     "*Parties*" means Plaintiff, the Partnership, and Defendants.

14.     "*Plaintiff's counsel*" means the law firms of The Bilek Law Firm, L.L.P. and Monteverde & Associates PC, and their employees, agents, principals, directors, associates, partners and anyone acting on their behalf.

15.     "*Releases*" means the releases set forth in Section II.A.

16.     "*Released Claims*" mean any and all Claims of every nature and description whatsoever against the Released Persons (defined below) that have been or could have been asserted of any nature, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (defined below) that Plaintiff or any or all other members of the Settlement Class (defined below), in their capacity as Crestwood Midstream unitholders, ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type, or in any other capacity, against any of the Released Persons (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including, but not limited to, any claims under federal securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of Crestwood Midstream), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly,  relate to any of the following: (i) the Simplification Transaction, including but not limited to the terms and conditions thereof; (ii) any and all occurrences or matters mentioned or referred to in the Preliminary Proxy, the Final Proxy, or the Supplemental Disclosures

concerning the Simplification Transaction; (iii) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the Simplification Transaction; (iv) negotiations in connection with the Simplification Transaction and with any actual or potential acquirer of Crestwood Midstream; (v) the consideration to be received by Settlement Class (defined below) members or by any other Crestwood Midstream unitholder in connection with the Simplification Transaction; (vi) the Preliminary Proxy or Final Proxy, any other disclosures, public filings, periodic reports, press releases, proxy statements, or other statements issued, made available or filed relating, directly or indirectly,  to the Simplification Transaction; (vii) the fiduciary obligations of the Released Persons (defined below) in connection with the Simplification Transaction or any of the matters mentioned or referred to in the Preliminary Proxy, Final Proxy, or Supplemental Disclosures; (viii) claims for fees, expenses, or costs incurred in prosecuting or settling the Lawsuit, or in connection with any claim for benefits conferred on the Settlement Class (defined below), except as set forth in Section IV; (ix) any of the matters referred to or alleged, or which could have been alleged relating to the Simplification Transaction, in any complaint or amendment(s) thereto filed in the Lawsuit (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "***Released Claims***"); provided, however, that the Released Claims shall not include (i) the right to enforce the Settlement or the terms of this Stipulation, (ii) the claims asserted by plaintiff Kenneth C. Halter Trust in the Books and Records Lawsuit, and (iii) any claims that have been or may be asserted by the Intervenors, on behalf of themselves.  With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Final Settlement Date, the Plaintiff shall expressly waive, and each of

Crestwood Midstream's unitholders by operation of the Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITORS DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

17.    "*Released Persons*" means the Defendants, and/or each of their parents, divisions, subsidiaries, predecessors, successors, assigns, affiliates, partnerships, and joint ventures, as well as, solely in their capacities as such, past or present officers, directors, employees, agents, contractors, subcontractors, representatives, auditors, accountants, attorneys, and bankers, including any person or entity controlled by, controlling, or under common control with any of them.  For the avoidance of doubt, Released Persons shall not mean and does not include any insurance carriers who have issued insurance to (i) the Partnership, (ii) its general partner, and/or (iii) its present and former directors or officers, including Defendants.

18.    "*Scheduling Order*" means the form of order attached hereto as providing for preliminary approval of the Settlement, conditional certification of the Settlement Class, approval of the form of notice to the Class, and scheduling of the Settlement Hearing.

19.    "*Settlement Class*" means Plaintiff and any and all record holders and beneficial owners of any unit(s) of Crestwood Midstream who held any such unit(s) during the period beginning on and including May 5, 2015 through and including September 30, 2015 (the date of consummation of the Simplification Transaction), including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors,

administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them; provided, however, that the Settlement Class shall not include the Intervenors, Defendants and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns.

20.     "*Settlement Hearing*" means the hearing to be held by the Court to determine, among other things, whether the proposed Settlement should be approved as fair, reasonable, and adequate; whether the Judgment approving the Settlement should be entered; and in what amount any award of attorneys' fees should be paid to Plaintiff's counsel for Plaintiff's counsel's efforts in prosecuting the Lawsuits and achieving the Settlement described herein.

21.     "*Unknown Claims*" means any claim that Plaintiff or any other member of Settlement Class does not know or suspect exists in his, her, or its favor at the time of the release of the Released Claims as against the Released Persons,   including without limitation those which, if known, might have affected the decision to enter into the Settlement.

## II. <u>TERMS OF SETTLEMENT</u>

A.     **Releases**

1.     Upon the Final Settlement Date, Defendants, Plaintiff, and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Claims against the Released Persons, as well as any and all Claims, whether known or unknown, arising out of, relating to, or in connection with, the defense, settlement or resolution of the Lawsuit against the Released Persons. Defendants, Plaintiff, and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any

14

Released Person with respect to such Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Claims against the Released Persons except to enforce the Releases and other terms and conditions contained in this Stipulation and/or Judgment entered pursuant thereto. Nothing herein shall in any way impair or restrict Plaintiff's right to seek the Attorneys' Fees and Expenses Award contemplated in Section IV. Nothing herein shall in any way impair or restrict the rights of any Party to enforce the terms of this Stipulation.

2. Upon the Final Settlement Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants, Plaintiff and Plaintiff's counsel from all Claims, whether known or unknown, arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Lawsuit or the Released Claims. Nothing herein shall in any way impair or restrict the right of any Party to enforce the terms of the Stipulation.

3. The Parties expressly acknowledge, and all the members of the Settlement Class shall be deemed to acknowledge that: (i) they may hereafter discover facts in addition to those that they now know or believe to be true with respect to the Lawsuit and the Released Claims; and (ii) they may have sustained damages, losses, fees, costs and/or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs and/or expenses as the Parties and any member of the Settlement Class may have sustained might give rise to additional damages, losses, fees, costs and/or expenses in the future. Nevertheless, the Parties expressly acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that this Stipulation has been negotiated and agreed upon in light of such possible

15

unknown facts and such possible damages, losses, fees, costs and/or expenses, and each expressly waives, or shall be deemed to have waived, any and all rights under California Civil Code section 1542 and under any other federal or state statute or law of similar effect. The Parties expressly acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that this waiver was separately bargained for and is a material term of this Stipulation.

B. **Dismissal of the Lawsuit**

1. The Parties agree that they will ask the Court to approve the Settlement contemplated by this Stipulation and to enter a Judgment substantially in the form attached hereto as Exhibit D.

2. The Lawsuit shall be dismissed with prejudice effective upon entry of an order by the Court declaring the Judgment final. Plaintiff and Defendants shall bear their own fees, costs and expenses, except as expressly provided in this Stipulation or by further order of the Court.

3. For purposes of the Settlement only, and pending the Settlement Hearing, the Lawsuit shall provisionally be certified as a non-opt out class, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure (the "*Class*"). The Class shall include any and all record holders and beneficial, but shall exclude the Intervenors.

4. Isaac Aron shall conditionally be designated as class representative for the Class for the sole purpose of seeking a settlement of the Lawsuit. Also, for settlement purposes only, Plaintiff's counsel shall be designated as interim counsel for the Class.

### III. <u>NOTICE</u>

A.    As soon as practicable after this Settlement has been executed the Parties shall inform the Court of this Stipulation and request the entry of the Scheduling Order substantially in the form attached hereto as <u>Exhibit B</u>.

B.    Within fourteen (14) calendar days after the Scheduling Order is granted, Crestwood Midstream (or its successor(s)) shall mail, or cause to be mailed, to the last known address of each reasonably identifiable member of the Settlement Class, by first class U.S. mail, postage prepaid, a Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing substantially in the form attached hereto as <u>Exhibit C</u>.  All members of the Settlement Class shall be requested to forward the Notice to the beneficial owners of those securities. At least ten (10) calendar days prior to the Settlement Hearing, Defendants' counsel shall file with the Court an appropriate affidavit or declaration with respect to the preparation and mailing of the Notice to the Settlement Class.

### IV. <u>ATTORNEYS' FEES</u>

A.    After they had first negotiated and agreed to the material terms of the MOU— including the contents of the Supplemental Disclosures and the scope of the Releases— Plaintiff's counsel and Defendants' counsel negotiated the amount of attorneys' fees and expenses that, subject to approval by the Court, would be paid to Lead Counsel. As a result of those negotiations, Plaintiff and Defendants have agreed that, at or before the Settlement Hearing, Plaintiff's counsel will apply to the Court for an award of attorneys' fees and expenses (including costs and disbursements) in the amount of $575,000 (the "***Fee Application***"), which petition shall be the sole fee and expense application made in the Lawsuit.  Defendants agree not to oppose such Fee Application.  Crestwood Midstream has agreed that in the event the Court

awards an Attorneys' Fees and Expenses Award, it will, subject to the Court's approval, pay or cause to be paid the Attorneys' Fees and Expenses Award.

B.   Crestwood Midstream (or its successor(s)) shall satisfy the Attorneys' Fees and Expenses Award by the Award Payment Date, subject to the following conditions:

1.   Crestwood Midstream (or its successor(s)) shall deliver the Attorneys' Fees and Expenses Award to Plaintiff's counsel, pursuant to instructions provided by Plaintiff's counsel, which instructions shall be provided to Crestwood Midstream within five (5) Business Days following the Approval Date.

2.   The Attorneys' Fees and Expenses Award shall be the sole aggregate compensation for Plaintiff's counsel and any other counsel representing Plaintiff in connection with the Lawsuit.

3.   Neither Crestwood Midstream nor any other Defendant shall have any liability or responsibility whatsoever with respect to the allocation of the Attorneys' Fees and Expenses Award to Plaintiff's counsel, any other counsel representing Plaintiff, or any other member of the Settlement Class or any other counsel asserting a right to receive any portion of the Attorneys' Fees and Expenses Award.

4.   If, after payment of the Attorneys' Fees and Expenses Award pursuant to this Section IV.B.4, (i) the Attorneys' Fees and Expenses Award is vacated, or (ii) this Stipulation is properly and timely terminated in accordance with its terms (each of (i) and (ii) being a "***Fee Recovery Event***"), Plaintiff's counsel shall, within ten (10) Business Days following such termination, return to Crestwood Midstream the Attorneys' Fees and Expenses Award pursuant to this Section IV.B.4.

5.      If, after payment of the Attorneys' Fees and Expenses Award pursuant to this Section IV.B.5, the Attorneys' Fees and Expenses Award is reduced, Plaintiff's counsel shall, within ten (10) Business Days following such reduction, return to Crestwood Midstream the amount by which the Attorneys' Fees and Expenses Award has been reduced.

C.      Neither any Defendant nor Crestwood Midstream shall be liable for or obligated to pay any fees, expenses, costs or disbursements, or to incur any expense on behalf of, any person or entity (including, without limitation, Plaintiff or Plaintiff's counsel) directly or indirectly, in connection with the Lawsuit or this Stipulation, except as expressly provided for in this Stipulation.  Neither Plaintiff nor Plaintiff's counsel shall be liable for or obligated to pay any fees, expenses, costs or disbursements to, or incur any expenses on behalf of, any person or entity (including, without limitation, any Defendant, Crestwood Midstream, or counsel for the foregoing) directly or indirectly, in connection with the Lawsuit or this Stipulation except as expressly provided for in this Stipulation.

D.      The disposition of the application for attorneys' fees and expenses is not a material term of this Stipulation and may be considered separately from the Settlement.  This Stipulation, the Settlement of the Lawsuit, the entry of Judgment, and whether the Judgment can become Final are not conditioned upon the approval of any award of attorneys' fees, costs and/or expenses, either at all or in any particular amount, by the Court.  In the event that attorneys' fees are not awarded by the Court, or awarded in a manner that is unsatisfactory to any of the Parties, this Stipulation nevertheless shall remain in force.

## V. <u>TERMINATION</u>

A.      In the event that: (i) the Judgment is not entered by the Court or is materially altered by the Court; or (ii) the Judgment does not become Final, this Stipulation shall be

terminated and shall become null and void and of no force and effect and the Parties shall be restored to their respective positions prior to the execution of the Stipulation, unless otherwise agreed to in writing by the Parties.

B.      In the event of termination under Section V.A., this Stipulation shall not be admissible for any purpose in any proceeding before any court or tribunal.  In the event of such termination, all proceedings in the Lawsuit will revert to their status as of September 22, 2015, prior to the execution of the MOU, and they shall proceed in all respects as if the MOU and this Stipulation had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Lawsuit shall be preserved without prejudice in any way, and no materials created by or received from another Party that were used in, obtained during, or related to settlement discussions shall be admissible for any purpose in any court or tribunal or used, absent consent from the disclosing Party, in any other capacity.

## VI.  <u>NO ADMISSION OF LIABILITY</u>

It is expressly understood and agreed that neither this Stipulation nor any act or omission in connection therewith is intended or shall be deemed or argued to be evidence or to constitute as an admission by: (i) the Defendants, or any of them, or Crestwood Midstream, as to the validity of any claims, defenses, other issues raised, or which might be or might have been raised, in the Lawsuit or in any other litigation, or to be evidence of or constitute an admission of any wrongdoing or liability by any of them, and each of them expressly denies any such wrongdoing or liability; or (ii) Plaintiff as to the infirmity of any claim or the validity of any defense.

## VII.  **MISCELLANEOUS PROVISIONS**

A.      The Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by reference.

B.      The Parties agree that in the event of any breach of this Stipulation, all of the Parties' rights and remedies at law, equity or otherwise, are expressly reserved.

C.      The Stipulation may be executed in one or more counterparts, each of which shall be deemed an original and, when taken together with the other signed counterparts, shall constitute one and the same instrument.  Facsimile or PDF signatures shall constitute valid evidence of execution.  The Stipulation shall be deemed to be executed as of the date that all counsel for the Parties have executed a counterpart, even though no single counterpart is executed by all counsel for the Parties.

D.      This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Parties and supersedes any prior written or oral agreements or communications.  No representations, warranties, or inducements have been made to any Party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

E.      The Stipulation may be amended or any of its provisions waived only by written amendment or waiver executed by or on behalf of all Parties or their respective successors-in-interest.

F.      Each Party acknowledges that he, she, or it has been advised by counsel in connection with this Stipulation.

G.      The provisions contained in this Stipulation shall not be deemed a presumption, concession or admission by any Defendant of any fault, liability, or wrongdoing as to any facts

or claims that have been or might have been alleged or asserted in the Lawsuit, or any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, offered in evidence or otherwise used by any person in the Lawsuit, or in any other action or proceeding that has been, will be, or could be brought, whether civil, criminal or administrative, for any purpose other than to enforce the terms of the Stipulation, or as provided for expressly herein.

H.    The provisions contained in this Stipulation shall not be deemed a presumption, concession, or admission by Plaintiff or Plaintiff's counsel in any way regarding the merits of the claims asserted in the Lawsuit, or any other action nor proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, offered in as evidence or otherwise used by any person in the Lawsuit or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than to enforce the terms of the Stipulation, or as provided for expressly herein.

I.    In the event that any dispute arises among or between the Parties regarding the interpretation of this Stipulation, or any provision thereof, the Parties acknowledge and agree that all of the Parties shall be deemed collectively to be the drafting party and any rule of construction pursuant to which ambiguities are to be construed against the drafting party shall not be applicable.

J.    Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other Party.  Waiver by any Party of any breach of this Stipulation by any other Party shall not be

deemed a waiver of any other prior or subsequent breach of this Stipulation, and failure by any Party to assert any claim for breach of this Stipulation shall not be deemed to be a waiver as to that or any other breach and will not preclude any Party from seeking to remedy a breach and enforce the terms of this Stipulation.

K.      Each counsel or other person executing the Stipulation on behalf of any Party hereto warrants that he or she has the full authority to bind his or her principal to this Stipulation.

L.      The Stipulation shall be binding upon, and inure to the benefit of, the heirs, executors, successors and assigns of the Parties.  All Released Parties who are not parties to this Stipulation are intended third-party beneficiaries entitled to enforce the terms of the release set forth herein.

M.      This Stipulation shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to conflict of laws principles.  Any action relating to this Stipulation will be filed exclusively in the Court.   Each Party: (i) consents to personal jurisdiction in any such action (but no other action) brought in the Court; (ii) consents to service of process by registered mail upon such Party and/or such Party's agent; and (iii) waives any objection to venue in the Court and any claim that Texas or the Court is an inconvenient forum.

N.      In addition to the actions specifically provided for in this Stipulation, the Parties will use their best efforts from the date hereof to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable laws, regulations or agreements, to consummate and make effective this Stipulation.  The Parties and their attorneys agree to cooperate fully with one another in seeking the Court's approval of this Stipulation and to use their best efforts to effect the consummation of this Stipulation.  Without

further order of the Court, the Parties may agree to reasonable extensions of time not expressly set by the Court in order to carry out any of the provisions of this Stipulation.

O.     Each Party hereto represents and warrants that he, she or it is the legal owner of all rights and claims attributable to him, her, or it that are the subject matter of this Stipulation and that there has been no assignment, hypothecation or transfer by operation of law or otherwise of any such rights and claims.

IN WITNESS WHEREOF, the Parties have caused the Stipulation to be executed by their duly authorized attorneys and dated June 13, 2016.

DATED: June 13, 2016

**AGREED TO BY:**

**COUNSEL FOR PLAINTIFF ISAAC ARON**

---

Thomas E. Bilek
   State Bar No. 02313525
   Southern District No. 9338
THE BILEK LAW FIRM, L.L.P.
700 Louisiana Street, Suite 3950
Houston, Texas 77002
Telephone: 713.227.7720
Facsimile: 713.227.9404

Nadeem Faruqi
James M. Wilson, Jr.
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
nfaruqi@faruqilaw.com
jwilson@faruqilaw.com

Juan E. Monteverde
Miles D. Schreiner
MONTEVERDE & ASSOCIATES PC
350 Fifth Avenue, 59th Floor
New York, New York 10118
Telephone: 212. 971. 1341
Facsimile: 212. 983. 9331
jmonteverde@monteverdelaw.com
mschreiner@ monteverdelaw.com

**COUNSEL FOR DEFENDANTS CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, WARREN H. GFELLER, JOHN J. SHERMAN, AND DAVID WOOD**

Michael Holmes, Attorney-in-Charge
   Texas Bar No. 24002307
   Southern District No. 23716
Elizabeth C. Brandon
   Texas Bar No. 24049580
   Southern District No. 679826
Olivia D. Howe
   Texas Bar No. 24075669
   Southern District No. 1305651
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: 214.220.7814
Facsimile: 214.999.7814
mholmes@velaw.com
ebrandon@velaw.com

25

**COUNSEL FOR DEFENDANTS
CRESTWOOD EQUITY PARTNERS
LP, CRESTWOOD EQUITY GP LLC,
CEQP ST SUB LLC, MGP GP, LLC,
CRESTWOOD MIDSTREAM
HOLDINGS LP, AND CRESTWOOD
GAS SERVICES GP, LLC**

Greg Waller, Attorney-in-Charge
   Texas Bar No. 00794813
   Southern District No.  20272
Kelly Sandill
   Texas Bar No. 24033094
   Southern District No.  38594
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: 713.220.4790
Facsimile: 713.238.7434
gwaller@andrewskurth.com
ksandill@andrewskurth.com

**COUNSEL FOR DEFENDANTS
PHILIP GETTIG AND DAVID
LUMPKINS**

Kenneth P. Held
   Texas Bar No. 24030333
   Southern District No.  29197
SCHIFFER ODOM HICKS &
   JOHNSON PLLC
700 Louisiana, Suite 2650
Houston, Texas 77002
Telephone: 713.255.4107
Facsimile: 713.357.5160
kheld@sohjlaw.com

US 4188754v.8

26

**COUNSEL FOR DEFENDANTS
CRESTWOOD EQUITY PARTNERS
LP, CRESTWOOD EQUITY GP LLC,
CEQP ST SUB LLC, MGP GP, LLC,
CRESTWOOD MIDSTREAM
HOLDINGS LP, AND CRESTWOOD
GAS SERVICES GP, LLC**

_____

Greg Waller, Attorney-in-Charge
    Texas Bar No. 00794813
    Southern District No.  20272
Kelly Sandill
    Texas Bar No. 24033094
    Southern District No.  38594
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: 713.220.4790
Facsimile: 713.238.7434
gwaller@andrewskurth.com
ksandill@andrewskurth.com


**COUNSEL FOR DEFENDANTS
PHILIP GETTIG AND DAVID
LUMPKINS**

_____

Kenneth P. Held
    Texas Bar No. 24030333
    Southern District No.  29197
SCHIFFER ODOM HICKS &
    JOHNSON PLLC
700 Louisiana, Suite 2650
Houston, Texas 77002
Telephone: 713.255.4107
Facsimile: 713.357.5160
kheld@sohjlaw.com

US 4188754v.8

# EXHIBIT A-1

8-K 1 d85652d8k.htm FORM 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

_____

# FORM 8-K

_____

## CURRENT REPORT

**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): September 22, 2015**

_____

# CRESTWOOD MIDSTREAM PARTNERS LP
**(Exact name of registrant as specified in its charter)**

_____

| Delaware | 001-35377 | 20-1647837 |
|---|---|---|
| **(State or other jurisdiction of incorporation)** | **(Commission File Number)** | **(IRS Employer Identification No.)** |

**700 Louisiana Street, Suite 2550**
**Houston, Texas 77002**
**(Address of principal executive offices) (Zip Code)**

**(832) 519-2200**
**(Registrant's telephone number, including area code)**

_____

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (_see_ General Instruction A.2):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01     Other Events.**

This Current Report on Form 8-K is being filed in connection with a memorandum of understanding (a "memorandum of understanding") regarding the settlement of certain litigation relating to, among other things, the Agreement and Plan of Merger, dated as of May 5, 2015, (the "Merger Agreement"), by and among Crestwood Midstream Partners LP, a Delaware limited partnership (the "Partnership" or "Midstream"), Crestwood Midstream GP, LLC, a Delaware limited liability company and the general partner of Midstream ("Midstream GP"), Crestwood Equity Partners LP, a Delaware limited partnership ("CEQP"), Crestwood Equity GP LLC, a Delaware limited liability company and the general partner of CEQP ("CEQP GP"), CEQP ST SUB LLC, a Delaware limited liability company and a wholly owned subsidiary of CEQP ("MergerCo"), MGP GP, LLC. a Delaware limited liability company and wholly owned subsidiary of CEQP ("MGP GP"), Crestwood Midstream Holdings LP, a Delaware limited partnership ("Midstream Holdings") and Crestwood Gas Services GP, LLC, a Delaware limited liability company and wholly owned subsidiary of Midstream GP ("CGS GP"), pursuant to which, among other things, MergerCo, MGP GP and Midstream Holdings agreed to merge with and into Midstream with Midstream surviving the merger (the "merger").

As previously disclosed in the definitive proxy statement/prospectus filed with the Securities and Exchange Commission (the "SEC") by the Partnership on August 28, 2015 (the "proxy statement/prospectus"), Lawrence Farber and Isaac Aron, two purported unitholders of Crestwood Midstream, each filed a lawsuit in the United States District Court for the Southern District of Texas, Houston Division (the "Court"), on behalf of a purported class of Midstream unitholders. These lawsuits, which name as defendants Midstream, Midstream GP, CEQP, CEQP GP, MergerCo, MGP GP, Midstream Holdings, CGS GP and the members of the board of directors of Midstream GP as defendants (collectively, the "defendants"), assert claims relating to the merger. They were consolidated into a single action captioned: *Aron v. Crestwood Midstream Partners LP, et al.*, *Civil Action No. 4:15-cv-1367* (the "Unitholder Action"), and Plaintiff Farber subsequently dismissed his claims against all the defendants.

Plaintiff in the Unitholder Action generally alleges, among other things, that Midstream GP and certain individual defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder by disseminating a false and materially misleading proxy statement in connection with the merger.

On September 22, 2015, the parties to the Unitholder Action entered into a memorandum of understanding with respect to a proposed settlement of the Unitholder Action. The Partnership believes that the claims asserted in the Unitholder Action are without merit and that no further disclosure is required to supplement the proxy statement/prospectus under applicable laws. However, to avoid the risk that the putative unitholder class action delays or otherwise adversely affects the consummation of the merger and to minimize the expense of defending such action, the Partnership has agreed, pursuant to the terms of the proposed settlement, to make certain supplemental disclosures related to the proposed merger, which are set forth below.

The memorandum of understanding contemplates that the parties will enter into a stipulation of settlement that will contain customary terms, including, but not limited to, the certification of a settlement class and a release, and be subject to customary conditions, including but not limited to, court approval and the closing of the merger. The foregoing terms and conditions will be defined by the stipulation of settlement, and class members will receive a separate notice describing the settlement terms and their rights in connection with the approval of the settlement. In connection with the settlement, the parties also contemplate that plaintiff's counsel will file a petition with the Court for an award of attorneys' fees and expenses. Midstream will pay or cause to be paid any attorneys' fees and expenses awarded by the Court. There can be no assurance that the parties will ultimately enter into a stipulation of settlement or that the Court will approve the settlement even if the parties were to enter into such stipulation. In such event, the proposed settlement as contemplated by the memorandum of understanding may be terminated.

2

**SUPPLEMENT TO PROXY STATEMENT/PROSPECTUS**

*In connection with the settlement of the outstanding Unitholder Action in the United States District Court for the Southern District Court of Texas, Houston Division, as described in this Current Report on Form 8–K, Midstream has agreed to make these supplemental disclosures to the proxy statement/prospectus. This supplemental information should be read in conjunction with the proxy statement/prospectus, which should be read in its entirety. Capitalized terms used but not defined herein have the meanings ascribed to such terms in the proxy statement/prospectus.*

*The unaudited financial projections disclosed below speak only as of the date they were prepared and delivered, and not as of the time of the filing of this Current Report, the time that the merger will be completed nor any other date. The unaudited financial projections have not been updated to reflect any new information available since the time they were originally prepared and delivered nor are they being disclosed for any reason other than in connection with the settlement of the Unitholder Action as described in this Current Report.*

**Proposal 1: The Merger—Background of the Merger—Unaudited Financial Projections**

*The following disclosure supplements the base case projections provided in the table beginning on page 68 of the proxy statement/prospectus. The following upside case and downside case projections should be inserted immediately following such table:*

**Upside Case**

| | | Projections | | | |
|---|---|---|---|---|---|
| *($ millions)* | 2015[1] | 2016 | 2017 | 2018 | 2019 |
| **EBITDA** | | | | | |
| CMLP | $ 514 | $ 588 | $ 719 | $ 878 | $   995 |
| CEQP | $   59 | $   62 | $   74 | $   78 | $     82 |
| Pro Forma CEQP[2] | $ 578 | $ 655 | $ 798 | $ 961 | $1,082 |
| **Distributable Cash Flow** | | | | | |
| CMLP[3] | $ 354 | $ 413 | $ 491 | $ 593 | $   696 |
| CEQP | $   77 | $   91 | $ 131 | $ 180 | $   228 |
| Pro Forma CEQP[3][4] | $ 396 | $ 460 | $ 547 | $ 654 | $   760 |
| **Distributable Cash Flow Per LP Unit** | | | | | |
| CMLP[2] | $1.66 | $1.71 | $1.85 | $2.03 | $ 2.21 |
| CEQP | $0.41 | $0.49 | $0.70 | $0.96 | $ 1.22 |
| Pro Forma CEQP[3][4] | $0.58 | $0.62 | $0.72 | $0.85 | $ 0.97 |
| **Distributions Per LP Unit** | | | | | |
| CMLP | $1.64 | $1.67 | $1.79 | $1.97 | $ 2.14 |
| CEQP | $0.55 | $0.55 | $0.70 | $0.96 | $ 1.22 |
| Pro Forma CEQP | $0.55 | $0.59 | $0.69 | $0.81 | $ 0.93 |
| **Growth Capital Expenditures** | | | | | |
| CMLP[5] | $ 340 | $ 678 | $ 590 | $ 454 | $   369 |
| CEQP | $     7 | $     5 | $     5 | $     5 | $       5 |
| Pro Forma CEQP[5] | $ 347 | $ 682 | $ 594 | $ 459 | $   374 |

3

Notes:
(1)  Assumes 1/1/2015 effective date.
(2)  Pro forma CEQP EBITDA assumes $5 million of public company synergies.
(3)  Represents adjusted distributable cash flow available to common unitholders. Includes deduct for GE Preferred and Class A Preferred cash distributions (Class A units become cash pay in 2017).
(4)  Does not include CEQP DCF attributable to the cash received for the 7.2 million LP units and GP / IDR interest that CEQP owns in CMLP.
(5)  Excludes $40 million earn-out payment paid to Antero in February 2015.

**Downside Case**

| *($ millions)* | **2015[1]** | **2016** | **2017** | **2018** | **2019** |
|---|---|---|---|---|---|
| | | Projections | | | |
| **EBITDA** | | | | | |
| CMLP | $ 480 | $ 470 | $ 534 | $ 591 | $ 631 |
| CEQP | $ 59 | $ 62 | $ 74 | $ 78 | $ 82 |
| Pro Forma CEQP[2] | $ 544 | $ 537 | $ 613 | $ 675 | $ 717 |
| **Distributable Cash Flow** | | | | | |
| CMLP[3] | $ 321 | $ 309 | $ 330 | $ 347 | $ 386 |
| CEQP | $ 77 | $ 80 | $ 90 | $ 94 | $ 112 |
| Pro Forma CEQP[3][4] | $ 364 | $ 359 | $ 394 | $ 415 | $ 457 |
| **Distributable Cash Flow Per LP Unit** | | | | | |
| CMLP[2] | $1.57 | $1.56 | $1.62 | $1.66 | $1.76 |
| CEQP | $0.41 | $0.43 | $0.48 | $0.50 | $0.60 |
| Pro Forma CEQP[3][4] | $0.53 | $0.51 | $0.55 | $0.58 | $0.64 |
| **Distributions Per LP Unit** | | | | | |
| CMLP | $1.64 | $1.64 | $1.64 | $1.64 | $1.72 |
| CEQP | $0.55 | $0.55 | $0.55 | $0.55 | $0.60 |
| Pro Forma CEQP | $0.55 | $0.55 | $0.55 | $0.55 | $0.61 |
| **Growth Capital Expenditures** | | | | | |
| CMLP[5] | $ 128 | $ 145 | $ 203 | $ 71 | $ 40 |
| CEQP | $ 7 | $ 5 | $ 5 | $ 5 | $ 5 |
| Pro Forma CEQP[5] | $ 135 | $ 150 | $ 207 | $ 76 | $ 45 |

4

Notes:
(1)  Assumes 1/1/2015 effective date.
(2)  Pro forma CEQP EBITDA assumes $5 million of public company synergies.
(3)  Represents adjusted distributable cash flow available to common unitholders. Includes deduct for GE Preferred and Class A Preferred cash distributions (Class A units become cash pay in 2017).
(4)  Does not include CEQP DCF attributable to the cash received for the 7.2 million LP units and GP / IDR interest that CEQP owns in CMLP.
(5)  Excludes $40 million earn-out payment paid to Antero in February 2015.

**Cautionary Note Regarding Forward-Looking Statements**

This communication contains "forward-looking statements" which may describe the Partnership's objectives, expected results of operations, targets, plans, strategies, costs, anticipated capital expenditures, potential acquisitions, management's expectations, beliefs or goals regarding the proposed transaction between the Partnership and CEQP, the expected timing of that transaction and the future financial and/or operating impact of that transaction-including the anticipated integration process and any related benefits, opportunities or synergies. These statements are based on current plans, expectations and projections and involve a number of risks and uncertainties that could cause actual results and events to vary materially, including but not limited to: the possibility that expected cost reductions will not be realized, or will not be realized within the expected timeframe; fluctuations in crude oil, natural gas and NGL prices (including, without limitation, lower commodity prices for sustained periods of time); the extent and success of drilling efforts, as well as the extent and quality of natural gas and crude oil volumes produced within proximity of CEQP or the Partnership assets; failure or delays by customers in achieving expected production in their oil and gas projects; competitive conditions in the industry and their impact on our ability to connect supplies to CEQP or Partnership gathering, processing and transportation assets or systems; actions or inactions taken or non-performance by third parties, including suppliers, contractors, operators, processors, transporters and customers; the ability of CEQP or the Partnership to consummate acquisitions, successfully integrate the acquired businesses, realize any cost savings and other synergies from any acquisition; changes in the availability and cost of capital; operating hazards, natural disasters, weather-related delays, casualty losses and other matters beyond CEQP's or the Partnership's control; timely receipt of necessary government approvals and permits, the ability of CEQP or the Partnership to control the costs of construction, including costs of materials, labor and right-of-way and other factors that may impact CEQP's or the Partnership's ability to complete projects within budget and on schedule; the effects of existing and future laws and governmental regulations, including environmental and climate change requirements; the effects of existing and future litigation; risks related to the substantial indebtedness, of either company, as well as other factors disclosed in CEQP's or the Partnership's filings with the U.S. Securities and Exchange Commission; and other unforeseen factors.

For a full discussion of these and other risks and uncertainties, refer to the "Risk Factors" sections of CEQP's and the Partnership's most recently filed annual reports on Form 10-K and subsequent quarterly filings. These forward-looking statements are based on and include our estimates as of the date they were originally made. Subsequent events and market developments could cause our estimates to change. While we may elect to update these forward-looking statements at some point in the future, we specifically disclaim any obligation to do so, even if new information becomes available, except as may be required by applicable law.

**Additional Information about the Proposed Transaction and Where to Find It**

This communication contains information about a proposed merger between Midstream and CEQP. In connection with the proposed merger, CEQP has filed with the SEC, and the SEC declared effective on August 28, 2015, a registration statement on Form S-4, which includes Midstream's proxy statement as part of the proxy statement/prospectus, that provides details of the proposed merger and the attendant benefits and risks. This communication is not a substitute for the proxy statement/prospectus or any other document that Midstream or CEQP may file with the SEC or send to unitholders in connection with the proposed merger. **Investors and security holders are urged to read the proxy statement/prospectus, and all other relevant documents filed with the SEC or sent to unitholders as they become available because they will contain important information about the proposed merger.** Investors and unitholders will be able to obtain these materials and other documents filed with the SEC free of charge at the SEC's website, www.sec.gov. In addition, copies of the registration statement including the proxy

statement/prospectus may be obtained free of charge by accessing Midstream's website at www.crestwoodlp.com by clicking on the "Investor Relations" link, or upon written request to Crestwood Midstream Partners LP, 700 Louisiana Street, Suite 2550, Houston, TX 77002, Attention: Investor Relations, or from CEQP by accessing CEQP's website at www.crestwoodlp.com or upon written request to Crestwood Equity Partners LP, 700 Louisiana Street, Suite 2550, Houston, TX 77002, Attention: Investor Relations. Unitholders may also read and copy any reports, statements and other information filed by Midstream or CEQP with the SEC, at the SEC public reference room at 100 F Street, N.E., Washington D.C. 20549. Please call the SEC at 1-800-SEC-0330 or visit the SEC's website for further information on its public reference room.

This communication does not constitute an offer to sell, or the solicitation of an offer to buy, any securities, or a solicitation of any vote or approval.

6

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

CRESTWOOD MIDSTREAM PARTNERS LP

By:    Crestwood Midstream GP, LLC,
        its General Partner

Date: September 22, 2015                    By:    /s/ Robert T. Halpin
                                                   Name: Robert T. Halpin
                                                   Title: Senior Vice President and Chief Financial Officer

# EXHIBIT A-2

familiarity with and interest in the Crestwood platform, (ii) a firm's appetite for large-scale investments, (iii) a firm's stated desire to own and control an MLP platform and the firm's track record of executing on that strategy and (iv) a firm's existing portfolio of midstream assets that could potentially be contributed to a transaction. After numerous discussions with multiple candidates, Crestwood's senior management selected two institutional investors ("Sponsor A" and "Sponsor B," respectively), and together the "Potential Sponsors"), for advance negotiations and due diligence. Among other things, Messrs. Phillips, Halpin and Moore conducted management presentations for each Potential Sponsor in October and discussed potential structures in which the investors would commit capital to the Crestwood Entities to fund acquisitions and growth projects.

On November 13, 2014, at the regularly scheduled quarterly meeting of the Crestwood Boards in Houston, representatives of Citi reviewed various strategic alternatives potentially available to Crestwood, including: (i) an NGL drop-down; (ii) a simplification transaction whereby CEQP and Midstream would merge, resulting in a single publicly traded entity (a "Simplification Transaction"); (iii) a merger with another MLP involving a unit exchange; (iv) a sale of Crestwood to a large-cap MLP for cash consideration or an exchange of units; (v) a new private equity sponsor combined with an asset contribution; and (vi) an asset contribution from a strategic counterparty in exchange for CEQP equity interests. Citi outlined the benefits, challenges and actionability of each alternative.

In November 2014, Citi was contacted by a representative of an MLP merger candidate who expressed interest in a potential merger transaction ("Project Thunder").

In December 2014, Messrs. Phillips, Halpin and Moore met with Sponsor B after attending an MLP investor conference in New York. Sponsor B provided an update on their due diligence progress and discussed certain challenges associated with the proposed structure for their investment. Sponsor B expressed strong interest in pursuing other investment alternatives with Crestwood, including approaching First Reserve about taking CEQP private. Despite some continued inquiry, discussions between Sponsor B and First Reserve generally concluded and no formalized proposals were ever received from Sponsor B.

On January 22, 2015, the Crestwood Boards held a telephonic meeting to declare the fourth quarter distributions. During the meeting, Mr. Phillips provided an update on Project Thunder and a potential preferred equity investment at CEQP, each of which would have likely required a drop-down of CEQP's operating assets to Midstream. Thereafter, the Crestwood Boards authorized the CEQP Conflicts Committee and the Midstream Conflicts Committee, respectively, to retain counsel and financial advisors to begin review of a potential NGL drop-down.

On January 26, 2015, representatives of First Reserve and Messrs. Phillips, Halpin and Moore met with Sponsor A in Houston to discuss potential governance terms for an investment whereby Sponsor A would become a co-sponsor of Crestwood with First Reserve.

On January 27, 2015, the merger candidate in Project Thunder delivered a non-binding term sheet to Crestwood outlining the structure and general terms (but no financial terms) of a merger transaction.

On February 2, 2015, Sponsor A submitted a term sheet to First Reserve outlining the framework under which it would make a $250 million preferred equity investment in CEQP concurrent with an NGL drop-down, and would commit approximately $1.0 billion to Crestwood to fund acquisitions and investment opportunities. The proposed terms for the preferred equity included a fixed issuance price per unit, convertibility into common units, and a fixed quarterly dividend, payable in kind for up to three years. Terms of the additional approximately $1.0 billion commitment were not specified. Following several clarification calls with Sponsor A, First Reserve and Crestwood's management made a counterproposal to Sponsor A on February 6, 2015. The terms of the preferred equity in the counterproposal included an issuance price at a specified premium to the common unit market price based on the conversion of the preferred units and a lower quarterly dividend than originally proposed, also payable in kind for up to three years.

On February 12, 2015, at the regularly scheduled quarterly meeting of the Crestwood Boards, senior management provided an update on the status of various strategic alternatives under consideration, including (i) Project Thunder, (ii) a CEQP restructuring with the introduction of a co-sponsor combined with an NGL drop-down, including management's conversations with Sponsor A, (iii) the Simplification Transaction, and (iv) the potential sale to third parties of certain assets and operations. Mr. Phillips noted that although senior management continues to search for a merger partner, the Project Thunder discussions were progressing slower than expected and senior management's focus had shifted to alternatives more within Crestwood's control, including an NGL drop-down.

Also on February 12, 2015, Sponsor A provided a revised term sheet to First Reserve and Crestwood's senior management. The terms of the preferred equity in Sponsor A's revised term sheet generally accepted the terms proposed by Crestwood on February 6, 2015, but included a preferred dividend that began to increase after four years. The term sheet also proposed certain approval rights for the holders of the preferred equity relating to specified types of transactions by Crestwood.

On February 25, 2015, the Crestwood Boards held a telephonic meeting to review management's recommendations with respect to the NGL drop-down and, concurrently therewith, a potential equity investment at CEQP, where Sponsor A would become a co-sponsor with First Reserve. Senior management noted that in connection with the potential CEQP equity investment, management was evaluating a potential joint bid with Sponsor A to acquire certain midstream assets of an independent crude oil exploration and production company.

On March 4, 2015, Crestwood engaged Citi to provide to First Reserve and the Crestwood Entities financial advice and analysis concerning the Simplification Transaction. Given the size and complexity of the Simplification Transaction, Crestwood and First Reserve determined that it would be prudent to hire Citi in order to provide additional financial analysis and capital markets perspective for the Simplification Transaction.

On March 24, 2015, representatives from First Reserve and Sponsor A discussed governance issues relating to the co-sponsorship investment described in the term sheet received on February 12. As a part of those discussions, the two parties agreed the right framework had been developed for a partnership going forward, but without a sizable acquisition or investment opportunity as a catalyst, it would be difficult for Sponsor A to obtain equal governance rights with First Reserve and its existing capital investment in Crestwood. Both parties expressed a desire to continue to develop and pursue investment opportunities and, as opportunities materialized, to revisit co-sponsorship discussions.

On March 25, 2015, senior management of the Crestwood Entities, Citi and First Reserve held a strategic alternatives discussion during which time the participants reviewed the analysis, merits and considerations of an NGL drop-down as compared to the Simplification Transaction.

On April 2, 2015, CEQP GP, in its capacity as the general partner of CEQP, engaged Andrews Kurth LLP ("AK") as legal advisor to CEQP.

On April 7, 2015, Crestwood's senior management participated in a joint management presentation for Project Thunder.

On April 7, 2015, Mr. Phillips provided an update to the Crestwood Boards on the status of each strategic alternative under consideration. He noted that another mid-cap MLP had recently approached First Reserve and expressed interest in a potential combination with Crestwood ("Project Orion"), and a confidentiality agreement had been executed to facilitate further discussions and due diligence. Mr. Phillips further indicated that (i) senior management and Citi agreed that any realistic opportunities to create a so-called "Devon-Crosstex" merger (in which Crestwood would become the drop-down conduit for an oil and gas producer's midstream assets) had been exhausted, (ii) after more thorough analysis, an NGL drop-down was believed to be prohibitively dilutive to CEQP given its already low distribution coverage ratio and, consequently, the alternative was no longer considered viable by senior management, and (iii) senior management, First Reserve and Citi had increased their efforts around the Simplification Transaction. Mr. Phillips also explained that Crestwood's management

would continue to develop and pursue Projects Thunder and Orion—recognizing that Crestwood management was not in control of those transactions and was dependent upon the counterparty's desire to progress those merger opportunities.

On April 13, 2015, at the meetings of the Crestwood Boards, members of the boards again reviewed each strategic alternative then under consideration and discussed with Citi a comparison of the benefits and disadvantages of a potential NGL drop-down and a Simplification Transaction. The strategic alternatives reviewed by senior management and Citi at the meetings included (i) potential third-party mergers, including the status of Project Thunder and Project Orion as well as an overview of all merger-related activities dating back to February 2014, (ii) a "status quo" strategy, (iii) the Simplification Transaction, (iv) NGL drop-down (v) new sponsor or co-sponsor opportunities, and (vi) a sale of the Crestwood Entities. Mr. Halpin and Citi reviewed in greater detail the Simplification Transaction, its merits and considerations relative to other alternatives within Crestwood's control and an indicative timeline for execution. The merits of the Simplification Transaction discussed by Citi and Mr. Halpin included that (a) the resulting simplified corporate structure would eliminate potential conflicts of interest issues and create an attractive platform to a broader group of consolidation candidates, (b) elimination of the IDRs would drive cost of capital improvement to better finance the combined company's growth, (c) substantial general and administrative expense ("G&A") and fixed charge reductions would further benefit the combined company's results from operations and its ability to grow its business, and (d) execution of the Simplification Transaction would be largely within Crestwood's control. Representatives from AK then reviewed the Crestwood Boards' duties and responsibilities in evaluating all of the strategic alternatives, including the Simplification Transaction, described the approval process for an affiliated transaction and reviewed the relevant provisions of the Crestwood partnership agreements. Thereafter, the Crestwood Boards authorized the CEQP Conflicts Committee and the Midstream Conflicts Committee, respectively, to review the proposed Simplification Transaction.

On April 14, 2015, Midstream contacted representatives of Paul Hastings LLP ("Paul Hastings") to discuss its potential engagement by the Midstream Conflicts Committee regarding the Simplification Transaction.

On April 16, 2015, the Midstream Conflicts Committee confirmed the engagement of Paul Hastings as its legal counsel. Paul Hastings was selected by the Midstream Conflicts Committee because of its prior work for the Midstream Conflicts Committee and its knowledge and familiarity with Midstream and the industry in which it operates.

On April 16, 2015, Crestwood received a non-binding offer from an affiliated party ("Potential NGL Buyer") to acquire CEQP's NGL assets and certain NGL-related assets owned by Midstream (the "NGL Offer") for a combination of cash, CEQP common units and Midstream common units. Crestwood's senior management reviewed the offer with First Reserve and agreed to discuss the offer with the Crestwood Boards at a meeting scheduled for April 17.

On April 16, 2015, Joel Lambert, Senior Vice President, General Counsel and Corporate Secretary of the Crestwood Entities, provided the Midstream Conflicts Committee and representatives of Paul Hastings with a high-level summary of the proposed structure, process and timing of the Simplification Transaction. The summary did not include a proposed exchange ratio.

On April 17, 2015, the Midstream Conflicts Committee held a telephonic meeting that included representatives from Paul Hastings to discuss the committee's selection of a financial advisor to assist the committee in evaluating the proposed Simplification Transaction. After having discussed several candidates prior to and during the meeting, the Midstream Conflicts Committee contacted representatives from TPH to discuss the Midstream Conflicts Committee's potential engagement of TPH as financial advisor to the Midstream Conflicts Committee in connection with the proposed Simplification Transaction and asked TPH to disclose any material relationships it had with the parties to the proposed Simplification Transaction. TPH was selected by the Midstream Conflicts Committee because of its prior work for the Midstream Conflicts Committee and its knowledge and familiarity with Midstream, CEQP and the industry in which they operate. TPH was subsequently engaged as

On April 29, 2015, members of Crestwood's management participated in two separate due diligence telephone conference calls with Potential NGL Buyer's representatives. On the first call, Messrs. Halpin and Black discussed with the Potential NGL Buyer's representatives the key terms in connection with the proposed purchase of NGL assets. On the second call, Citi and Messrs. Phillips, Halpin and Black discussed with the Potential NGL Buyer's representatives the NGL Offer and compared the merits of the offer to the Simplification Transaction and explained that Crestwood's management believes that the NGL Offer does not provide a favorable alternative path to the Simplification Transaction for the following reasons: (i) execution risk and potential timing delays of the NGL transaction could jeopardize the Simplification Transaction; (ii) the need for more time for management to fully assess the strategic value proposition of the NGL assets portfolio in connection with Crestwood's broader midstream business; and (iii) the dilutive nature of the NGL Offer further limits Crestwood's visibility to growth.

On April 30, 2015, the CEQP Conflicts Committee held an extensive meeting at which representatives of Evercore and Locke Lord were present. Representatives of Locke Lord reviewed with the CEQP Conflicts Committee its fiduciary duties and obligations under Delaware law and the CEQP partnership agreement, including recent developments under Delaware law. Representatives of Evercore discussed their preliminary detailed financial analysis with respect to the Simplification Transaction, including a discussion regarding the proposed merger consideration exchange ratios, Midstream's and CEQP's respective businesses, assets and growth prospects. Representatives of Evercore also discussed the financial effects of alternative transaction structures for the Simplification Transaction and the yields at which units in the pro forma combined business could potentially trade following consummation of the Simplification Transaction.

Evercore's analysis included, among other things, a discussion of the preliminary standalone valuation for each of CEQP and Midstream, which Evercore measured using various methodologies, including a comparable partnership trading analysis, a selected comparable precedent transactions analysis, a discounted cash flow analysis and a discounted distribution analysis. Representatives of Evercore compared the standalone valuation estimates to the proposed exchange ratios.

Following Evercore's valuation discussion, the CEQP Conflicts Committee discussed Midstream's counter-proposal of 3.00 CEQP Common Units for each Midstream common unit and 3.00 CEQP preferred units for each Midstream preferred unit. After evaluating the various valuation methodologies described above and comparing the corresponding range of implied values per unit derived from such analyses, the CEQP Conflicts Committee authorized Mr. Moeder to contact the Chair of the Midstream Conflicts Committee to propose a decrease in the proposed exchange ratio and negotiate the proposed merger consideration. Representatives of Locke Lord also discussed with the CEQP Conflicts Committee certain legal issues and precedents related to the proposed merger agreement.

On May 1, 2015, via telephone conference, representatives from Magnetar and GSO and Messrs. Halpin, Moore and Black discussed business updates and the merits of the proposed Simplification Transaction.

On May 1, 2015, Mr. Moeder contacted the Chairman of the Midstream Conflicts Committee to propose a revised exchange ratio of 2.65 CEQP common units per Midstream common unit.

On May 1, 2015, the Midstream Conflicts Committee held a telephonic meeting that included representatives of TPH and Paul Hastings at which the committee discussed the 2.65 exchange ratio counterproposal from the CEQP Conflicts Committee. At the request of the Midstream Conflicts Committee, TPH reviewed and discussed its supplemental preliminary financial analysis with respect to Midstream, CEQP and the proposed Simplification Transaction with the Midstream Conflicts Committee. Paul Hastings also provided a brief overview of the issues identified in the initial draft of the merger agreement, noting that Midstream should have maximum flexibility to entertain an alternative transaction and should not be subject to any termination fee unless CEQP was also subject to a termination fee in the event it terminated the merger agreement in accordance with certain provisions of the merger agreement. The Midstream Conflicts Committee determined that it appeared the two proposed exchange ratios were too far apart, but that a conversation among the chairmen of the respective conflicts committees, with the assistance of their respective financial advisors, might advance discussions between the parties.

Accordingly, later in the day on May 1, 2015, the Chairman of each of the Midstream and CEQP Conflicts Committees, with assistance of their respective financial advisors, conducted a brief telephone conference to discuss the rationale for their current positions with respect to the proposed exchange ratios.

Also on May 1, 2015, representatives of Paul Hastings reviewed with the Midstream Conflicts Committee their markup of the merger agreement and then emailed Locke Lord comments to the draft merger agreement that had initially been distributed by AK. Such comments, among other items, provided that CEQP would be subject to the same (and in certain cases more strenuous) restrictions on its operations between signing and closing, provided Midstream with greater flexibility to entertain alternate proposals and eliminated the termination fee concept, instead replacing it with a repayment of expenses.

At 4:00 p.m. on May 1, 2015, the Chairman of the CEQP Conflicts Committee contacted the Chairman of the Midstream Conflicts Committee to inform him that the CEQP Conflicts Committee believed that the respective proposals of the committees were too far apart for further negotiations to be worthwhile.

Later on May 1, 2015, Mr. Gettig relayed the conversation with his counterpart to Mr. Lumpkins and representatives of TPH and Paul Hastings. The members of the Midstream Conflicts Committee then instructed Paul Hastings to communicate the impasse in negotiations to Crestwood's counsel.

On May 2, 2015, Paul Hastings conducted a brief call with AK and Locke Lord to update AK as to the current status of discussions and negotiations between the Midstream Conflicts Committee and the CEQP Conflicts Committee and the impasse that had been reached.

On May 3, 2015, the Midstream Conflicts Committee, Paul Hastings, TPH, Messrs. Phillips, Halpin, Lambert, and Moore, AK and Citi discussed the status of negotiations surrounding the merger agreement and the Simplification Transaction, <u>the reasons therefor as well as financial information previously provided.</u>

On the same date, a separate meeting of the CEQP Conflicts Committee was held via telephone conference, and the CEQP Conflicts Committee, Locke Lord, Evercore, Messrs. Phillips, Halpin, Lambert, and Moore and Citi discussed the status of negotiations surrounding the merger agreement and the Simplification Transaction.

On May 4, 2015 at 8:30 a.m., the Midstream Conflicts Committee held a telephonic meeting that included representatives of TPH and Paul Hastings. The Midstream Conflicts Committee, with the assistance of TPH and Paul Hastings, discussed the <u>comprehensive overview of the reasons for the Simplification Transaction provided by management of the Crestwood Entities during the May 3, 2015 meeting, as well as the discussion with management of the Crestwood Entities during such meeting of the financial information previously provided to the Midstream Conflicts Committee.</u> Paul Hastings then reviewed with the members of the committee the duties of the Midstream Conflicts Committee and the standard of good faith set forth in Midstream's partnership agreement for the Midstream Conflicts Committee's review of related party transactions. Thereafter, the Midstream Conflicts Committee, with the assistance of representatives of TPH, reviewed and discussed certain financial metrics and determined to respond to the CEQP Conflicts Committee with the proposal of a 2.80x exchange ratio.

On May 4, 2015, Mr. Gettig informed the Chairman of the CEQP Conflicts Committee of the Midstream Conflicts Committee's response. Following the receipt of the counter-offer, the CEQP Conflicts Committee met with representatives from Evercore and Locke Lord to discuss the counter-offer and open items. The CEQP Conflicts Committee extensively discussed these items and proposed revisions to the merger agreement with its advisors. During the meeting, and based upon additional financial analyses provided by Evercore, the CEQP Conflicts Committee determined to counter the

51

of companies, including Midstream, CEQP, First Reserve, other actual or potential transaction participants and their respective affiliates and may have committed to invest in private equity or other investment funds managed or advised by First Reserve, and in portfolio companies of such funds, and may have co-invested with First Reserve or certain of its affiliates, and may do so in the future.

The Midstream Conflicts Committee selected TPH to provide financial advice in connection with its evaluation of the merger because of TPH's experience, reputation and familiarity with the midstream sector of the energy industry and because its investment banking professionals have substantial experience in transactions similar to the merger.

The description set forth above constitutes a summary of the analyses employed and factors considered by TPH in rendering its opinion to the Midstream Conflicts Committee. The preparation of a fairness opinion is a complex, analytical process involving various determinations as to the most appropriate and relevant methods of financial analysis and the application of those methods to the particular circumstances and is not necessarily susceptible to partial analysis or summary description.

Pursuant to the terms of the engagement of TPH, TPH will receive a fee of $2,250,000 for its services, of which $1,250,000 became payable upon the rendering of the opinion and $1,000,000 is contingent upon the consummation of the merger. In addition, Midstream has agreed to reimburse certain of TPH's expenses and indemnify TPH and certain related parties against certain liabilities arising out of its engagement.

TPH and certain of its affiliates have in the past provided and may currently be providing investment banking, financial advisory and other financial services to Midstream, First Reserve and/or certain of their affiliates for which TPH and its affiliates have received, and may receive, compensation, including during the past two years, providing certain advisory services to First Reserve in January 2015 related to exploration and production activity in selected basins in which Midstream operates for which TPH expects to receive approximately $100,000 in fees and serving as financial advisor to the Midstream Conflicts Committee in connection with Midstream's acquisition of a majority interest in Tres Palacios Holdings LLC in 2014 and serving as financial advisor to the Conflicts Committee of Inergy Midstream, L.P. ("Inergy") in connection with Inergy's merger with Midstream in 2013 for which TPH received aggregate fees of approximately $2,150,000. TPH and certain of its affiliates may provide investment banking, financial advisory and other financial services to Midstream, CEQP, First Reserve, other participants in the Transaction or certain of their respective affiliates or security holders in the future, for which TPH and its affiliates may receive compensation.

**Unaudited Financial Projections**

CEQP and Midstream do not as a matter of course make public projections as to future sales, earnings or other results. However, in connection with the proposed merger, the management of CEQP and Midstream prepared and provided the Midstream Forecasts, the CEQP Forecasts and the Pro Forma Forecasts to the CEQP and Midstream Conflicts Committees. These forecasts were prepared solely for the purposes of the merger, and were provided to the Midstream and CEQP Conflicts Committee in connection with their evaluation of the merger. They were also provided to TPH, which was authorized by the Midstream Conflicts Committee to use and rely upon such projections for purposes of its analyses and opinion, and to Evercore and Citi who were authorized by the CEQP Conflicts Committee to use and rely upon such projections.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ISAAC ARON, on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CRESTWOOD MIDSTREAM PARTNERS, LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC CRESTWOOD MIDSTREAM HOLDINGS LP, AND CRESTWOOD GAS SERVICES GP, LLC,<br><br>        Defendants. | Civil Action No. 4:15-cv-1367 |

## [PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT AND PROVIDING FOR NOTICE

The Parties,[1] having applied for an order seeking preliminary approval of a settlement of

the above-captioned action, preliminary certification of a settlement class, approval of the form

and manner of Notice to be provided to the Settlement Class (as defined herein), and a

---

[1]       Capitalized terms (other than proper nouns) that are not defined herein shall have the same meanings set forth in the Stipulation of Settlement entered into by the parties on June 13, 2016 ("***Stipulation***").

determination of other matters in connection with the Court's consideration of the proposed settlement of this lawsuit (the "*Settlement*"), in accordance with the Stipulation;

NOW, upon consent of the Parties, after review and consideration of the Stipulation filed with the Court and the exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      Pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure, the Court preliminarily certifies this lawsuit as a non-opt-out class action for purposes of settlement only, on behalf of a Settlement Class consisting of Plaintiff and any and all record and beneficial owners any unit(s) of Crestwood Midstream Partners LP ("*Crestwood Midstream*") who held any such unit(s) during the period beginning on and including May 5, 2015 through and including September 30, 2015 (the date of consummation of the Simplification Transaction), including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, but excluding Glenda S. Moore, Kenneth C. Halter Trustee and Kenneth C. Halter Trust (the "Intervenors"), who previously attempted to intervene into this lawsuit, and Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfeller, David Lumpkins, John J. Sherman, David Wood, Crestwood Midstream Partners LP, Crestwood Midstream Holdings LP, Crestwood Midstream GP LLC, Crestwood Gas Services GP LLC, Crestwood Equity Partners LP, Crestwood Equity GP LLC, CEQP ST SUB LLC, and MGP GP LLC, (collectively, "*Defendants*"), and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns.

2

2.      Plaintiff Isaac Aron ("*Plaintiff*") is provisionally appointed as class representative, and the law firms of The Bilek Law Firm, L.L.P. and Monteverde & Associates PC are provisionally appointed as counsel for the Settlement Class.

3.      The Court preliminarily finds that the requirements of Rule 23(a) and Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure have been met for settlement purposes:

    a.      The members of the Settlement Class are so numerous that joinder of all members is impracticable;

    b.      There are questions of law or fact common to the Settlement Class, which predominate over any questions affecting only individual members;

    c.      The claims or defenses of the class representatives are typical of the claims or defenses of the Settlement Class, and the class representatives will fairly and adequately protect the interest of the Settlement Class;

    d.      The prosecution of separate actions by individual members of the Settlement Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Settlement Class, which would establish incompatible standards of conduct for Defendants;

    e.      Adjudications with respect to individual members of the Settlement Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and

    f.      Defendants are alleged to have acted or refused to act on grounds that apply generally to the Settlement Class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole.

4. The Court preliminarily approves the Stipulation, including all Exhibits thereto, and the Settlement set forth therein, and preliminarily finds that the Settlement is sufficiently fair, reasonable, adequate, and in the best interest of the Settlement Class to warrant notice to the Settlement Class and the scheduling of a fairness hearing, at which time the Court will hear any objections (subject to the procedures described below) and consider whether to give final approval to the Settlement set forth in the Stipulation.

5. A hearing (the "***Settlement Hearing***") shall be held on _____, 2016, at ___:_____ am/pm before the Honorable Vanessa D. Gilmore of the United States District Court for the Southern District of Texas, in Room 9513 of the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002, to:

    a.    Determine whether, for settlement purposes only, the Court's preliminary certification of the Settlement Class pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure should be made final;

    b.    Determine whether Plaintiff may be designated as class representative and Lead Counsel may be designated as counsel to the Settlement Class;

    c.    Determine whether the Court should grant final approval of the proposed Settlement on the terms and conditions provided for in the Stipulation as fair, reasonable, and adequate and in the best interest of the members of the Settlement Class;

d.    Determine whether judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing the lawsuit and the Released Claims as to the Released Persons with prejudice as against Plaintiff and the Settlement Class, releasing the Released Claims, and barring and enjoining prosecution of any and all Released Claims;

e.    Consider Lead Counsels' application for an award of attorneys' fees and expenses to be paid (if and only if awarded by the Court);

f.    Hear objections, if any, made to the Settlement or any of its terms; and

g.    Hear and determine other matters relating to the proposed Settlement.

6.    The Court reserves the right to adjourn the Settlement Hearing or any part thereof, including the consideration of the application for attorneys' fees and expenses, without further notice of any kind other than oral announcement at the Settlement Hearing or any adjournment thereof.

7.    The Court reserves the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the parties to the Stipulation and without further notice to the Settlement Class.

8.    The Court approves, in form and content, the Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing, substantially in the form attached as Exhibit C to the Stipulation (the "***Notice***"), and finds that the mailing of the Notice, as set forth in paragraph 9 below, will fully satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and applicable law, is the best notice practicable, and shall constitute due and sufficient notice of the Settlement and Settlement Hearing and all other matters referred to in the Notice to all persons entitled to receive such Notice.  At least ten (10)

calendar days prior to the Settlement Hearing, Defendants' counsel shall file with the Court an appropriate affidavit or declaration with respect to the preparation and mailing of the Notice to the Settlement Class and proof of mailing of notices pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 et seq. (the "CAFA Notice").

9.     Within fourteen (14) business days following entry of this Order, Crestwood Midstream shall, at its expense, cause a copy of the Notice, substantially in the form attached as Exhibit C to the Stipulation, to be mailed by United States mail, postage prepaid, to all members of the Settlement Class who can be identified with reasonable effort, at their last known addresses appearing in the unitholder transfer records maintained by or on behalf of Crestwood Midstream.  All record holders in the Settlement Class who were not also the beneficial owners of common units of Crestwood Midstream ("***Units***") are directed to forward the Notice to the beneficial owners of those Units or to provide the notice administrator selected by Crestwood Midstream (the "***Notice Administrator***") with a list of the names and addresses of beneficial owners of such Units within ten (10) business days after the receipt of the Notice.  Crestwood Midstream, through the Notice Administrator, shall use reasonable efforts to give notice to such beneficial owners of Units by (a) making additional copies of the Notice available to any record holders who, prior to the Settlement Hearing, request the same for the purpose of distribution to such beneficial owners of Units, and/or (b) mailing copies of the Notice to beneficial owners of Units whose addresses have been provided to the Notice Administrator by the record holders of such Units.

10.     Any member of the Settlement Class who objects to the proposed Settlement may appear at the Settlement Hearing in person or through counsel to show cause why the Settlement should not be approved as fair, reasonable, adequate, and in the best interests of the Settlement

6

Class, or otherwise request to be heard concerning the Settlement.  However, no person or entity (other than the Parties and their counsel) may be heard at the Settlement Hearing, and no papers, briefs, pleadings, or other documents submitted by any person or entity shall be considered by the Court unless, not later than twenty one (21) calendar prior to the Settlement Hearing, such person or entity files with the Court and serves upon each of the counsel listed below: (a) a written notice of the intention to appear; (b) proof of membership in the Settlement Class by way of brokerage statement, account statement, or other document evidencing ownership of Crestwood Midstream units; (c) a detailed summary of his, her, or its objections to any matter before the Court; (d) the grounds therefor or the reasons why he, she, or it desires to appear and be heard; and (e) all documents and writings which he, she, or it wants the Court to consider. The above-described papers must be (a) served by hand delivery or overnight mail on the following counsel of record no later than twenty one (21) calendar days prior to the Settlement Hearing:

THE BILEK LAW FIRM, L.L.P.
Thomas E. Bilek
700 Louisiana Street, Suite 3950
Houston, Texas 77002

FARUQI & FARUQI, LLP
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017

MONTEVERDE & ASSOCIATES PC
Juan E. Monteverde
350 Fifth Avenue, 59th Floor
New York, New York 10118

VINSON & ELKINS L.L.P.
Michael C. Holmes
1001 Fannin Street, Suite 2500
Houston, Texas 77002

ANDREWS KURTH LLP
Kelly Sandill
600 Travis, Suite 4200
Houston, Texas 77002

SCHIFFER ODOM HICKS & JOHNSON PLLC
Kenneth P. Held
700 Louisiana, Suite 2650
Houston, Texas 77002

and (b) filed with the Court in this lawsuit no later than twenty one (21) calendar days prior to the Settlement Hearing.  Any member of the Settlement Class who fails to make his, her, or its

objection(s) in the manner provided herein shall be deemed to have waived such objection(s) (including any right of appeal) and shall be forever barred from making any such objection(s), including, without limitation, any objection to the fairness or adequacy of the proposed Settlement, unless otherwise ordered by the Court.

11.  The Parties may file responses to any objections with the Court and serve their responses upon any objectors or the objector's counsel no later than seven calendar days prior to the Settlement Hearing.

12.  All proceedings in this lawsuit, other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of this Court.  All members of the Settlement Class are preliminarily enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action or claim for relief asserting or relating to any of the Released Claims.

13.  If the Settlement, including any amendment made in accordance with the Stipulation, is not approved by the Court or the Effective Date of the Settlement fails to occur for any reason whatsoever, the Stipulation (including any modification thereof), the Settlement Class certification herein, and any actions taken or to be taken in connection therewith (including this Preliminary Order and any judgment entered herein) shall be terminated and shall become null and void and of no further force and effect except for Crestwood Midstream's obligation to pay for expenses incurred in connection with the Notice, CAFA Notice, and administration thereof provided for by this Preliminary Order, and neither the MOU, the Stipulation, nor any provision contained therein, nor any action undertaken pursuant thereto, nor the negotiation thereof by any party, shall be deemed an admission or offered or received as evidence at any proceeding in this or any other action or proceeding.

14.     In any event, none of the MOU, the Stipulation, nor any provisions contained therein, nor any negotiations, statements, or proceedings in connection therewith, shall be construed as, or deemed to be evidence of, an admission or concession on the part of any of the Parties, members of the Settlement Class, or any other person or entity of any liability or absence of liability as to any claim alleged or asserted in the lawsuit or otherwise, and shall not be offered or received in evidence in any action or proceeding (except in an action or proceeding to enforce the terms and conditions of the Stipulation), or be used in any way as an admission, concession, or evidence of the existence or absence of any liability or wrongdoing of any nature, and shall not be construed as, or deemed to be evidence of, an admission or concession that Plaintiff, Lead Counsel, or the members of the Settlement Class, or any present or former unitholder of Crestwood Midstream, or any other person or entity, has or has not suffered any damage.

15.     If the Settlement provided for in the Stipulation shall be approved by the Court following the Settlement Hearing, an Order and Final Judgment shall be entered in the form attached as Exhibit D to the Stipulation.

16.     The Court retains exclusive jurisdiction over this lawsuit to consider all further matters arising out of or connected with the proposed Settlement.

SO ORDERED this _____ day of _____, 2016.

_____
The Honorable Vanessa D. Gilmore
United States District Judge

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ISAAC ARON, on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>CRESTWOOD MIDSTREAM PARTNERS, LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC CRESTWOOD MIDSTREAM HOLDINGS LP, AND CRESTWOOD GAS SERVICES GP, LLC,<br><br>                Defendants | Civil Action No. 4:15-cv-1367 |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT OF CLASS ACTION, AND SETTLEMENT HEARING**

TO: ANY AND ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF ANY UNIT(S) OF CRESTWOOD MIDSTREAM WHO HELD ANY SUCH UNIT(S) DURING THE PERIOD BEGINNING ON AND INCLUDING MAY 5, 2016 THROUGH AND INCLUDING SEPTEMBER 30, 2015 (THE DATE OF CONSUMMATION OF THE MERGER), INCLUDING ANY AND ALL OF THEIR RESPECTIVE SUCCESSORS-IN-INTEREST, PREDECESSORS, LEGAL REPRESENTATIVES, TRUSTEES, EXECUTORS, ADMINISTRATORS, HEIRS, ASSIGNEES, OR TRANSFEREES, IMMEDIATE AND REMOTE, AND ANY PERSON OR ENTITY ACTING FOR OR ON BEHALF OF, OR CLAIMING UNDER, ANY OF THEM,  AND EACH OF THEM; PROVIDED, HOWEVER, THAT THE SETTLEMENT CLASS SHALL NOT INCLUDE DEFENDANTS AND, AT ALL RELEVANT TIMES, THE MEMBERS OF DEFENDANTS' IMMEDIATE FAMILIES, DEFENDANTS' LEGAL REPRESENTATIVES, HEIRS, SUCCESSORS, AND ASSIGNS.

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF A LAWSUIT AND CONTAINS IMPORTANT INFORMATION.  YOUR RIGHTS WILL BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS LITIGATION.

IF YOU ARE A NOMINEE WHO HELD CRESTWOOD MIDSTREAM UNITS FOR THE BENEFIT OF ANOTHER, READ SECTION X BELOW ENTITLED "PERSONS OR ENTITIES HOLDING RECORD OWNERSHIP ON BEHALF OF OTHERS."

## I.        PURPOSE OF THIS NOTICE

The purpose of this Notice is to inform you of the proposed settlement of the above captioned class action litigation (the "Settlement") pending in the United States District Court for the Southern District of Texas (the "Court").  This Notice also informs you of the Court's preliminary certification of a Settlement Class (as defined below) for purposes of the Settlement and of your right to participate in a hearing to be held on _____, 2016, at ___:_____ __.m. in Room 9513 of the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002 (the "Settlement Hearing") to determine the matters enumerated in Section VII below.

The Court has provisionally certified a non-opt-out class action for purposes of the settlement only under Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of a class consisting of and any and all record holders and beneficial owners of any unit(s) of Crestwood Midstream who held any such unit(s) during the period beginning on and including May 5, 2015 through and including September 30, 2015 (the date of consummation of the Merger), including any and all of their respective successors-in-interest, predecessors, legal representatives, trustees, executors, administrators, heirs, assignees, or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them; provided, however, that the Settlement Class shall not include Defendants and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns (the "Settlement Class").

At the Settlement Hearing, the Court will consider, among other things, whether the Settlement Class should be finally certified pursuant to Rule 23(b)(1) and Rule (b)(2) of the Federal Rules of Civil Procedure.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY CLAIMS OR DEFENSES BY ANY OF THE PARTIES. IT IS BASED ON STATEMENTS OF THE PARTIES AND IS SENT FOR THE SOLE PURPOSE OF INFORMING YOU OF THE EXISTENCE OF THE LAWSUIT AND OF THE FINAL SETTLEMENT HEARING ON A PROPOSED SETTLEMENT SO THAT YOU MAY MAKE APPROPRIATE DECISIONS AS TO STEPS YOU MAY, OR MAY NOT, WISH TO TAKE IN RELATION TO THE LAWSUIT.**

## II.      BACKGROUND OF THE LAWSUIT

On May 6, 2015, Crestwood Midstream and Crestwood Equity announced that they had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Crestwood Midstream would merge into a wholly-owned subsidiary of Crestwood Equity. Holders of Crestwood Midstream common units would receive 2.75 common units of Crestwood Equity in exchange for each unit of Crestwood Midstream held (the "Merger"). Based on the closing price of Crestwood Equity common units on May 5, 2015, of $6.82, per unit, the last trading day before the Merger Agreement was announced, the consideration to be received by Crestwood Midstream unitholders was valued at $18.76 per unit.

On May 20, 2015, and July 21, 2015, respectively, two putative class action lawsuits were filed against defendants Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfellar, David Lumpkins, John J. Sherman, David Wood, Crestwood Midstream Partners LP, Crestwood Midstream GP LLC, Crestwood Equity Partners LP, Crestwood Equity GP LLC, CEQP ST Sub LLC, MGP GP, LLC, Crestwood Midstream Holdings LP, and Crestwood Gas Services GP LLC (collectively, the "Defendants"): *Farber v. Crestwood, et al*, No. 4:15-cv-01367 (the "Farber Lawsuit") and *Aron v. Crestwood, et al*, No. 4:15-cv-02101 (the "Aron Lawsuit" and collectively the "Lawsuits"). The complaint filed in each of the Lawsuits alleged that the Merger Agreement was entered into by means of an unfair process and for an unfair price and the operative consolidated complaint further alleged that Defendants violated of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

On September 4, 2015, the Court consolidated the Lawsuits into a consolidated action styled *In re Crestwood Midstream Partners Unitholder Litigation*, Lead Case No. 4:15-cv-1367 (the "Action"). The plaintiff in the Farber Lawsuit subsequently dismissed his claims against all Defendants on September 16, 2015, and on December 8, 2015 the Court appointed the plaintiff in the Aron Lawsuit as Lead Plaintiff for the Class and his chosen counsel, Monteverde & Associates PC and The Bilek Law Firm, L.L.P., as Lead Counsel and Liaison Counsel, respectively.

On June 16, 2015, Crestwood Equity filed with the U.S. Securities and Exchange Commission ("SEC") a preliminary proxy statement/prospectus in a Form S-4 (together with any exhibits and annexes attached thereto, and as amended or supplemented from time to time, the "Preliminary Proxy"), which, among other things, summarized the Merger Agreement, provided an account of the events leading up to the execution of the Merger Agreement, and summarized the financial analyses conducted by Tudor, Pickering, Holt & Co. Advisors, LLC ("Tudor"), who served as one of the financial advisors to the Midstream Conflicts Committee.

On July 27, 2015, Crestwood Equity filed with the SEC Amendment No. 1 to the Preliminary Proxy; on August 28, 2015, Crestwood Equity filed with the SEC Amendment No. 2 to the Preliminary Proxy; and on August 28, 2015, Crestwood Equity filed the Final Proxy with the SEC on Schedule 14A.

On September 3, 2015, Lead Plaintiff filed a motion for preliminary injunction, whereby Lead Plaintiff sought to enjoin the unitholder vote on the Merger until Defendants publicly disseminated certain information that had been omitted from the Final Proxy to Crestwood Midstream unitholders.  Lead Plaintiff filed a subsequent motion seeking similar relief on September 17, 2015.

On September 18, 2015, the Court scheduled a hearing on Lead Plaintiff's motion for September 23, 2015.

After arm's-length negotiations, the Parties reached an agreement-in-principle concerning a proposed settlement of the Action, and on September 22, 2015, after such discussion and negotiation, the Parties entered into a Memorandum of Understanding ("MOU") setting forth the terms of their agreement-in-principle to settle the Action.

On September 23, 2015, in conjunction with agreeing to the MOU, Crestwood Midstream filed a Form 8-K (available at https://www.sec.gov/Archives/edgar/data/1304464/000119312515326022/d85652d8k.htm) supplementing the disclosures contained in the Final Proxy (the "Supplemental Disclosures"). The Supplemental Disclosures disclosed the upside case and downside case financial projections for Crestwood Midstream, Crestwood Equity, and the pro forma company  that had been omitted from the Final Proxy.

On September 30, 2015, Crestwood Midstream unitholders voted to approve the Merger, and the Merger subsequently closed that same day.

Pursuant to the terms of the MOU, Lead Counsel requested and was provided with certain key documents relating to Lead Plaintiff's claims, including minutes from the meetings of the Crestwood Midstream board of directors (the "Crestwood Midstream Board") and the Crestwood Midstream Conflicts Committee approving the Merger and final presentations by the financial advisor to the Midstream Conflicts Committee.

Lead Counsel proceeded to review the confidential internal documents produced by Defendants and consulted with a financial expert for purposes of evaluating the claims in the Action and assessing the fairness of the Settlement.

On February 2, 2016, Lead Counsel conducted the deposition of David Lumpkins, a member of the Crestwood Midstream Conflicts Committee.

On February 17, 2016, Lead Counsel conducted the deposition of a managing director at Tudor who served as a financial advisor to the Crestwood Midstream Conflicts Committee.

On May 5, 2016, Lead Counsel conducted the deposition of Robert Thornberry Halpin, III, Senior Vice President and Chief Financial Officer for Crestwood Equity.

On June 13, 2016, the Parties entered into a Stipulation of Settlement, providing for the Settlement of the Lawsuit on the terms summarized below.

## III.    REASONS FOR THE SETTLEMENT

Lead Plaintiff Isaac Aron ("Lead Plaintiff"), through his counsel ("Lead Counsel"), has undertaken and completed an investigation of the claims and allegations asserted in the Action, including reviewing public documents and confidential and non-public documents relating to the Merger, and deposing a member of the Conflicts Committee of Crestwood Midstream, a representative from Tudor, and the Chief Financial Officer of Crestwood Midstream.  Based upon his investigation, Lead Plaintiff and Lead Counsel believe the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

In evaluating the Settlement, Lead Plaintiff and Lead Counsel have considered: (a) the substantial benefits to the members of the Settlement Class from the Settlement, including the disclosure of additional information to Crestwood Midstream unitholders concerning the Merger; (b) the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals; (c) the uncertain outcome and the risk of any litigation, especially in complex cases such as the Action; (d) the difficulties and delays inherent in such litigation; (e) the inherent problems of proof and possible defenses to the claims asserted in the Action; and (f) the conclusion of Lead Counsel that the terms and conditions of the Settlement are fair, reasonable, adequate, and in the best interest of the Settlement Class.

Defendants have denied, and continue to deny, that any of them committed, or aided and abetted the commission of, any breach of fiduciary duty, or violation of any other law, or engaged in any of the wrongful acts alleged in the Action, and expressly maintain that each of them diligently and scrupulously complied with his, her or its fiduciary and other legal duties, to the extent such duties exist, and have decided to enter into the Stipulation of Settlement entered into by the Parties, dated June 13, 2016 (the "Stipulation") solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

The Parties wish to settle and resolve the claims asserted by Lead Plaintiff and all claims relating to or arising out of the Merger; the Parties have, following arm's-length negotiations, reached an agreement in principle providing for the settlement of the Action; and the parties believe the Settlement is in the best interests of the Parties and Crestwood Midstream's public unitholders.

## IV.    SETTLEMENT TERMS

The Supplemental Disclosures were agreed to and provided in consideration of the full and final settlement and dismissal with prejudice of the Action and the release of any and all Released Claims (as defined below), and no Released Persons (as defined below) shall have any obligation to pay or bear any additional amounts, expenses, costs, damages, or fees to or for the benefit of Lead Plaintiff or any Settlement Class members in connection with the Settlement, including, but not limited to, attorneys' fees and expenses for any counsel to any Settlement Class member, or any costs of notice or settlement administration or otherwise; provided, however, that (i) all costs in providing this Notice to the Settlement Class members shall be paid

by, or caused to be paid by, Crestwood Midstream (or its successor(s) and/or its insurer(s)); and (b) Crestwood Midstream (or its successor(s) and/or its insurer(s)) shall be obligated to pay attorneys' fees and expenses to Lead Counsel upon an award, if any, of attorneys' fees and expenses by the Court.

If the Court approves the Settlement, then, as of the Effective Date (as defined in the Stipulation), the settlement of the Action will release and discharge all Released Claims against all Released Persons and the Settlement will bind all members of the Settlement Class because the Settlement Class is a non-opt-out class.

## V.        SETTLEMENT HEARING

The Court has scheduled a Settlement Hearing to be held on _____, 2016, at ___:_____ __.m. in Room 9513 of the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002 (the "Settlement Hearing") to:

(a) determine whether, for settlement purposes only, the Court's preliminary certification of the non-opt-out Settlement Class pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure should be made final; (b) determine whether Lead Plaintiff may be designated as class representative and Lead Counsel may be designated as counsel to the Settlement Class; (c) determine whether the Court should grant final approval of the proposed Settlement on the terms and conditions provided for in the Stipulation as fair, reasonable, and adequate and in the best interest of the members of the Settlement Class; (d) determine whether judgment should be entered pursuant to the Stipulation, *inter alia*, dismissing the Action and the Released Claims as to the Released Persons with prejudice as against Lead Plaintiff and the Settlement Class, releasing the Released Claims, and barring and enjoining prosecution of any and all Released Claims; (e) consider the application of Lead Counsel for an award of attorneys' fees and expenses to be paid (if and only if awarded by the Court) by Crestwood Midstream (or its successor(s) and/or insurer(s)); (f) hear objections, if any, made to the Settlement or any of its terms; and (g) hear and determine other matters relating to the proposed Settlement.

## VI.       RIGHT TO APPEAR AT SETTLEMENT HEARING

Any member of the Settlement Class who objects to the Stipulation, the Settlement, the class action determination, the Judgment to be entered therein, and/or the application for attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person, or through counsel, at the Settlement Hearing and present any evidence or argument that may be proper and relevant.  To do so, you must, no later than twenty one (21) calendar days prior to the Settlement Hearing (unless the Court otherwise directs for good cause shown), serve the following documents on each of the attorneys listed below: (a) a written notice of the intention to appear; (b) proof of membership in the Settlement Class by way of brokerage statement, account statement, or other document evidencing ownership of Crestwood Midstream units; (c) a detailed summary of your objections to any matter before the Court; (d) the grounds therefore or the reasons why you desire to appear and to be heard; and (e) all documents and writing which you want the Court to consider.  These papers must be served by hand delivery or overnight mail on

the following counsel of record no later than twenty one (21) calendar days prior to the Settlement Hearing:

Thomas E. Bilek
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana Street, Suite 3950
Houston, Texas  77002
Telephone:  713.227.7720
Facsimile:  713.227.9404

Michael C. Holmes
Elizabeth C. Brandon
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
Telephone: 214.220.7814
Facsimile: 214.999.7814

Juan E. Monteverde
Miles D. Schreiner
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, 59th Floor
New York, New York 10118
Telephone:  212. 971. 1341

Greg Waller
Kelly Sandill
**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: 713.220.4790
Facsimile: 713.238.7434

Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone:  212. 983. 9330

Kenneth P. Held
**SCHIFFER ODOM HICKS &**
  **JOHNSON PLLC**
700 Louisiana, Suite 2650
Houston, Texas 77002
Telephone: 713.255.4107
Facsimile: 713.357.5160

You must also contemporaneously file a copy of the above-described papers in this case no later than twenty one (21) calendar days prior to the Settlement Hearing with the Clerk of Court for the United States District Court for the Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002.  Even if you do not appear at the Settlement Hearing, the Court will consider your written submission if it is served and filed in accordance with the foregoing procedures.  Any person who fails to object in the manner prescribed above shall be deemed to have waived such objection and shall forever be barred from raising such objection in the Action or any other action or proceeding.  Whether or not any person objects to the Settlement, if the Court approves the Settlement, the Settlement will bind all members of the Settlement Class, because the Settlement Class is a non-opt-out class.

**VII.        THE ORDER AND FINAL JUDGMENT OF THE COURT**

If the Settlement is approved by the Court, the Parties will promptly request the Court to enter a Judgment, which will, among other things:

a)  approve the Settlement as fair, reasonable, adequate, and in the best interest of the Settlement Class and direct consummation of the Settlement in accordance with its terms and conditions;

7

b) make final the Court's previous determination to provisionally certify the Settlement Class as a non-opt-out class pursuant to Rule 23(b)(1) and Rule 23(b)(2) of the Federal Rules of Civil Procedure for purposes of the Settlement;

c) determine that the requirements of the rules of the Court and due process have been satisfied in connection with this Notice;

d) dismiss the Action and the Released Claims with prejudice on the merits and grant the releases more fully described below in accordance with the terms and conditions of the Stipulation;

e) permanently bar and enjoin Lead Plaintiff and all Settlement Class members from instituting, commencing, or prosecuting, either directly or indirectly or in any other capacity, any of the Released Claims against any of the Released Persons; and

f) award attorneys' fees and expenses, if any, to Lead Counsel.

## VIII.      RELEASES

The Stipulation provides that, upon the Court's approval of the Settlement and on the date the Judgment becomes Final and non-appealable (the "Final Settlement Date"):

Defendants, Lead Plaintiff, and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and  discharged any and all of the Released Claims against the Released Persons. Defendants, Lead Plaintiff, and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have, covenanted not to sue any Released Person with respect to such Released Claims, and shall be permanently barred and enjoined from instituting, commencing or prosecuting the Released Claims against the Released Persons except to enforce the Releases and other terms and conditions contained in the Stipulation and/or Judgment entered pursuant thereto.  Nothing herein shall in any way impair or restrict Lead Plaintiff's right to seek an attorneys' fee and expense award contemplated in Section IV of the Stipulation (see Section IX below).  Nothing in the Stipulation shall in any way impair or restrict the rights of any Party to enforce the terms of the Stipulation.

"Released Claims" mean any and all claims of every nature and description whatsoever against the Released Persons that have been or could have been asserted  of any nature, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (i.e. any claim any member of Settlement Class does not know or suspect exists in his, her, or its favor at the time of the release of the Released Claims as against the Released Persons, including without limitation those which, if known, might have affected the decision to enter into the Settlement) that Lead Plaintiff or any or all other members of the Settlement Class, in their capacity as Crestwood Midstream unitholders, ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type, or in any other capacity, against any of the

Released Persons, whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including, but not limited to, any claims under federal securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of Crestwood Midstream), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly,  relate to any of the following: (i) the Merger, including but not limited to the terms and conditions thereof; (ii) any and all occurrences or matters mentioned or referred to in the Preliminary Proxy, the Final Proxy, or the Supplemental Disclosures concerning the Merger; (iii) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the Merger; (iv) negotiations in connection with the Merger and with any actual or potential acquirer of Crestwood Midstream; (v) the consideration to be received by Settlement Class (defined below) members or by any other Crestwood Midstream unitholder in connection with the Merger; (vi) the Preliminary Proxy or Final Proxy, any other disclosures, public filings, periodic reports, press releases, proxy statements, or other statements issued, made available or filed relating, directly or indirectly,  to the Merger; (vii) the fiduciary obligations of the Released Persons in connection with the Merger or any of the matters mentioned or referred to in the Preliminary Proxy, Final Proxy, or Supplemental Disclosures; (viii) claims for fees, expenses, or costs incurred in prosecuting or settling the Lawsuit, or in connection with any claim for benefits conferred on the Settlement Class, except as set forth in Section IV; (ix) any of the matters referred to or alleged, or which could have been alleged relating to the Merger, in any complaint or amendment(s) thereto filed in the Lawsuit; provided, however, that the Released Claims shall not include (i) the right to enforce the Settlement or the terms of this Stipulation, (ii) the claims asserted by plaintiff Kenneth C. Halter Trust, in the Books and Records Lawsuit (as defined in the Stipulation), and (iii) any claims that have been or may be asserted by the Intervenors (as defined in the Stipulation), on behalf of themselves.

"Released Persons" means the Defendants, and/or each of their parents, divisions, subsidiaries, predecessors, successors, assigns, affiliates, partnerships, and joint ventures, as well as, solely in their capacities as such, past or present officers, directors, employees, agents, contractors, subcontractors, representatives, auditors, accountants, attorneys, and bankers, including any person or entity controlled by, controlling, or under common control with any of them.  Released Persons shall not mean and does not include any insurance carriers who have issued insurance to (i) Crestwood Midstream, (ii) its general partner, and/or (iii) its present and former directors or officers, including Defendants.

Upon the Final Settlement Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of Defendants, Lead Plaintiff and Lead Plaintiff's Counsel from all claims, whether known or unknown, arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims. Nothing in the Stipulation shall in any way impair or restrict the right of any Party to enforce the terms of the Stipulation.

The Parties expressly acknowledge, and all the members of the Settlement Class shall be deemed to acknowledge that: (i) they may hereafter discover facts in addition to those that they now know or believe to be true with respect to the Action and the Released Claims; and (ii) they

may have sustained damages, losses, fees, costs and/or expenses that are presently unknown and unsuspected, and that such damages, losses, fees, costs and/or expenses as the Parties and any member of the Settlement Class may have sustained might give rise to additional damages, losses, fees, costs and/or expenses in the future. Nevertheless, the Parties expressly acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that the Stipulation has been negotiated and agreed upon in light of such possible unknown facts and such possible damages, losses, fees, costs and/or expenses, and each expressly waives, or shall be deemed to have waived, any and all rights under California Civil Code section 1542 and under any other federal or state statute or law of similar effect. The Parties expressly acknowledge, and all members of the Settlement Class shall be deemed to acknowledge, that this waiver was separately bargained for and is a material term of the Stipulation.

## IX.        APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

To date, Lead Counsel have not received any payment for their services in prosecuting the Action, nor have counsel been paid for their expenses.  The fee requested by Lead Counsel would compensate counsel for their efforts in achieving the benefits described herein, for their risk in undertaking this representation on a contingent basis, and would provide payment for the expenses incurred in connection with the prosecution of the Action.  Crestwood Midstream acknowledges that, as a direct result of the filing and prosecution of the Action and in consideration of the resolution of the Action, Crestwood Midstream made the Supplemental Disclosures contained in the Form 8-K filed with the SEC on September 23, 2015.  Crestwood Midstream further acknowledges that certain disclosures previously made in Amendment Nos. 1 and 2 to the Preliminary Proxy and the Final Proxy were caused by Lead Plaintiff's filing and prosecution of the Action.

Crestwood Midstream and Lead Counsel have negotiated the amount of attorneys' fees and expenses that, subject to approval by the Court, would be paid to Lead Counsel.  As a result of those negotiations, Crestwood Midstream and Lead Plaintiff have agreed that, at or before the Settlement Hearing, Lead Counsel will apply to the Court for an award of attorneys' fees and expenses (including costs and disbursements) in a total amount not to exceed $575,000, and Defendants have agreed not to oppose any such application that does not exceed that amount. Crestwood Midstream (or its successor(s) and/or its insurer(s)), on behalf of Defendants, has agreed to pay, or cause to be paid, the amount ordered by the Court, not to exceed $575,000. Therefore, no attorneys' fees or expenses will be borne by Class members.  Except for the amount ordered by the Court, and for costs incurred in providing this Notice to the Settlement Class, there shall be no obligation on the part of any Defendant, or any person or entity, to pay any amounts, fees, costs, or expenses, including attorneys' fees, to Lead Counsel, to Lead Plaintiff, or to any member of the Settlement Class.

The attorneys' fees and expense award will not reduce the consideration received by Crestwood Midstream unitholders in the Merger.

Lead Counsel shall be responsible for allocating any award of attorneys' fees or expenses amongst Lead Counsel in a manner that they, in good faith, believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

### X.        PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks, and other persons or entities who are members of the Settlement Class in their capacities as record holders, but not as beneficial holders, must, within ten (10) business days of receipt of this Notice, either (a) forward the Notice to such beneficial holders; or (b) send a list of the names and addresses of beneficial owners to the Notice Administrator addressed as set forth immediately below this paragraph. If additional copies of this Notice are needed for forwarding to such beneficial owner, any requests for such copies may be made to:

ARON v. CRESTWOOD MIDSTREAM PARTNERS, LP
NOTICE ADMINISTRATOR
c/o A.B. DATA, LTD.
PO BOX 170500
MILWAUKEE, WI 53217-8091
fulfillment@abdata.com

### XI.        SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Action, the Stipulation, and other papers and proceedings are only summaries and do not purport to be comprehensive.   Accordingly, members of the Settlement Class are referred to the documents filed with the Court in the Action.  You or your attorney may examine the Court's files during regular business hours of each business day at the United States Courthouse, United States District Court for the Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002.

**PLEASE DO NOT CALL OR WRITE THE COURT**.  Inquiries or comments about the Settlement may be directed to the attention of Lead Counsel as follows:

**THE BILEK LAW FIRM, L.L.P.**
Thomas E. Bilek
700 Louisiana Street, Suite 3950
Houston, Texas  77002
Telephone:  713.227.7720
Facsimile:  713.227.9404

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
350 Fifth Avenue, 59th Floor
New York, New York 10118
Telephone:  212. 971. 1341

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
Nadeem Faruqi
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone:  212. 983. 9330


SO ORDERED this _____ day of _____, 2016.


_____
The Honorable Vanessa D. Gilmore
United States District Judge

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ISAAC ARON, on behalf of all others similarly situated, <br><br>          Plaintiff, <br><br> v. <br><br> CRESTWOOD MIDSTREAM PARTNERS, LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC CRESTWOOD MIDSTREAM HOLDINGS LP, AND CRESTWOOD GAS SERVICES GP, LLC, <br><br>          Defendants. | Civil Action No. 4:15-cv-1367 |

## <u>ORDER AND FINAL JUDGMENT</u>

On _____, 2016, a hearing having been held before this Court to determine whether the terms and conditions of the Stipulation of Settlement, dated _____, 2016 (the "*Stipulation*"), which is incorporated herein by reference, and the terms and conditions of the settlement proposed in the Stipulation (the "*Settlement*") are fair, reasonable, and adequate for the settlement and release of claims as set forth in the Stipulation; and whether an Order and Final Judgment ("*Judgment*") should be entered in this case (the

"*Lawsuit*"); and the Court having considered all matters submitted to it at the hearing and otherwise;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Judgment incorporates by reference the definitions in the Stipulation.  All capitalized terms other than proper nouns that are not defined herein shall have the meanings set forth in the Stipulation.

2.      Notice has been given to the Settlement Class, pursuant to and in the manner directed by the Order and Final Judgment; proof of the mailing of the Notice, and a full opportunity to be heard has been offered to all Parties, the Settlement Class, and Persons in interest. The form and manner of the Notice of Pendency of Class Action, Proposed Settlement of Class Action, and Settlement Hearing (the "*Notice*") is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and applicable law, including without limitation Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C., § 78u-4, as amended by the Private Securities Litigation Reform Act of 1995, the Constitution of the United States, and any other applicable law.  It is further determined that all members of the Settlement Class are bound by the Judgment herein. Defendants further caused to be served on the United States Attorney General and all State Attorneys General the notice of the proposed Settlement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq*. (the "CAFA"), and the form and manner of that notice is hereby determined to be in full compliance with CAFA.

3.      Pursuant to Federal Rule of Civil Procedure 23, the Court hereby approves the Settlement set forth in the Stipulation and finds that the Settlement is, in all respects, fair,

reasonable and adequate to Lead Plaintiffs and the Settlement Class.  The Court further finds that

the Settlement set forth in the Stipulation is the result of arm's-length negotiations between

experienced counsel representing the interests of the Parties and is in the best interest of the

Settlement Class. The Court further finds that the record is sufficiently developed and complete

to have enabled the Parties to have adequately evaluated and considered their positions.

Accordingly, the Settlement embodied in the Stipulation is hereby finally approved in all

respects. The Parties are hereby directed to perform its terms.

4.     The Court finds that the Lawsuit is a proper non-opt-out class action pursuant to

Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure and hereby certifies, for

purposes of the Settlement only, the Settlement Class consisting of:

> All record and beneficial owners of any unit(s) of Crestwood Midstream Partners
> LP ("*Crestwood Midstream*" or the "*Company*") at any time during the period
> beginning on and including May 5, 2015, through and including September 30,
> 2015 (the date of consummation of the Merger), including any and all of their
> respective successors-in-interest, predecessors, legal representatives, trustees,
> executors, administrators, heirs, assignees, or transferees, immediate and remote,
> and any person or entity acting for or on behalf of, or claiming under, any of
> them, and each of them, but excluding Glenda S. Moore, Kenneth C. Halter
> Trustee and Kenneth C. Halter Trust (the "Intervenors"), who previously
> attempted to intervene into this Lawsuit, and Defendants Crestwood Midstream
> Partners LP, Crestwood Midstream GP, LLC, Robert G. Phillips, Alvin Bledsoe,
> Michael G. France, Philip D. Gettig, Warren H. Gfeller, David Lumpkins, John J.
> Sherman, David Wood, Crestwood Equity Partners LP, Crestwood Equity GP
> LLC, CEQP ST SUB LLC, MGP GP, LLC, Crestwood Midstream Holdings LP,
> And Crestwood Gas Services GP, LLC ("*Defendants*"), the officers and directors
> of Crestwood Midstream, and, at all relevant times, the members of their
> immediate families, their legal representatives, heirs, successors, and assigns, and
> any entity in which Defendants have or had a majority interest (the "*Settlement
> Class*").  At the Settlement Hearing, the Court will consider, among other things,
> whether the Settlement Class should be finally certified pursuant to Rule 23(b)(1)
> and Rule (b)(2) of the Federal Rules of Civil Procedure.

5.      Plaintiff Isaac Aron ("***Plaintiff***") is appointed as the class representative, and the law firms of The Bilek Law Firm, L.L.P. and Monteverde & Associates PC ("***Lead Counsel***") are appointed as counsel for the Settlement Class.

6.      Plaintiff and Lead Counsel have fairly and adequately represented and protected the interests of all the Settlement Class members.

7.      The Court finds, for the purposes of the Settlement only, that each of the requirements of Rule 23(b)(1) and (b)(2) of the Federal Rules of Civil Procedure have been satisfied for the reasons set forth below:

      a.      The members of the Settlement Class are so numerous that joinder of all members is impracticable;

      b.      There are questions of law or fact common to the Settlement Class, which predominate over any questions affecting only individual members;

      c.      The claims or defenses of the class representatives are typical of the claims or defenses of the Settlement Class, and the class representatives will fairly and adequately protect the interest of the Settlement Class;

      d.      The prosecution of separate actions by individual members of the Settlement Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Settlement Class, which would establish incompatible standards of conduct for Defendants;

      e.      Adjudications with respect to individual members of the Settlement Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and

f.      Defendants are alleged to have acted or refused to act on grounds that apply generally to the Settlement Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

8.      The parties to the Stipulation are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation, and the Clerk of the Court is directed to enter and docket this Judgment.

9.      The Lawsuit and the Released Claims (as defined below) are hereby dismissed on the merits and with prejudice, and without costs.

10.     The "*Effective Date*" shall mean the date by which all of the following have occurred:  (i) the Settlement has been approved in all material respects by the Court; (ii) this Judgment has been entered by the Court; and (iii) the time to appeal the Judgment has expired without the filing of any appeals, or, in the event of any appeal, an order has been entered dismissing the appeal or affirming the Judgment, and any time period for further appeal, including a petition for writ of certiorari, has expired.  The Effective Date shall occur even if an appeal is taken from or review is sought of the Judgment, if such appeal(s) or petition(s) for review concerns solely any award to Plaintiff's counsel of attorneys' fees and expenses or the allocation of said attorneys' fees and expenses among counsel.

11.     As of the Effective Date, Plaintiff and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released, remised, relinquished, and discharged all Defendants (including all current directors and officers of Crestwood Midstream, whether named as defendants or not) and any of their present or former parents, affiliates, subsidiaries, and their respective directors, officers, general

partners, limited partners, partnerships, managing directors, employees, agents, attorneys, advisors, insurers, accountants, auditors, trustees, financial advisors, lenders, investment bankers, associates, representatives, heirs, executors, personal representatives, estates, administrators, successors, and assigns (all, collectively, the "***Released Persons***") from any and all claims of every nature and description whatsoever against the Released Persons that have been or could have been asserted of any nature, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims that Plaintiff or any or all other members of the Settlement Class, in their capacity as Crestwood Midstream unitholders, ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type, or in any other capacity, against any of the Released Persons, whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule (including, but not limited to, any claims under federal securities laws or state disclosure law or any claims that could be asserted derivatively on behalf of Crestwood Midstream), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly,  relate to any of the following: (i) the Simplification Transaction, including but not limited to the terms and conditions thereof; (ii) any and all occurrences or matters mentioned or referred to in the Preliminary Proxy, the Final Proxy, or the Supplemental Disclosures concerning the Simplification Transaction; (iii) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the Simplification Transaction; (iv) negotiations in connection with the Simplification Transaction and with any actual or potential acquirer of Crestwood Midstream; (v) the consideration to be received by Settlement Class members or by any other Crestwood Midstream

unitholder in connection with the Simplification Transaction; (vi) the Preliminary Proxy or Final Proxy, any other disclosures, public filings, periodic reports, press releases, proxy statements, or other statements issued, made available or filed relating, directly or indirectly,  to the Simplification Transaction; (vii) the fiduciary obligations of the Released Persons in connection with the Simplification Transaction or any of the matters mentioned or referred to in the Preliminary Proxy, Final Proxy, or Supplemental Disclosures; (viii) claims for fees, expenses, or costs incurred in prosecuting or settling the Lawsuit, or in connection with any claim for benefits conferred on the Settlement Class, except as set forth in Section IV of the Stipulation; (ix) any of the matters referred to or alleged, or which could have been alleged relating to the Simplification Transaction, in any complaint or amendment(s) thereto filed in the Lawsuit (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "***Released Claims***"); provided, however, that the Released Claims shall not include (i) the right of any Settlement Class member or any of the Defendants to enforce the terms of the Settlement., (ii) the claims asserted by plaintiff Kenneth C. Halter Trust, in the Books and Records Lawsuit, and (iii) any claims that have been or may be asserted by the Intervenors, on behalf of themselves.  For the avoidance of doubt, Released Persons includes without limitation TPH and Citigroup Global Markets Inc.

12.     As of the Effective Date, Plaintiff and each of the Settlement Class members shall be deemed to have, and by operation of the Judgment shall have fully, finally, and forever released, remised, relinquished, and discharged the Released Claims, including any and all claims that Plaintiff or any member of the Settlement Class do not know or suspect exist in their or its favor at the time of the release of the Released Claims as against the Released Persons, including without limitation those which, if known, might have affected the decision to enter into

the Settlement (the "*Unknown Claims*").  Plaintiff acknowledges, and the members of the Settlement Class by operation of law shall be deemed to have acknowledged, that he may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiff, and by operation of law the members of the Settlement Class, to completely, fully, finally, and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts.  With respect to any and all of the Released Claims, the Parties stipulate and agree that, upon the Effective Date, Plaintiff shall expressly and each member of the Settlement Class shall be deemed to have, and by operation of the Judgment by the Court shall have, expressly waived, relinquished, and released any and all provisions, rights, and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff acknowledges, and the members of the Settlement Class by operation of law shall be deemed to have acknowledged, that Unknown Claims are expressly included in the definition of Released Claims and that such inclusion was separately bargained for and was a material element of the Settlement and was relied upon by each and all of the Defendants in entering into the Stipulation.

13.     Plaintiff and all Settlement Class members, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns of any of them, and anyone claiming through or on behalf of any of them, are hereby permanently barred and enjoined from instituting, commencing, or prosecuting, either directly or in any other capacity, any of the Released Claims against any of the Released Persons.

14.     As of the Effective Date, Defendants and the Released Persons shall be deemed to have fully, finally, and forever released, relinquished, and discharged Plaintiff, members of the Settlement Class, and Lead Counsel from all claims arising out of the institution, prosecution, settlement, or resolution of the Lawsuit; provided, however, that Defendants and the Released Persons shall retain the right to enforce this Judgment, the terms of the Stipulation, or the Settlement.

15.     None of the Settlement, the Memorandum of Understanding executed by Plaintiff and Defendants on September 22, 2015, (the "***MOU***"), or the Stipulation shall be deemed a presumption, concession, or admission by any of the parties as to the merits, or lack thereof, of any allegations, claims, or defenses that have been or might be alleged or asserted in the Lawsuit or any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Lawsuit or in any other action or proceeding, whether civil, criminal, or administrative, for any purpose other than as provided expressly herein; provided, however, that the Stipulation and/or Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to argue that the Stipulation and/or Judgment has *res judicata*, collateral estoppel, or other issue or claim preclusion effect or to otherwise consummate or enforce the Settlement and/or Judgment.

16.     Lead Counsel are hereby awarded attorneys' fees and expenses in the amount of $575,000 in connection with the Lawsuit, which amount the Court finds to be fair, reasonable, and adequate.  Such attorneys' fees and expenses shall be paid by Crestwood Midstream (or its successor(s) and/or insurer(s)) pursuant to the relevant provisions of the Stipulation.  No counsel representing the Plaintiff or member of the Settlement Class in the Lawsuits shall make any further or additional application for fees and/or expenses to the Court or any other court.

17.     If the Effective Date does not occur, this Judgment shall be rendered null and void and shall be vacated, and, in such event, all orders entered and releases delivered in connection herewith shall be null and void, and the parties shall be returned, without prejudice in any way, to their respective litigation positions immediately prior to the execution of the MOU on September 22, 2015.

18.     The binding effect of this Judgment and the obligations of Plaintiff and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Judgment that relates solely to the issue of Lead Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

19.     Without affecting the finality of this Judgment in any way, the Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

SO ORDERED this _____ day of _____, 2016.

_____
The Honorable Vanessa D. Gilmore
United States District Judge

10

# EXHIBIT 2



Faruqi & Faruqi, LLP focuses on complex civil litigation, including securities, antitrust, wage and hour, and consumer class actions as well as shareholder derivative and merger and transactional litigation.  The firm is headquartered in New York, and maintains offices in California, Delaware and Pennsylvania.

Since its founding in 1995, Faruqi & Faruqi, LLP has served as lead or co-lead counsel in numerous high-profile cases which ultimately provided significant recoveries to investors, consumers and employees.

# PRACTICE AREAS

## SECURITIES FRAUD LITIGATION

Since its inception over eighteen years ago, Faruqi & Faruqi, LLP has devoted a substantial portion of its practice to class action securities fraud litigation. In *In re PurchasePro.com, Inc. Securities Litigation*, No. CV-S-01-0483 (JLQ) (D. Nev.), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $24.2 million settlement in a securities fraud litigation even though the corporate defendant was in bankruptcy.  As noted by Senior Judge Justin L. Quackenbush in approving the settlement, ***"I feel that counsel for plaintiffs evidenced that they were and are skilled in the field of securities litigation."***

Other past achievements include: *In re Olsten Corp. Sec. Litig.*, No. 97-CV-5056 (RDH) (E.D.N.Y.) (recovered $24.1 million dollars for class members) (Judge Hurley stated: "The quality of representation here I think has been excellent."), *In re Tellium, Inc. Sec. Litig.*, No. 02-CV-5878 (FLW) (D.N.J.) (recovered $5.5 million dollars for class members); *In re Mitcham Indus., Inc. Sec. Litig.*, No. H-98-1244 (S.D. Tex.) (recovered $3 million dollars for class members despite the fact that corporate defendant was on the verge of declaring bankruptcy), and *Ruskin v. TIG Holdings, Inc.*, No. 98 Civ. 1068 LLS (S.D.N.Y.) (recovered $3 million dollars for class members).

Recently, in *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479 (PHX) (ROS) (D. Ariz.), Faruqi & Faruqi, LLP, as co-lead counsel for the class, defeated defendants' motion to dismiss, succeeded in having the action certified as a class action, and secured final approval of a $4.5 million dollar settlement for the class.  In *In re Ebix, Inc. Securities Litigation*, No. 11-cv-2400 (RWS) (N.D. Ga.), the court denied defendants' motion to dismiss and Faruqi & Faruqi, LLP, as sole lead counsel, obtained  final approval on June 13, 2014 of a $6.5 million settlement for the class.  In *In re L&L Energy, Inc. Sec. Litig.*, No. 13-cv-6704 (RA) (S.D.N.Y.), Faruqi & Faruqi, LLP, as co-lead counsel, obtained final approval on July 31, 2015 of a $3.5 million settlement for the class.

In *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 Civ. 214 (HB) (S.D.N.Y.), Faruqi & Faruqi, LLP, as sole lead counsel, defeated defendants' motions to dismiss, including those filed by the



company's auditors, on January 27, 2014, and is currently conducting discovery on behalf of class members.

Additionally, Faruqi & Faruqi, LLP is serving as court-appointed lead counsel in the following cases:

- *In re Dynavax Techs. Corp. Sec. Litig.*, No. 13-CV-2796 (CRB) (N.D. Cal) (defeated defendants' motion to dismiss and currently in the discovery phase);
- *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 12-CV-213 (MOC) (DCK) (W.D.N.C.) (defeated defendants' motion to dismiss and currently in the discovery phase);
- *In re Geron Corp., Sec. Litig.*, No. 14-CV-1424 (CRB) (N.D. Cal.) (defeated defendants' motion to dismiss and currently in the discovery phase);
- *Simmons v. Spencer, et al.*, No. 13 Civ. 8216 (RWS) (S.D.N.Y.) (preliminary approval of settlement pending); and
- *In re China Mobile Games & Entertainment Group, Ltd. Sec. Litig.*, No. 14-CV-4471 (KMW) (S.D.N.Y.) (sole lead counsel).

## SHAREHOLDER MERGER AND TRANSACTIONAL LITIGATION

Faruqi & Faruqi, LLP is nationally recognized for its excellence in prosecuting shareholder class actions brought nationwide against officers, directors and other parties responsible for corporate wrongdoing. Most of these cases are based upon state statutory or common law principles involving fiduciary duties owed to investors by corporate insiders as well as Exchange Act violations.

Faruqi & Faruqi, LLP has obtained significant monetary and therapeutic recoveries, including millions of dollars in increased merger consideration for public shareholders; additional disclosure of significant material information so that shareholders can intelligently gauge the fairness of the terms of proposed transactions and other types of therapeutic relief designed to increase competitive bids and protect shareholder value.  As noted by Judge Timothy S. Black of the United States District Court for the Southern District of Ohio in appointing lead counsel *Nichting v. DPL Inc.*, Case No. 3:11-cv-14 (S.D. Ohio), "[a]lthough all of the firms seeking appointment as Lead Counsel have impressive resumes, the Court is most impressed with Faruqi & Faruqi."

For example, in *In re Playboy Enterprises, Inc. Shareholders Litigation*, Consol. C.A. No. 5632-VCN (Del. Ch.), Faruqi & Faruqi, LLP recently achieved a substantial post close settlement of $5.25 million.  In *In re Cogent, Inc. Shareholders Litigation*, Consol. C.A. No. 5780-VC (Del. Ch.) Faruqi & Faruqi, LLP, as co-lead counsel, obtained a post-close cash settlement of $1.9 million after two years of hotly contested litigation; In *Rice v. Lafarge North America, Inc., et al.*, No. 268974-V (Montgomery Cty., Md. Circuit Ct.), Faruqi & Faruqi, LLP, as co-lead counsel represented the public shareholders of Lafarge North America ("LNA") in challenging the buyout of LNA by its French parent, Lafarge S.A., at $75.00 per share.  After discovery and intensive injunction motions practice, the price per share was increased from $75.00 to $85.50 per share, or a total benefit to the public shareholders of $388 million.  The Lafarge

2



court gave Class counsel, including Faruqi & Faruqi, LLP, shared credit with a special committee appointed by the company's board of directors for a significant portion of the price increase.

Similarly, in *In re: Hearst-Argyle Shareholder Litig.,* Lead Case No. 09-Civ-600926 (N.Y. Sup. Ct.) as co-lead counsel for plaintiffs, Faruqi & Faruqi, LLP litigated, in coordination with Hearst-Argyle's special committee, an increase of over 12.5%, or $8,740,648, from the initial transaction value offered for Hearst-Argyle Television Inc.'s stock by its parent company, Hearst Corporation.  Faruqi & Faruqi, LLP, in *In re Alfa Corp. Shareholder Litig.*, Case No. 03-CV-2007-900485.00 (Montgomery Cty, Ala. Cir. Ct.) was instrumental, along with the Company's special committee, in securing an increased share price for Alfa Corporation shareholders of $22.00 from the originally-proposed $17.60 per share offer, which represented over a $160 million benefit to class members, and obtained additional proxy disclosures to ensure that Alfa shareholders were fully-informed before making their decision to vote in favor of the merger, or seek appraisal.

Moreover, in *In re Fox Entertainment Group, Inc. S'holders Litig.*, Consolidated C.A. No. 1033-N (Del. Ch. 2005), Faruqi & Faruqi, LLP, a member of the three (3) firm executive committee, and in coordination with Fox Entertainment Group's special committee, created an increased offer price from the original proposal to shareholders, which represented an increased benefit to Fox Entertainment Group, Inc. shareholders of $450 million.  Also, in *In re Howmet Int'l S'holder Litig.*, Consolidated C.A. No. 17575 (Del. Ch. 1999) Faruqi & Faruqi, LLP, in coordination with Howmet's special committee, successfully obtained an increased benefit to class members of $61.5 million dollars).

Recently, in *In re Orchard Enterprises, Inc. Stockholder Litigation*, C.A. No. 7840-VCL (Del. Ch.), Faruqi & Faruqi, LLP acted as co-lead counsel with two other firms.  That action involved the approval of a merger by Orchard's Board of Directors pursuant to which Dimensional Associates LLC would cash-out the stock of Orchard's minority common stockholders at a price of $2.05 per share and then take Orchard private.  On April 11, 2014, the parties reached an agreement to settle their claims for a payment of $10.725 million to be distributed among the Class, which considerably exceeded the $2.62 per share difference between the $2.05 buyout price and the $4.67 appraisal price determined in *In re Appraisal of The Orchard Enterprises, Inc.*, C.A. No. 5713-CS, 2012 WL 2923305 (Del. Ch. July 18, 2012).

Faruqi also has noteworthy successes in achieving injunctive or declaratory relief pre and post close in cases where corporate wrongdoing deprives shareholders of material information or an opportunity to share in potential profits.  In *In re Harleysville Group, Inc. S'holders Litigation*, C.A. Bo. 6907-VCP (Del. Ch. 2014), Faruqi as sole lead counsel obtained significant disclosures for stockholders pre-close and secured valuable relief post close in the form of an Anti-Flip Provision providing former stockholders with 25% of any profits in Qualifying Sale.  In April 2012, Faruqi as sole lead obtained an unprecedented injunction in *Knee v. Brocade Communications Systems, Inc.*, No. 1-12-CV-220249, slip



op. at 2 (Cal. Super. Ct. Apr. 10, 2012) (Kleinberg, J.).   In *Brocade*, Faruqi, as sole lead counsel for plaintiffs, successfully obtained an injunction enjoining Brocade's 2012 shareholder vote because certain information relating to projected executive compensation was not properly disclosed in the proxy statement.  (Order After Hearing [Plaintiff's Motion for Preliminary Injunction; Motions to Seal]). In *Kajaria v. Cohen*, No. 1:10-CV-03141 (N.D. Ga., Atlanta Div.), Faruqi & Faruqi, LLP, succeeded in having the district court order Bluelinx Holdings Inc., the target company in a tender offer, to issue additional material disclosures to its recommendation statement to shareholders before the expiration of the tender offer.

## SHAREHOLDER DERIVATIVE LITIGATION

Faruqi & Faruqi, LLP has extensive experience litigating shareholder derivative actions on behalf of corporate entities.  This litigation is often necessary when the corporation has been injured by the wrongdoing of its officers and directors.  This wrongdoing can be either active, such as the wrongdoing by certain corporate officers in connection with purposeful backdating of stock-options, or passive, such as the failure to put in place proper internal controls, which leads to the violation of laws and accounting procedures.  A shareholder has the right to commence a derivative action when the company's directors are unwilling or unable, to pursue claims against the wrongdoers, which is often the case when the directors themselves are the wrongdoers.

The purpose of the derivative action is threefold: (1) to make the company whole by holding those responsible for the wrongdoing accountable; (2) the establishment of procedures at the company to ensure the damaging acts can never again occur at the company; and (3) make the company more responsive to its shareholders.  Improved corporate governance and shareholder responsiveness are particularly valuable because they make the company a stronger one going forward, which benefits its shareholders.  For example, studies have shown the companies with poor corporate governance scores have 5-year returns that are 3 .95% below the industry average, while companies with good corporate governance scores have 5-year returns that are 7.91 % above the industry-adjusted average.   The difference in performance between these two groups is 11 .86%.  *Corporate Governance Study: The Correlation between Corporate Governance and Company Performance*, Lawrence D. Brown, Ph.D., Distinguished Professor of Accountancy, Georgia State University and Marcus L. Caylor, Ph.D. Student, Georgia State University.  Faruqi & Faruqi, LLP has achieved all three of the above stated goals of a derivative action.  The firm regularly obtains significant corporate governance changes in connection with the successful resolution of derivative actions, in addition to monetary recoveries that inure directly to the benefit of the company.  In each case, the company's shareholders indirectly benefit through an improved market price and market perception.



In *In re UnitedHealth Group Incorporated Derivative Litig.*, Case No. 27 CV 06-8065 (Minn. 4th Judicial Dist. 2009) Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, obtained a recovery of more than $930 million for the benefit of the Company and corporate governance reforms designed to make UnitedHealth a model of corporate responsibility and transparency.  ***At the time, the settlement reached was believed to be the largest settlement ever in a derivative case***.  See "UnitedHealth's Former Chief to Repay $600 Million," Bloomberg.com, December 6, 2007 ("the settlement . . . would be the largest ever in a 'derivative' suit . . . according to data compiled by Bloomberg.").

As co-lead counsel in *Weissman v. John, et al.*, Cause No. 2007-31254 (Tex. Harris County 2008) Faruqi & Faruqi, LLP, diligently litigated a shareholder derivative action on behalf of Key Energy Services, Inc. for more than three years and caused the company to adopt a multitude of corporate governance reforms which far exceeded listing and regulatory requirements.  Such reforms included, among other things, the appointment of a new senior management team, the realignment of personnel, the institution of training sessions on internal control processes and activities, and the addition of 14 new accountants at the company with experience in public accounting, financial reporting, tax accounting, and SOX compliance.

More recently, Faruqi & Faruqi, LLP concluded shareholder derivative litigation in *The Booth Family Trust, et al. v. Jeffries, et al.*, Lead Case No. 05-cv-00860 (S.D. Ohio 2005) on behalf of Abercrombie & Fitch Co.  Faruqi & Faruqi, LLP, as co-lead counsel for plaintiffs, litigated the case for six years through an appeal in the U.S. Court of Appeals for the Sixth Circuit where it successfully obtained reversal of the district court's ruling dismissing the shareholder derivative action in April 2011.  Once remanded to the district court, Faruqi & Faruqi, LLP caused the company to adopt important corporate governance reforms narrowly targeted to remedy the alleged insider trading and discriminatory employment practices that gave rise to the shareholder derivative action.

The favorable outcome obtained by Faruqi & Faruqi, LLP in *In re Forest Laboratories, Inc. Derivative Litigation*, Lead Civil Action No. 05-cv-3489 (S.D.N.Y. 2005) is another notable achievement for the firm.  After more than six years of litigation, Faruqi & Faruqi, LLP, as co-lead counsel, caused the company to adopt industry-leading corporate governance measures that included rigorous monitoring mechanisms and Board-level oversight procedures to ensure the timely and complete publication of clinical drug trial results to the investing public and to deter, among other things, the unlawful off-label promotion of drugs.

NEW YORK          CALIFORNIA          DELAWARE          PENNSYLVANIA



## ANTITRUST LITIGATION

The attorneys at Faruqi & Faruqi, LLP represent direct purchasers, competitors, third-party payors, and consumers in a variety of individual and class action antitrust cases brought under Sections 1 and 2 of the Sherman Act.  These actions, which typically seek treble damages under Section 4 of the Clayton Act, have been commenced by businesses and consumers injured by anticompetitive agreements to fix prices or allocate markets, conduct that excludes or delays competition, and other monopolistic or conspiratorial conduct that harms competition.

*Actions for excluded competitors*.  Faruqi & Faruqi represents competitors harmed by anticompetitive practices that reduce their sales, profits, and/or market share.  One representative action is *Babyage.com, Inc., et al. v. Toys "R" Us, Inc., et al.* where Faruqi & Faruqi was retained to represent three internet retailers of baby products, who challenged a dominant retailer's anticompetitive scheme, in concert with their upstream suppliers, to impose and enforce resale price maintenance in violation of §§ 1 and 2 of the Sherman Act and state law.  The action sought damages measured as lost sales and profits.  This case was followed extensively by the Wall Street Journal.  After several years of litigation, this action settled for an undisclosed amount.

*Actions for direct purchasers*.  Faruqi & Faruqi represents direct purchasers who have paid overcharges as a result of anticompetitive practices that raise prices.  These actions are typically initiated as class actions.  A representative action on behalf of direct purchasers is *Rochester Drug Co-Operative, Inc. v. Warner Chilcott Public Limited Company, et al.*, No. 12-3824 (E.D. Pa.), in which Faruqi & Faruqi was appointed co-lead counsel for the proposed plaintiff class under Federal Rule of Civil Procedure 23(g).  Faruqi & Faruqi's attorneys are counsel to direct purchasers (typically wholesalers) in multiple such class actions.

*Actions for third-party payors*.  Faruqi & Faruqi represents, both in class actions and in individual actions, insurance companies who have reimbursed their policyholders at too high a rate due to anticompetitive prices that raise prices.  One representative action is *In re Tricor Antitrust Litigation*, No. 05-360 (D. Del.), where Faruqi & Faruqi represented PacifiCare and other large third-party payors challenging the conduct of Abbott Laboratories and Laboratories Fournier in suppressing generic drug competition, in violation of §§ 1 and 2 of the Sherman Act. The *Tricor* litigation settled for undisclosed amount in 2010.

*Results*.  Faruqi & Faruqi's attorneys have consistently obtained favorable results in their antitrust engagements.  Non-confidential results include the following:  *In re Iowa Ready-Mixed Concrete Antitrust Litigation*, No. C 10-4038 (N.D. Iowa) ($18.5 million settlement); *In re Metoprolol Succinate Direct Purchaser Antitrust Litigation*, 06-52 (D. Del.) ($20 million settlement); *In re Ready-Mixed Concrete*



*Antitrust Litigation*, No. 05-979 (S.D. Ind.) ($40 million settlement); *Rochester Drug Co-Operative, Inc., et al. v. Braintree Labs, Inc.*, No. 07-142-SLR (D. Del.) ($17.25 million settlement).

A more complete list of Faruqi & Faruqi's active and resolved antitrust cases can be found on its web site at *www.faruqilaw.com.*

## CONSUMER PROTECTION LITIGATION

Attorneys at Faruqi & Faruqi, LLP have advocated for consumers' rights, successfully challenging some of the nation's largest and most powerful corporations for a variety of improper, unfair and deceptive business practices.  Through our efforts, we have recovered hundreds of millions of dollars and other significant remedial benefits for our consumer clients.

For example, in *Bates v. Kashi Co., et al.*, Case No. 11-CV-1967-H BGS (S.D. Cal. 2011), as co-lead counsel for the class, Faruqi & Faruqi, LLP secured a $5.0 million settlement fund on behalf of California consumers who purchased Kashi products that were deceptively labeled as "nothing artificial" and "all natural."  The settlement provides class members with a full refund of the purchase price in addition to requiring Kashi to modify its labeling and advertising to remove "All Natural" and "Nothing Artificial" from certain products.  As noted by Judge Marilyn L. Huff in approving the settlement, *"Plaintiffs' counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims."*  Moreover, in *Thomas v. Global Vision Products*, Case No. RG-03091195 (California Superior Ct., Alameda Cty.), Faruqi & Faruqi, LLP served as co-lead counsel in a consumer class action lawsuit against Global Vision Products, Inc., the manufacturer of the Avacor hair restoration product and its officers, directors and spokespersons, in connection with the false and misleading advertising claims regarding the Avacor product.  Though the company had declared bankruptcy in 2007, Faruqi & Faruqi, LLP, along with its co-counsel, successfully prosecuted two trials to obtain relief for the class of Avacor purchasers.  In January 2008, a jury in the first trial returned a verdict of almost $37 million against two of the creators of the product.  In November 2009, another jury awarded plaintiff and the class more than $50 million in a separate trial against two other company directors and officers.  This jury award represented the largest consumer class action jury award in California in 2009 (according to VerdictSearch, a legal trade publication).

Additionally, in *Rodriguez v. CitiMortgage, Inc.*, Case No. 11-cv-04718-PGG-DCF (S.D.N.Y. 2011), Faruqi & Faruqi, LLP, as co-lead class counsel, reached a significant settlement with CitiMortgage related to improper foreclosure practices of homes owned by active duty servicemembers. The settlement was recently finalized pursuant to a Final Approval Order dated October 6, 2015, which provides class members with a monetary recovery of at least $116,785.00 per class member, plus the amount of any lost equity in the foreclosed property.



Below is a non-exhaustive list of settlements where Faruqi & Faruqi, LLP and its partners have served as lead or co-lead counsel:

- *In re Sinus Buster Products Consumer Litig.,* Case No. 1:12-cv-02429-ADS-AKT (E.D.N.Y. 2012). The firm represented a nationwide class of purchasers of assorted cold, flu and sinus products. A settlement was obtained, providing class members with a cash refund up to $10 and requiring defendant to discontinue the marketing and sale of certain products.
- *In re: Alexia Foods, Inc. Litigation.,* Case No. 4:11-cv-06119 (N.D. Cal. 2011). The firm represented a proposed class of all persons who purchased certain frozen potato products that were deceptively advertised as "natural" or "all natural." A settlement was obtained, providing class members with the cash refunds up to $35.00 and requiring defendant to cease using a synthetic chemical compound in future production of the products.
- *In re: Haier Freezer Consumer Litig.,* Case No. 5:11-CV-02911-EJD (N.D. Cal. 2011). The firm represented a nationwide class of consumers who purchased certain model freezers, which were sold in violation of the federal standard for maximum energy consumption. A settlement was obtained, providing class members with cash payments of between $50 and $325.80.
- *Loreto v. Coast Cutlery Co.,* Case No. 11-3977 SDW-MCA (D.N.J. 2011) The firm represented a proposed nationwide class of people who purchased stainless steel knives and multi-tools that were of a lesser quality than advertised. A settlement was obtained, providing class members with a full refund of the purchase price.
- *Rossi v Procter & Gamble Company.,* Case No. 11-7238 (D.N.J. 2011). The firm represented a nationwide class of consumers who purchased deceptively marketed "Crest Sensitivity" toothpaste. A settlement was obtained, providing class members with a full refund of the purchase price.
- *In re: Michaels Stores Pin Pad Litig.,* Case No. 1:11-CV-03350 CPK (N.D. Ill. 2011). The firm represented a nationwide class of persons against Michaels Stores, Inc. for failing to secure and safeguard customers' personal financial data. A settlement was obtained, which provided class members with monetary recovery for unreimbursed out-of-pocket losses incurred in connection with the data breach, as well as up to four years of credit monitoring services.
- *Kelly, v. Phiten,* Case No. 4:11-cv-00067 JEG (S.D. Iowa 2011). The firm represented a proposed nationwide class of consumers who purchased Defendant Phiten USA's jewelry and other products, which were falsely promoted to balance a user's energy flow. A settlement was obtained, providing class members with up to 300% of the cost of the product and substantial injunctive relief requiring Phiten to modify its advertising claims.
- *In re: HP Power-Plug Litigation,* Case No. 06-1221 (N.D. Cal. 2006). The firm represented a proposed nationwide class of consumers who purchased defective laptops manufactured by defendant. A settlement was obtained, which provided full relief to class members, including among other benefits a cash payment up to $650.00 per class member, or in the alternative, a repair free-of-charge and new limited warranties accompanying repaired laptops.
- *Delre v. Hewlett-Packard Co.,* C.A. No. 3232-02 (N.J. Super. Ct. 2002). The firm represented a proposed nationwide class of consumers (approximately 170,000 members) who purchased, HP dvd-100i dvd-writers ("HP 100i") based on misrepresentations regarding the write-once ("DVD+R") capabilities of the HP 100i and the compatibility of DVD+RW disks written by HP 100i with DVD players and other optical storage devices. A settlement was obtained, which provided full relief to class members, including among other benefits, the replacement of defective HP 100i with its more current, second generation DVD writer, the HP 200i, and/or refunds the $99 it had charged some consumers to upgrade from the HP 100i to the HP 200i prior to the settlement.

In addition, Faruqi & Faruqi, LLP and its partners are currently serving as lead or co-lead counsel in the following class action cases:



- *Dei Rossi et al. v. Whirlpool Corp.,* Case No. 2:12-cv-00125-TLN-JFM (E.D. Cal. 2012) (representing a certified class of people who purchased mislabeled KitchenAid brand refrigerators from Whirlpool Corp.)
- *In re: Scotts EZ Seed Litigation*, Case No. 7:12-cv-04727-VB (S.D.N.Y. 2012) (representing a certified class of purchasers of mulch grass seed products advertised as a superior grass seed product capable of growing grass in the toughest conditions and with half the water.)
- *Forcellati et al., v Hyland's, Inc. et al.,* Case No. 2:12-cv-01983-GHK-MRW (C.D. Cal. 2012) (representing a certified nationwide class of purchasers of children's cold and flu products.)
- *Avram v. Samsung Electronics America, Inc., et al.,* Case No. 2:11-cv-06973 KM-MCA (D.N.J. 2011) (representing a proposed nationwide class of persons who purchased mislabeled refrigerators from Samsung Electronics America, Inc. for misrepresenting the energy efficiency of certain refrigerators.)
- *Dzielak v. Whirlpool Corp., et al.*, Case No. 12-CIV-0089 SRC-MAS (D.N.J. 2011) (representing a proposed nationwide class of purchasers of mislabeled Maytag brand washing machines for misrepresenting the energy efficiency of such washing machines.)
- *In re: Shop-Vac Marketing and Sales Practices Litigation,* Case No. 4:12-md-02380-YK (M.D. Pa. 2012) (representing a proposed nationwide class of persons who purchased vacuums or Shop Vac's with overstated horsepower and tank capacity specifications.)
- *In re: Oreck Corporation Halo Vacuum And Air Purifiers Marketing And Sales Practices Litigation*, MDL No. 2317 (the firm was appointed to the executive committee, representing a proposed nationwide class of consumers who purchased vacuums and air purifiers that were deceptively advertised effective in eliminating common viruses, germs and allergens.)

## EMPLOYMENT PRACTICES LITIGATION

Faruqi & Faruqi, LLP is a recognized leader in protecting the rights of employees.  The firm's Employment Practices Group is committed to protecting the rights of current and former employees nationwide.  The firm is dedicated to representing employees who may not have been compensated properly by their employer or who have suffered investment losses in their employer-sponsored retirement plan.  The firm also represents individuals (often current or former employees) who assert that a company has allegedly defrauded the federal or state government.

Faruqi & Faruqi represents current and former employees nationwide whose employers have failed to comply with state and/or federal laws governing minimum wage, hours worked, overtime, meal and rest breaks, and unreimbursed business expenses.  In particular, the firm focuses on claims against companies for (i) failing to properly classify their employees for purposes of paying them proper overtime pay, or (ii) requiring employees to work "off-the-clock," and not paying them for all of their actual hours worked.

In prosecuting claims on behalf of aggrieved employees, Faruqi & Faruqi has successfully defeated summary judgment motions, won numerous collective certification motions, and obtained significant monetary recoveries for current and former employees.  In the course of litigating these claims, the firm has been a pioneer in developing the growing area of wage and hour law.  In *Creely, et al. v. HCR ManorCare, Inc.*, C.A. No. 3:09-cv-02879 (N.D. OH), Faruqi & Faruqi, along with its co-counsel,



obtained one of the first decisions to reject the application of the Supreme Court's Fed. R. Civ. P. 23 certification analysis in *Wal-Mart Stores, Inc. v. Dukes et. al.,* 131 S. Ct. 2541 (2011) to the certification process of collective actions brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA"). The firm, along with its co-counsel, also recently won a groundbreaking decision for employees seeking to prosecute wage and hour claims on a collective basis in *Symczyk v. Genesis Healthcare Corp. et al.*, No. 10-3178 (3d Cir. 2011). In *Symczyk,* the Third Circuit reversed the district court's ruling that an offer of judgment mooted a named plaintiff's claim in an action asserting wage and hour violations of the FLSA. Notably, the Third Circuit also affirmed the two-step process used for granting certification in FLSA cases. The *Creely* decision, like the Third Circuit's *Genesis* decision, will invariably be relied upon by courts and plaintiffs in future wage and hour actions.

Some of the firm's notable recoveries include *Bazzini v. Club Fit Management, Inc.,* C.A. No. 08-cv-4530 (S.D.N.Y. 2008), wherein the firm settled a FLSA collective action lawsuit on behalf of tennis professionals, fitness instructors and other health club employees on very favorable terms. Similarly, in *Garcia, et al., v. Lowe's Home Center, Inc., et al.*, C.A. No. GIC 841120 (Cal. Sup. Ct. 2008), Faruqi & Faruqi served as co-lead counsel and recovered $1.6 million on behalf of delivery workers who were unlawfully treated as independent contractors and not paid appropriate overtime wages or benefits.

The firm's Employment Practices Group also represents participants and beneficiaries of employee benefit plans covered by the Employee Retirement Income Security Act of 1874 ("ERISA"). In particular the firm protects the interests of employees in retirement savings plans against the wrongful conduct of plan fiduciaries. Often, these retirement savings plans constitute a significant portion of an employee's retirement savings. ERISA, which codifies one of the highest duties known to law, requires an employer to act in the best interests of the plan's participants, including the selection and maintenance of retirement investment vehicles. For example, an employer who administers a retirement savings plan (often a 401(k) plan) has a fiduciary obligation to ensure that the retirement plan's assets (including employee and any company matching contributions to the plan) are directed into appropriate and prudent investment vehicles.

Faruqi & Faruqi has brought actions on behalf of aggrieved plan participants where a company and/or certain of its officers breached their fiduciary duty by allowing its retirement plans to invest in shares of its own stock despite having access to materially negative information concerning the company which materially impacted the value of the stock. The resulting losses can be devastating to employees' retirement accounts. Under certain circumstances, current and former employees can seek to hold their employers accountable for plan losses caused by the employer's breach of their ERISA-mandated duties.

The firm's Employment Practices Group also represents whistleblowers in actions under both federal and state False Claims Acts. Often, current and former employees of business entities that

10



contract with, or are otherwise bound by obligations to, the federal and state governments become aware of wrongdoing that causes the government to overpay for a good or service. When a corporation perpetrates such fraud, a whistleblower may sue the wrongdoer in the government's name to recover up to three times actual damages and additional civil penalties for each false statement made. Whistleblowers who initiate such suits are entitled to a portion of the recovery attained by the government, generally ranging from 15% to 30% of the total recovery.

False Claims Act cases often arise in context of Medicare and Medicaid fraud, pharmaceutical fraud, defense contractor fraud, federal government contractor fraud, and fraudulent loans and grants. For instance, in *United States of America, ex rel. Ronald J. Streck v. Allergan, Inc. et al.*, No. 2:08-cv-05135-ER (E.D. Pa.), Faruqi & Faruqi represents a whistleblower in an un-sealed case alleging fraud against thirteen pharmaceutical companies who underpaid rebates they were obliged to pay to state Medicaid programs on drugs sold through those programs.

Based on its experience and expertise, the firm has served as the principal attorneys representing current and former employees in numerous cases across the country alleging wage and hour violations, ERISA violations and violations of federal and state False Claims Acts.

# <u>ATTORNEYS</u>

## NADEEM FARUQI

Mr. Faruqi is Co-Founder and Managing Partner of the firm. Mr. Faruqi oversees all aspects of the firm's practice areas. Mr. Faruqi has acted as sole lead or co-lead counsel in many notable class or derivative action cases, such as: *In re Olsten Corp. Secs. Litig.*, C.A. No. 97-CV-5056 (E.D.N.Y.) (recovered $25 million dollars for class members); *In re PurchasePro, Inc., Secs. Litig.*, Master File No. CV-S-01-0483 (D. Nev. 2001) ($24.2 million dollars recovery on behalf of the class in securities fraud action); *In re Avatex Corp. S'holders Litig.*, C.A. No. 16334-NC (Del. Ch. 1999) (established certain new standards for preferred shareholders rights); *Dennis v. Pronet, Inc.*, C.A. No. 96-06509 (Tex. Dist. Ct.) (recovered over $15 million dollars on behalf of shareholders); *In re Tellium, Inc. Secs. Litig.*, C.A. No. 02-CV-5878 (D.N.J.) (class action settlement of $5.5 million); *In re Tenet Healthcare Corp. Derivative Litig.*, Lead Case No. 01098905 (Cal. Sup. Ct. 2002) (achieved a $51.5 million benefit to the corporation in derivative litigation).

Upon graduation from law school, Mr. Faruqi was associated with a large corporate legal department in New York. In 1988, he became associated with Kaufman Malchman Kirby & Squire, specializing in shareholder litigation, and in 1992, became a member of that firm. While at Kaufman Malchman Kirby & Squire, Mr. Faruqi served as one of the trial counsel for plaintiff in *Gerber v. Computer*



*Assocs. Int'l, Inc.*, 91-CV-3610 (E.D.N.Y. 1991).  Mr. Faruqi actively participated in cases such as: *Colaprico v. Sun Microsystems*, No. C-90-20710 (N.D. Cal. 1993) (recovery in excess of $5 million on behalf of the shareholder class); *In re Jackpot Secs. Enters., Inc. Secs. Litig.*, CV-S-89-805 (D. Nev. 1993) (recovery in excess of $3 million on behalf of the shareholder class); *In re Int'l Tech. Corp. Secs. Litig.*, CV 88-440 (C.D. Cal. 1993) (recovery in excess of $13 million on behalf of the shareholder class); and *In re Triangle Inds., Inc. S'holders Litig.*, C.A. No. 10466 (Del. Ch. 1990) (recovery in excess of $70 million).

Mr. Faruqi earned his Bachelor of Science Degree from McGill University, Canada (B.Sc. 1981), his Master of Business Administration from the Schulich School of Business, York University, Canada (MBA 1984) and his law degree from New York Law School (J.D., *cum* laude, 1987).  Mr. Faruqi was Executive Editor of New York Law School's Journal of International and Comparative Law.  He is the author of "Letters of Credit: Doubts As To Their Continued Usefulness," Journal of International and Comparative Law, 1988.  He was awarded the Professor Ernst C. Stiefel Award for Excellence in Comparative, Common and Civil Law by New York Law School in 1987.

## LUBNA M. FARUQI

Ms. Faruqi is Co-Founder of Faruqi & Faruqi, LLP.  Ms. Faruqi is involved in all aspects of the firm's practice.  Ms. Faruqi has actively participated in numerous cases in federal and state courts which have resulted in significant recoveries for shareholders.

Ms. Faruqi was involved in litigating the successful recovery of $25 million to class members in *In re Olsten Corp. Secs. Litig.*, C.A. No. 97-CV-5056 (E.D.N.Y.).  She helped to establish certain new standards for preferred shareholders in Delaware in *In re Avatex Corp. S'holders Litig.*, C.A. No. 16334-NC (Del. Ch. 1999).  Ms. Faruqi was also lead attorney in *In re Mitcham Indus., Inc. Secs. Litig.*, Master File No. H-98-1244 (S.D. Tex. 1998), where she successfully recovered $3 million on behalf of class members despite the fact that the corporate defendant was on the verge of declaring bankruptcy.

Upon graduation from law school, Ms. Faruqi worked with the Department of Consumer and Corporate Affairs, Bureau of Anti-Trust, the Federal Government of Canada.  In 1987, Ms. Faruqi became associated with Kaufman Malchman Kirby & Squire, specializing in shareholder litigation, where she actively participated in cases such as: *In re Triangle Inds., Inc. S'holders Litig.*, C.A. No. 10466 (Del. Ch. 1990) (recovery in excess of $70 million); *Kantor v. Zondervan Corp.*, C.A. No. 88 C5425 (W.D. Mich. 1989) (recovery of $3.75 million on behalf of shareholders); and *In re A.L. Williams Corp. S'holders Litig.*, C.A. No. 10881 (Del. Ch. 1990) (recovery in excess of $11 million on behalf of shareholders).

Ms. Faruqi graduated from McGill University Law School at the age of twenty-one with two law degrees: Bachelor of Civil Law (B.C.L.) (1980) and a Bachelor of Common Law (L.L.B.) (1981).

12



## JAMES R. BANKO

James R. Banko is a partner in Faruqi & Faruqi's Delaware office.

Mr. Banko has substantial practice in complex litigation, including securities and corporate fraud. Prior to joining the Firm, Mr. Banko practiced law at Grant & Eisenhofer, P.A. where he focused on securities and corporate fraud litigation. Mr. Banko represented sophisticated institutional investors in a high-profile securities fraud class action, *In re Tyco International, Ltd. Securities Litig.*, which resulted in $3 billion class action settlement and in which Mr. Banko took and defended numerous depositions and wrote class certification, discovery, and summary judgment briefs. Mr. Banko was also involved in the recovery of a successful settlement against a former chief financial officer on behalf of a European fund which included discovery under the Hague Convention. Mr. Banko also took a leading role in several other securities fraud class actions against pharmaceutical companies including briefing of Daubert motions. Representative clients included various state attorney generals, pension funds, and securities funds.

Mr. Banko was previously an associate in the litigation department at Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY where he practiced in all aspects of general civil litigation, including complex commercial, contract, corporate, product liability, and trade secret cases, including jury trials. Responsibilities included hearings, pleadings, pretrial discovery, motions for summary judgment, motions in limine, argument of substantive and procedural motions in federal and state courts, engaging in settlement negotiations and drafting of agreements.

Mr. Banko received his J.D. from the University of Pennsylvania Law School where he was a Senior Board Member of the Journal of International Business Law. Mr. Banko is admitted, and in good standing, in NY, NJ, PA, DC, DE, FL, and CA as well as numerous United States district courts as well as the 1st, 2d, 3d and 9th Circuits and the U.S. Supreme Court.

## PETER KOHN

Mr. Kohn is a partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Prior to joining the firm, Mr. Kohn was a shareholder at Berger & Montague, P.C., where he prepared for trial several noteworthy lawsuits under the Sherman Act, including *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220M settlement), *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.) ($110M settlement), *Meijer, Inc. v. Warner-Chilcott*, No. 05-2195 (D.D.C.) ($22M settlement), *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175M settlement), *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75M settlement), *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.) ($72.5M settlement), and *In re Tricor*

13



*Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.) ($250M settlement). The court appointed him as co-lead counsel for the plaintiffs in *In re Pennsylvania Title Ins. Antitrust Litig.*, No. 08cv1202 (E.D. Pa.) (pending action on behalf of direct purchasers of title insurance alleging illegal cartel pricing under § 1 of the Sherman Act).

A sampling of Mr. Kohn's reported cases in the antitrust arena includes *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008) (issue of direct purchaser standing under *Illinois Brick*); *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 558 F. Supp.2d 575 (E.D. Pa. 2008) (denying defendants' motion to dismiss following the Supreme Court's decisions in *Twombly* and *Leegin*, and for the first time in the Third Circuit adopting the Merger Guidelines method of relevant market definition); *J.B.D.L. Corp. v. Wyeth-Ayerst Laboratories, Inc.*, 485 F.3d 880 (6th Cir. 2007) (affirming summary judgment in exclusionary contracting case); and *Babyage.com, Inc. v. Toys "R" Us, Inc.*, 458 F. Supp.2d 263 (E.D. Pa. 2006) (discoverability of surreptitiously recorded statements prior to deposition of declarant).

Mr. Kohn is a 1989 graduate of the University of Pennsylvania (B.A., English) and a 1992 *cum laude* graduate of Temple University Law School, where he was senior staff for the *Temple Law Review* and received awards for trial advocacy. Mr. Kohn was recognized as a "recommended" antitrust attorney in the Northeast in 2009 by the Legal 500 guide (www.legal500.com) and was chosen by his peers as a "SuperLawyer" in Pennsylvania in 2009, 2010, and 2011. In 2011, Mr. Kohn was selected as a Fellow in the Litigation Counsel of America, a trial lawyer honorary society composed of less than one-half of one percent of American lawyers. He is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States District Court for the Eastern District of Pennsylvania (1995-present), the United States District Court for the Eastern District of Michigan (2010-present), the United States Court of Appeals for the Third Circuit (2000-present), the United States Court of Appeals for the Sixth Circuit (2005-present), and the United States Court of Appeals for the Federal Circuit (2011-present).

## RICHARD W. GONNELLO

Richard W. Gonnello is a partner in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Mr. Gonnello was a partner at Entwistle & Cappucci LLP and an associate at Latham & Watkins LLP. Mr. Gonnello has represented institutional and individual investors in obtaining substantial recoveries in numerous class actions, including *In re Royal Ahold Sec. Litig.*, No. 03-md-01539 (D. Md. 2003) ($1.1 billion) and *In re Tremont Securities Law, State Law and Insurance Litigation*, No. 08-cv-11117 (S.D.N.Y. 2011) ($100 million+). Mr. Gonnello has also obtained favorable recoveries for institutional investors pursuing direct securities fraud claims, including cases against *Qwest Communications International, Inc.* ($175 million+) and *Tyco Int'l Ltd* ($21 million).

14



Mr. Gonnello has co-authored the following articles: "*'Staehr' Hikes Burden of Proof to Place Investor on Inquiry Notice*, "New York Law Journal, December 15, 2008; and "*Potential Securities Fraud: 'Storm Warnings' Clarified*," New York Law Journal, October 23, 2008.

Mr. Gonnello graduated *summa cum laude* from Rutgers University in 1995, where he was named Phi Beta Kappa. He received his law degree from UCLA School of Law (J.D. 1998), and was a member of the UCLA Journal of Environmental Law & Policy.

## T. TALYANA BROMBERG

Ms. Bromberg is a partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Prior to joining the Firm, Ms. Bromberg practiced law at Grant & Eisenhofer, P.A. where she represented whistleblowers in pharmaceutical, financial, health care, and government contractor cases, with settlements totaling over $4.5 billion. Among these settlements was a $1.6 billion settlement against Abbott Laboratories related to off-label promotion and payment of kickbacks for anti-seizure drug Depakote, and a $3 billion settlement against GlaxoSmithKline related to unlawful marketing tactics and kickbacks for GSK drugs. During her tenure at Grant & Eisenhofer, Ms. Bromberg, among others, also represented sophisticated institutional investors in complex international securities class actions, including *In re Parmalat Securities Litigation* and *In re Vivendi Universal S.A. Securities Litigation*.

Ms. Bromberg previously served as partner at a prominent law firm in Riga, Latvia, where she focused on commercial litigation. She also served as in-house counsel for a U.S.-Latvian joint venture in the exporting and manufacturing sector. Ms. Bromberg received her L.L.M. degree from the University of Pennsylvania Law School and her J.D. equivalent from the University of Latvia School of Law in Riga, Latvia in 1989. Ms. Bromberg is a member of the New York Bar and is admitted to practice in the United States District Courts for the Eastern and Southern Districts of New York.

## ADAM R. GONNELLI

Mr. Gonnelli is a partner in Faruqi & Faruqi, LLP's New York office.

Since joining Faruqi & Faruqi, Mr. Gonnelli has concentrated his practice on wage and hour litigation, transaction litigation and consumer class actions. Representative cases include *Garcia v. Lowe's, Cos., Inc.*, No. 841120 (Cal. Super. Ct.) (case to recover overtime pay for delivery drivers); *In re NutraQuest, Inc.*, No. 06-202 (D.N.J.) (consumer fraud case against national diet supplement company); *Wanzo v. Nextel Commc'ns, Inc.*, No. GIC 791626 (Cal. Sup. Ct.) (consumer case challenging change in "nights and weekends" plan); *Rice v. Lafarge North America*, No. 268974 (Md. Cir. Ct.) (merger case resulted in a benefit of $388 million); and *In re Fox Entm't Group, Inc. S'holders Litig.*, No. 1033-N (Del. Ch. 2005) (benefit to shareholders of $450 million).

15



Mr. Gonnelli received a B.A. from Rutgers University (Newark) in 1989 and a J.D. from Cornell Law School in 1997.  At Rutgers University, Mr. Gonnelli lettered in football and fencing and served as Student Government President.  Prior to attending law school, Mr. Gonnelli was a Financial Writer at the Federal Reserve Bank of New York, where he wrote educational materials on international trade and monetary policy.  While attending Cornell Law School, Mr. Gonnelli served as Editor-in-Chief of the Cornell Journal of Law and Public Policy and was a member of the Atlantic Regional Championship moot court team in the Jessup International Law Moot Court Competition (1997).

## JOSEPH T. LUKENS

Mr. Lukens is a partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Mr. Lukens was a shareholder at the Philadelphia firm of Hangley Aronchick Segal Pudlin & Schiller, where he represented large retail pharmacy chains as opt-out plaintiffs in numerous lawsuits under the Sherman Act.  Among those lawsuits were *In re Brand Name Prescription Drugs Antitrust Litigation* (MDL 897, N.D. Ill.), *In re Terazosin Hydrochloride Antitrust Litigation* (MDL 1317, S.D. Fla.), *In re TriCor Direct Purchaser Antitrust Litigation* (05-605, D. Del.), *In re Nifedipine Antitrust Litigation* (MDL1515, D.D.C.), *In re OxyContin Antitrust Litigation* (04-3719, S.D.N.Y), and *In re Chocolate Confectionary Antitrust Litigation* (MDL 1935, M.D. Pa.).  While the results in the opt-out cases are confidential, the parallel class actions in those matters which are concluded have resulted in settlements exceeding $1.1 billion.

Earlier in his career, Mr. Lukens concentrated in commercial and civil rights litigation at the Philadelphia firm of Schnader, Harrison, Segal & Lewis.  The types of matters that Mr. Lukens handled included antitrust, First Amendment, contracts, and licensing.  Mr. Lukens also worked extensively on several notable *pro bono* cases including *Commonwealth v. Morales*, which resulted in a rare reversal on a second post-conviction petition in a capital case in the Pennsylvania Supreme Court.

Mr. Lukens graduated from LaSalle University (B.A. Political Science, *cum laude*, 1987) and received his law degree from Temple University School of Law (J.D., *magna cum laude*, 1992) where he was an editor on the *Temple Law Review* and received several academic awards.  After law school, Mr. Lukens clerked for the Honorable Joseph J. Longobardi, Chief Judge for the United States District Court for the District of Delaware (1992-93).  Mr. Lukens is a member of the bars of the Supreme Court of Pennsylvania (1992-present), the United States Supreme Court (1996-present); the United States District Court for the Eastern District of Pennsylvania (1993-present), the United States Court of Appeals for the Third Circuit (1993-present), and the United States Court of Appeals for the District of New Jersey (1994-present).



Mr. Lukens has several publications, including: *Bringing Market Discipline to Pharmaceutical Product Reformulations*, 42 Int'l. Rev. Intel. Prop. & Comp. Law 698 (September 2011) (co-author with Steve Shadowen and Keith Leffler); *Anticompetitive Product Changes in the Pharmaceutical Industry*, 41 Rutgers L.J. 1 (2009) (co-author with Steve Shadowen and Keith Leffler); *The Prison Litigation Reform Act: Three Strikes and You're Out of Court — It May Be Effective, But Is It Constitutional?*, 70 Temp. L. Rev. 471 (1997); *Pennsylvania Strips The Inventory Search Exception From Its Rationale – Commonwealth v. Nace*, 64 Temp. L. Rev. 267 (1991).

## STUART J. GUBER

Stuart J. Guber is a Partner in Faruqi & Faruqi, LLP's Pennsylvania office.

Mr. Guber focuses his practice on representing institutional and individual investors in class actions under the federal securities laws, shareholder derivative suits and mergers and acquisitions litigation, as well as other complex litigation representing consumers.  During his 25-year career as a securities and complex litigator, Mr. Guber, as one of the lead attorneys, has successfully litigated numerous shareholder cases to settlement and verdict including *In re Rite Aid Pharmacy Sec. Litig.*, No. MDL 1360 (E.D. Pa) ($320 Million settlement of securities class action); *In re Tycom Ltd. Sec. Litig.*, No. 03-CV-03540 (D. Conn.) ($79 million settlement in securities class action); *In re Providian Financial Corp. Sec. Litig.*, No. 01-CV-3952 (N.D. Cal.) ($65 million settlement in securities class action); *In re Bell South Corp. Sec. Litig.*, No. 02-CV-2142 (N.D. Ga.) ($35 million settlement in securities class action); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, No. 1:08-CV-11064 (D. Mass.) ($25 million class action securities settlement in which participating class members will recover over 65% of their losses); *Robbins v. Koger Properties*, No. 90-896-civ-J-10 (M.D. Flo.) (plaintiffs' trial counsel in jury verdict awarding $81.3 million in damages); *Maiocco, et al. v. Greenway Capital Corp.*, et al., NASD No. 94-04396 (Lead trial counsel for plaintiffs in securities arbitration awarding $227,000 in compensatory damages and $100,000 in punitive damages); *Solomon v. T.F.M., Inc.* (achieved defense verdict as lead trial counsel in securities arbitration representing Philadelphia Stock Exchange options trading firm); *Minerva Group LP v. Keane*, Index No. 800621 (Sup. Ct. NY) (mergers and acquisitions case settled for amendments to merger agreement, additional disclosures and a price bump per share to be paid shareholders from $8.40 per share to $9.25 per share in merger consideration). Mr. Guber has successfully litigated consumer class actions (for e.g., *Nepomuceno v. Knights of Columbus*, No. Civ. A. 96 C 4789 (N.D. Ill.), settled for $22 million in life insurance vanishing premium consumer fraud case) and successfully defended at trial a union health and welfare fund being sued by a healthcare provider (*Centre for Neuro Skills, Inc.-Texas v. Specialties & Paper Products Union No. 527 Health and Welfare*

NEW YORK            CALIFORNIA            DELAWARE            PENNSYLVANIA



*Fund*, No. CC-07-10150-A (Cty. Ct. Dallas, Tex.), lead trial defense counsel securing a directed verdict in favor of defendant).

Mr. Guber has also been involved as lead or co-lead counsel in litigation producing a number of noteworthy published decisions including: *South Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008); *Koehler v. Brody*, 483 F.3d 590 (8th Cir. 2007); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006); *Garfield v. NDC Health*, 466 F.3d 1255 (11th Cir. 2006); *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079 (8th Cir. 2005); *Nevius v. Read-Rite Corp.*, 335 F.3d 843 (9th Cir. 2003); *Robbins v. Koger Properties*, 116 F.3d 1441 (11th Cir. 1997); *Schreiber v. Kellogg*, 50 F.3d 264 (3d Cir. 1995); *In re Evergreen Ultra Short Opportunities Fund Se. Litig.*, 275 F.R.D. 382 (D. Mass. 2011) *Marsden v. Select Med. Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007); *In re Friedman's Inc. Securities Litigation*, 385 F. Supp. 2d 1345 (N.D. Ga. 2005); *In re Bellsouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005); *Tri-Star Farms Ltd. v. Marconi*, PLC, et al., 225 F. Supp. 2d 567 (W.D. Pa. 2002); *In re Campbell Soup Company Securities Litigation*, 145 F. Supp. 2d 574 (D.N.J. 2001); *In re Rite Aid Corp. Securities Litigation*, 146 F. Supp. 2d 706 (E.D. Pa. 2001); *In re ValuJet, Inc. Securities Litigation*, 984 F. Supp. 1472 (N.D. Ga.1997); *Schreiber v. Kellogg*, 194 B.R. 559 (E.D. Pa. 1996); *Schreiber v. Kellogg*, 839 F. Supp. 1157 (E.D. Pa. 1993); *Schreiber v. Kellogg*, 838 F. Supp. 998 (E.D. Pa.1993).

Mr. Guber is admitted to practice before the state bars of Pennsylvania and Georgia and is admitted to numerous federal courts including: United States District Courts for the Eastern District of Pennsylvania, Northern District of Georgia, Eastern District of Michigan and District of Colorado; United Sates Circuit Court of Appeals for the First, Third, Eighth, Ninth, Tenth and Eleventh Circuits. He graduated with a Juris Doctor from Temple University School of Law (1990) and with a B.S. in Business Administration, majoring in accounting from Temple University (1986).

## DERRICK B. FARRELL

Derrick B. Farrell is a Partner in the Delaware office of Faruqi & Faruqi, LLP and focuses his practice on advocating stockholder rights.

Prior to joining Faruqi & Faruqi, Mr. Farrell started his career as an associate at the prestigious law firm of Latham & Watkins, LLP, where he gained substantial insight into the inner workings of corporate boards and the role of investment bankers in a sale process.  Following his departure from Latham & Watkins, Mr. Farrell joined the corporate and business law boutique law firm of Abrams & Bayliss, LLP.  While at Abrams & Bayliss Mr. Farrell focused his practice on high stakes litigation support, transactional advice and appraisal litigation. While at Abrams & Bayliss Mr. Farrell gained substantial trial experience as both a petitioner and a respondent on a number of high profile matters, including:  *In re Appraisal of Ancestry.com, Inc.*, C.A. No. 8173-VCG, *IQ Holdings, Inc. v. Am. Commercial Lines Inc.*,



Case No. 6369-VCL, and *In re Cogent, Inc. S'holder Litig.*, C.A. No. 5780-VCP.  Mr. Farrell has also argued before the Delaware Supreme Court, successfully defeating a cross-appeal in *American Commercial Lines Inc. v. IQ Holdings, Inc.*, Case No. 230, 2013.

Mr. Farrell has co-authored numerous articles including articles published by the Harvard Law School Forum on Corporate Governance and Financial Regulation and PLI.

Mr. Farrell graduated from Texas A&M University (B.S., Biomedical Science) and the Georgetown University Law Center (J.D. cum laude).  At Georgetown Mr. Farrell served as an advocate and coach to the Barrister's Council (Moot Court Team) and was Magister of Phi Delta Phi.

After graduating from the Georgetown University Law Center, Mr. Farrell clerked for the honorable Vice Chancellor Donald F. Parsons, Jr. of the Delaware Court of Chancery.

## BARBARA A. ROHR

Barbara Rohr's practice is focused on securities and consumer litigation.  Barbara is a partner in the firm's Los Angeles office.

Prior to joining F&F, Barbara was an attorney at the Children's Law Center and a law clerk for the Employment Litigation Section of the Los Angeles City Attorney's Office.  Barbara also gained valuable experience as an HR professional in the entertainment industry prior to attending law school.

Barbara received an LL.M, 2013(Specialization in Litigation) and a J.D., 2010, from Southwestern Law School.  While at law school, Barbara was honored by the Los Angeles County Bar Association as the Jeffrey S. Turner Outstanding Commercial Law Student, 2010.  As a research assistant to Professor Michael D. Scott, Barbara drafted the Communication Decency Act chapter update for Scott on Information Technology Law, Third Edition.  Southwestern Law School awarded Barbara its Public Service Award and the Wiley W. Manuel Award for Pro Bono legal services.

Barbara, while practicing with F&F, passionately serves the greater Los Angeles community as a volunteer.  Barbara serves as an Honorary Board of Governors Member for the non-profit organization Los Angeles Trial Lawyers' Charities.  The non-profit serves the LA community by volunteering and fund raising for the needs of children, battered women, the disabled and the homeless.  Barbara also serves on the Board of A New Way of Life Reentry Project, a non-profit that supports former incarcerated women reintegrate into society.

Barbara is licensed to practice law in California.  Barbara is admitted before the United States District Courts for the Central, Northern, Southern and Eastern Districts and the United States Court of Appeals for the Ninth Circuit.

NEW YORK          CALIFORNIA          DELAWARE          PENNSYLVANIA



## JAMES M. WILSON, JR.

James M. Wilson, Jr. is Senior Counsel in Faruqi & Faruqi LLP's New York office

Prior to joining Faruqi & Faruqi, Mr. Wilson was a partner at Chitwood Harley Harnes, LLP, and a senior associate with Reed Smith, LLP. Mr. Wilson has represented institutional pension funds, corporations and individual investors in courts around the country and obtained significant recoveries, including the following securities class actions: *In re ArthroCare Sec. Litig.* No. 08-0574 (W.D. Tex.) ($74 million); *In re Maxim Integrated Prod. Sec. Litig.*, No. 08-0832 (N.D.Cal.) ($173 million); *In re TyCom Ltd. Sec. Litig.*, MDL No. 02-1335 (D.N.H.)($79 million); and *In re Providian Fin. Corp. Sec. Litig.*, No. 01-3952 (N.D. Cal.). Mr. Wilson also has obtained significant relief for shareholders in merger suits, including the following: *In re Zoran Corporation Shareholders Litig.*, No. 6212-VCP (Del. Chancery); and *In re The Coca-Cola Company Shareholder Litigation*, No. 10-182035 (Fulton County Superior Ct.).

Mr. Wilson has authored numerous articles addressing current developments including the following Expert Commentaries published by Lexis Nexis: *The Liability Faced By Financial Institutions From Exposure To Subprime Mortgages; Losses Attributable To Sub-Prime Mortgages; The Supreme Court's Decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc. et al.; Derivative Suite by LLC Members in New York: Tzolis v. Wolff*, 10 N.Y.3d 100 (Feb. 14, 2008).

Mr. Wilson obtained his undergraduate degree from Georgia State University (B.A. 1988), his law degree from the University of Georgia (J.D. 1991), and Masters in Tax Law from New York University (LL.M. 1992). He is licensed to practice law in Georgia and New York and is admitted to the United States District Courts for Middle and Northern Districts of Georgia, the Eastern and Southern Districts of New York, and the Courts of Appeals for the Second and Eleventh Circuits.

## ADAM STEINFELD

Adam Steinfeld is Senior Counsel in Faruqi & Faruqi, LLP's New York office. He practices in the area of antitrust litigation with a focus on competition in the pharmaceutical industry.

Mr. Steinfeld has litigated successfully with significant contributions in *In re Buspirone Patent & Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.) ($220M settlement); *In re Cardizem CD Antitrust Litigation*, No. 99-MD-1278 (E.D. Mich.) ($110M settlement); *In re Relafen Antitrust Litigation*, No. 01-12239 (D. Mass.) ($175M settlement); *In re Remeron Direct Purchaser Antitrust Litigation*, No. 03-cv-0085 (D.N.J.) ($75M settlement); *In re Terazosin Hydrochloride Antitrust Litigation*, No. 99-MDL-1317 (S.D. Fla.) ($72.5M settlement); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.) ($250M settlement); and *Mylan Pharms., Inc. v. Warner Chilcott*, No. 12-cv-3824 (E.D. Pa.) ($12 million settlement).



Prior to joining Faruqi & Faruqi, Mr. Steinfeld was associated with Grant and Eisenhofer, P.A. (2011-2015) and a partner at Garwin, Gerstein and Fisher, LLP, New York (1997-2009).

Mr. Steinfeld is the author of Nuclear Objections: The Persistent Objector and the Legality of the Use of Nuclear Weapons, 62 Brooklyn L. Rev. 1635 (winter, 1996).

Mr. Steinfeld received his law degree from Brooklyn Law School (J.D., 1997) where he was an editor on the Brooklyn Law Review and received several academic awards.  Mr. Steinfeld is a member of the bars of the States of New York, New Jersey and Massachusetts; and is admitted to practice before the United States District Courts for the District New Jersey, Eastern District of New York, Southern District of New York, and Western District of New York.  Mr. Steinfeld graduated from Brandeis University (B.A., Politics, 1994).

## CHRISTINE GOODRICH

Christine Goodrich is a Senior Associate in the New York office of Faruqi & Faruqi, LLP.

Ms. Goodrich's practice is focused in securities arbitration and litigation.  Ms. Goodrich represents financial service professionals in the securities industry in employment-related disputes, regulatory matters, transition planning and succession planning.  Ms. Goodrich also represents investors in disputes against their broker-dealers.

Prior to joining Faruqi & Faruqi, Ms. Goodrich was the resident partner in the New York office of Eccleston Law, LLC.  Ms. Goodrich's practice focused on representing financial service professionals and investors in the area of securities arbitration and litigation.

Ms. Goodrich earned her undergraduate degree at Case Western Reserve University (B.S., Business Management, 2007).  Ms. Goodrich earned her Juris Doctor from Pace Law School (J.D. and International Law Certificate, 2011) and her Master in Business Administration from the Lubin School of Business (M.B.A., 2011).

Ms. Goodrich is licensed to practice law in New York and New Jersey and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

Ms. Goodrich is a member of the Public Investors Arbitration Bar Association (PIABA), the New York City Bar Association (NYCBA) and the Financial Planning Association (FPA).  Ms. Goodrich also serves on the Board of Directors of Case Western Reserve University's New York Alumni Association, as well as the Allied Professionals Committee of the Financial Planning Association of New York.  Ms. Goodrich has co-authored several articles for the Journal of Practical Management and Risk Compliance for the Securities Industry.

NEW YORK          CALIFORNIA          DELAWARE          PENNSYLVANIA



# NEILL CLARK

Mr. Clark is an associate in Faruqi and Faruqi, LLP's Pennsylvania office.

Before joining the firm, Mr. Clark was an associate at Berger & Montague, P.C. where he was significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

Eight of those cases have resulted in substantial settlements totaling over $950 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for $110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for $220 million; *In re Relafen Antitrust Litig.* settled in  February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Antitrust Litig.* settled in April 2005 for $75 million; *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million; *In re Ovcon Antitrust Litig.* settled in 2009 for $22 million; and *In re Tricor Direct Purchaser Antitrust Litig.* settled in April 2009 for $250 million.

Mr. Clark was also principally involved in a case alleging a conspiracy among hospitals and the Arizona Hospital and Healthcare Association to depress the compensation of per diem and traveling nurses, *Johnson et al. v. Arizona Hospital and Healthcare Association et al.*, No. CV07-1292 (D. Ariz.).

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.  Two cases in which he has been significantly involved have been featured as "Noteworthy Cases" in the NATIONAL LAW JOURNAL articles, "The Plaintiffs' Hot List" (*In re Tricor Antitrust Litig.* October 5, 2009 and *Johnson v. Arizona Hosp. and Healthcare Ass'n.*, October 3, 2011).

Mr. Clark graduated cum laude from Appalachian State University in 1994 and from Temple University Beasley School of Law in 1998, where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award.

# RICHARD SCHWARTZ

Richard Schwartz is an associate in Faruqi & Faruqi, LLP's Pennsylvania office.

Mr. Schwartz graduated from the University of Washington (B.A.) and the University of Chicago in 2004 (J.D.).  While in law school, Mr. Schwartz served as a law clerk at the MacArthur Justice Center in Chicago and as a summer associate with the Chicago law firm Robinson Curley & Clayton P.C.  Since law school, Mr. Schwartz has been a commercial litigator in New York and Pennsylvania.

Mr. Schwartz is a member of the bars of the State of New York (2005-present), Commonwealth of Pennsylvania (2010-present), the United States District Court for the Southern District of New York (2006-



present), the United States District Court for the Eastern District of New York (2007-present), the United States District Court for the Northern District of New York (2008-present), the United States Court of Appeals for the Second Circuit (2010-present) and the United States District Court for the Eastern District of Pennsylvania (2011-present).

## TIMOTHY J. PETER

Timothy J. Peter is an Associate in Faruqi & Faruqi, LLP's Pennsylvania office and focuses his practice on securities law and complex civil litigation.

Prior to joining Faruqi & Faruqi, Mr. Peter was an Associate at Cohen Placittella & Roth, P.C. where he was involved in such high profile litigation as: *In re Vioxx Products Liability Litigation* ($8.25 million recovery for the Commonwealth of Pennsylvania) and *In re Evergreen Ultra Short Opportunities Fund Securities Litigation* ($25 million class action securities settlement in which participating class members will recover over 65% of their losses). In addition, Mr. Peter played an important role in the resolution of *In re Minerva Group LP v. Mod-Pac Corp., et al.*, in which defendants increased the price of an insider buyout from $8.20 to $9.25 per share, a significant victory for shareholders. Prior to attending law school, Mr. Peter worked for one of largest financial institutions in the world where he gained significant insight into the inner workings of the financial services industry.

Mr. Peter is a 2009 cum laude graduate of the Michigan State University College of Law, where he served as an associate editor of the Journal of Medicine and Law. He received his undergraduate degree in Economics from the College of Wooster in 2002.

Mr. Peter is admitted to practice in the Commonwealth of Pennsylvania and the U.S. District Court for the Eastern District of Pennsylvania.

## NINA VARINDANI

Nina Varindani is an associate in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Varindani practiced commercial litigation at Milber Makris Plousadis & Seiden, LLP where she represented directors, officers and other professionals and corporations in complex commercial litigation in federal and state courts.  Additionally, Ms. Varindani gained further litigation experience in law school through internships at Collen IP and the New York State Judicial Institute.

Ms. Varindani is licensed to practice law in New York and is admitted to practice before the United States District Courts for the Southern District of New York and the Eastern District of New York.

Ms. Varindani graduated from the George Washington University (B.A. in Psychology, 2006) and Pace Law School (J.D., 2010).



## MEGAN SULLIVAN

Megan Sullivan is an associate in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Sullivan was a litigation associate at Crosby & Higgins LLP where she represented institutional and individual investors in securities arbitrations before FINRA and counseled corporate clients in commercial disputes in federal court.  Additionally, Ms. Sullivan gained further litigation experience in law school through internships at the Kings County District Attorney's Office and the Adjudication Division of the New York City Department of Consumer Affairs.

Ms. Sullivan graduated from the University of California, Los Angeles (B.A., History, 2008) and from Brooklyn Law School (J.D., *cum laude*, 2011).  While at Brooklyn Law School, Ms. Sullivan served as Associate Managing Editor of the Brooklyn Journal of Corporate, Financial and Commercial Law.

Ms. Sullivan is licensed to practice law in the State of New York.

## INNESSA MELAMED

Innessa Melamed is an associate in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Melamed practiced complex commercial and securities litigation at Gusrae Kaplan Nusbaum PLLC.  Ms. Melamed, along with co-counsel, represented minority shareholders at trial in a derivative lawsuit captioned *Lisa Romita v. Castle Oil Corp., et. al.*, Index No.: 53145/2011. Ms. Melamed was also an associate at Traub Lieberman Straus & Shrewsberry LLP, where she represented primary and excess insurance carriers in complex coverage disputes and insurance defense litigation. Additionally, Ms. Melamed gained further litigation experience in law school through internships at Wilson Elser Moskowitz Edelman & Dicker, LLP and Citigroup's Office of the General Counsel.

Ms. Melamed graduated from Syracuse University (B.A. in Political Science and International Relations, *summa cum laude*, 2007), Pace Law School (J.D., *magna cum laude*, 2011) and Pace Lubin School of Business (M.B.A. in Finance, *summa cum laude*, 2011).

Ms. Melamed is licensed to practice law in New York, New Jersey and Connecticut and is admitted to practice before the United States District Courts for the Southern District of New York, the Eastern District of New York and the District of New Jersey.

## ELIZABETH A. SILVA

Elizabeth A. Silva is an associate in Faruqi & Faruqi, LLP's New York office.

Prior to joining the firm, Ms. Silva was a litigation associate at Crosby & Higgins LLP where she represented institutional and individual investors in securities arbitrations before FINRA and counseled corporate clients in a variety of intellectual property and complex commercial disputes in federal court.

NEW YORK          CALIFORNIA          DELAWARE          PENNSYLVANIA



Additionally, Ms. Silva gained further litigation experience in law school through internships at the Kings County District Attorney's Office and as a law clerk at a criminal defense firm.

Ms. Silva graduated in *cursu honorum* from Fordham University (B.A. in Comparative Literature and Italian Studies, *cum laude*, 2009) and New York Law School (J.D., *magna cum laude*, 2012).  While at New York Law School, Ms. Silva served as a Notes and Comments Editor of the New York Law School Law Review and was an associate in the Institute for Information Law and Policy.  Ms. Silva is licensed to practice law in the State of New York and is admitted to practice before the United States District Court for the Southern District of New York.

## KATHERINE M. LENAHAN

Katherine M. Lenahan is an associate in Faruqi & Faruqi, LLP's New York office.

Prior to joining Faruqi & Faruqi, Ms. Lenahan practiced securities litigation at Entwistle & Cappucci LLP. Ms. Lenahan gained further experience through internships for the Honorable Sherry Klein Heitler, Administrative Judge for Civil Matters, First Judicial District, and the Kings County District Attorney's Office.

Ms. Lenahan graduated from Fordham University (B.A., Political Science, *magna cum laude*, 2009) and Fordham University School of Law (J.D., 2012). While at Fordham Law School, Ms. Lenahan served as an associate editor of the Fordham Intellectual Property, Media and Entertainment Law Journal and was a fellow at the Center on Law and Information Policy.

Ms. Lenahan is licensed to practice law in New York.

## ANDREW COYLE

Andrew Coyle's practice is focused on anti-trust litigation.   Andrew is an associate in the firm's New York office.

Prior to joining F&F, Andrew served the Hon. Deborah A. Kaplan, Justice New York Supreme Court, as Assistant Law Clerk.   Upon law school graduation, Andrew was Law Clerk for the Hon. Gabriel W. Gorenstein, Magistrate Judge, Southern District of New York (2012-2013).

Andrew received his J.D., magna cum laude, from Brooklyn Law School (2012).  While at Brooklyn Law School, Andrew was associate managing editor on the Brooklyn Law Review.  His Note, Finding a Better Analogy for the Right of Publicity, 77 Brook L. Rev. 1133 (2012) was published in the Brooklyn Law Review.  Andrew received his Bachelor of Science from Cornell University (2008).

Andrew is licensed to practice law in New York and New Jersey.

## DAVID CALVELLO



David Calvello is an Associate in Faruqi & Faruqi, LLP's New York office where his focus is litigating Antitrust matters.

Mr. Calvello graduated from the University of Richmond (B.S., 2011) with a double major in Finance and Political Science and Pace Law School (J.D., *magna cum laude*, 2014).  He is licensed to practice law in New York and New Jersey and is admitted to practice before the United States District Court for New Jersey.

Prior to joining Faruqi & Faruqi, Mr. Calvello was as an Associate at Kaufman Borgeest & Ryan, LLP where he focused primarily on insurance coverage matters with respect to Directors & Officers (D&O), Errors & Omissions (E&O), and Professional Liability lines of coverage.  In law school, Mr. Calvello served as an editor on the Pace International Law Review and received the New Rochelle Bar Association Award upon graduation.  He was also very active in moot court competitions, and competed in the Willem C. Vis International Commercial Arbitration Moot held in Vienna, Austria.

## CIRONG (AUDREY) KANG

Cirong (Audrey) Kang is an Associate in the New York office of Faruqi & Faruqi where her practice focus is consumer law.

Prior to joining Faruqi & Faruqi, Ms. Kang was an associate at Kee & Lau-Kee, PLLC, where her practice focused on real estate and corporate law. While in law school, Ms. Kang interned at Pace Law School's securities clinic representing investors of modest means with potential securities arbitration claims. As well at Pace University School of Law, Ms. Kang was a research assistant to Professor Nicholas A. Robinson.  Since graduating law school, Ms. Kang interned at a commercial law practice in Singapore and a customs law and international trade firm in New York City.

Ms. Kang graduated from Pace University School of Law (Juris Doctor, *cum laude*, 2014).  She has a Bachelor of Fine Arts Degree with Honors, Parsons the New School for Design (2008).  She is licensed to practice law in New York and New Jersey.

## SHERIEF MORSY

Sherief Morsy's practice is focused on securities litigation.   Sherief is an associate in the firm's New York office.

Prior to joining F&F, Sherief was a litigation associate at a New York law firm where he specialized in New York State Appellate practice.  Sherief also gained litigation experience as an intern with the Honorable Shira A. Sheindlin, Southern District of New York (2013).  He interned as well with a New York securities firm, a multinational corporation, and the King's County DA's office.

Sherief received his J.D., cum laude, from Brooklyn Law School, 2014.  While at Brooklyn Law



School, Sherief was a Notes and Comments Editor of the Brooklyn Law Review.  He is the author of The JOBS Act and Crowdfunding:  How Narrowing the Secondary Market Handicaps Fraud Plaintiffs, 79 Brook. L. Rev. (2014), Brooklyn Law Review, Vol. 79, Issue 3.  Sherief received his B.A. in Political Science and Philosophy, Rutgers University, 2010.

Sherief is licensed to practice law in New York and New Jersey.

## BENJAMIN HEIKALI

Benjamin Heikali's practice is focused on securities and consumer litigation.  Benjamin is an associate in the firm's Los Angeles office.

Prior to joining F&F, Benjamin interned at the U.S. Securities and Exchange Commission, Division of Enforcement, focusing on municipal bond litigation and financial fraud work.

Benjamin graduated U.C.L.A. School of Law (J.D., 2015).  During law school, Benjamin was awarded the Masin Family Academic Excellence Award for outstanding performance; and the 2015 American College of Bankruptcy Law Meet, "Best Term Sheet."  As well, Benjamin served as Staff Editor of the U.C.L.A. Entertainment Law Review.  Benjamin received his B.A. in Psychology, with honors, from University of Southern California, 2012.

Ben is licensed to practice law in California and is admitted to practice before the United States District Courts for the Central, Northern, Southern, and Eastern Districts of California.

# EXHIBIT 3

# MONTEVERDE & ASSOCIATES PC
# ATTORNEYS AT LAW

## _Firm Resume_

**NEW YORK OFFICE**
**The Empire State Building**
**350 Fifth Avenue, 59th Floor**
**New York, New York 10118**
**Tel: (212) 971-1341**
**Fax: (212) 601-2610**

**CALIFORNIA OFFICE**
**600 Corporate Pointe**
**Suite 1170**
**Culver City, CA   90230**
**Tel:  213-446-6652**
**Fax: (212) 601-2610**

# MONTEVERDE & ASSOCIATES PC
# ATTORNEYS AT LAW

Monteverde & Associates is a sophisticated boutique class action law firm committed to protecting shareholders and consumers from corporate wrongdoing. Our attorneys have significant experience litigating Mergers & Acquisitions and Securities Class Actions, whereby we protect investors by recovering money and remedying corporate misconduct. We also represent consumers who have been defrauded by companies that use false or misleading advertising. We are passionate about all our cases and work tirelessly to obtain the best possible outcome for our clients.

The attorneys at Monteverde & Associates have been involved in a number of cases recovering substantial amounts of money for shareholders or investors through their litigation efforts, including in the selected list of cases below:

| TARGET COMPANY ACQUIRED | INCREASED CONSIDERATION OR SETTLEMENT FUND |
|---|---|
| Berry Petroleum Company | $600 million |
| Jefferies Group, Inc. | $70 million |
| Apollo Education Group, Inc. | $54 million |
| EnergySolutions, Inc. | $36 million |
| Tibco Software, Inc. | $35 million |
| Force Protection, Inc. | $11 million |
| Orchard Enterprises, Inc. | $10.75 million |
| Mavenir Systems, Inc. | $3 million* |
| Syntroleum Corporation | $2.8 million* |
| Cogent, Inc. | $1.9 million |

\*  pending court approval

**Juan E. Monteverde**

Mr. Monteverde has concentrated his legal career advocating shareholder rights.  Mr. Monteverde regularly handles high profile M&A cases seeking to maximize shareholder value and has obtained significant monetary recoveries for shareholders.

Mr. Monteverde has also broken new ground when it comes to challenging proxies related to compensation issues post Dodd-Frank Act for not providing accurate disclosure required for shareholders to cast informed votes. *Knee v. Brocade Comm'ns Sys., Inc.*, No. 1-12-CV-220249, slip op. at 2 (Cal. Super. Ct. Santa Clara Cnty. Apr. 10, 2012) (Kleinberg, J.) (enjoining the 2012 shareholder vote because certain information relating to projected executive compensation (as related to an equity plan share increase that had a potential dilutive effect on shareholders) was not properly disclosed in the proxy statement).

Mr. Monteverde has written articles regarding executive compensation and also speaks regularly at ABA, PLI and other conferences regarding merger litigation and executive compensation issues.

Below is a list of published articles authored by Mr. Monteverde:

- *A Review of Trados and Its Impact*
  (http://www.americanbar.org/content/dam/aba/publications/litigation_committees/securities/winter2014-mo.authcheckdam.pdf)

- *Emerging Trends in Say-on-Pay Disclosure*
  (http://www.faruqilaw.com/news/show/id/80)

- *Battling for Say on Pay Transparency*
  (http://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2013_corporate_counselcleseminar/7_1_battling_for_say_on_pay.authcheckdam.pdf)

Mr. Monteverde was selected by Super Lawyers as a 2013 New York Metro Rising Star.

Mr. Monteverde graduated from California State University of Northridge (B.S., Finance) and St. Thomas University School of Law (J.D., cum laude).

Mr. Monteverde is admitted to practice law in the State of New York.

**David E. Bower**

Mr. Bower has extensive experience in securities and consumer class actions as well as corporate litigation and complex commercial litigation matters.

Mr. Bower has been in the private practice of law since 1981. Prior to forming his own law firm, Law Offices of David E. Bower, in 1996, Mr. Bower practiced for two years with the law firm Hornberger & Criswell where he supervised and coordinated complex business litigation. From 1989 to 1994, he was a partner with the law firm Rivers & Bower where he handled business, construction, real estate, insurance, and personal injury litigation and business and real estate transactions. From 1984 to 1989, he practiced in the insurance bad faith defense and complex litigation department of the Los Angeles, California based law firm of Gilbert, Kelley, Crowley & Jennett. From 1981 to 1984, he practiced law in New York as a partner with the law firm Boysen, Scheffer & Bower.  Mr. Bower has extensive trial experience and has tried over 100 cases.

Mr. Bower is a graduate of the Mediation Training Program at UCLA and has a certification in Advanced Mediation Techniques. He has presided in over 200 mediations since becoming certified and is currently on the Los Angeles Superior Court Pay Panel of mediators and arbitrators.  He is the past Chairman of the Board of Directors of Mental Health Advocacy Services, a non-profit legal services firm in Los Angeles, where he is still an active member of the board.  He was previously the President of the Board of A New Way of Life Reentry Project, a non-profit serving ex-convicts seeking reentry into society as productive citizens.

Mr. Bower graduated from the State University of New York at Buffalo and Southwestern Law School.

Mr. Bower is admitted to practice law in the State of New York and California.

**Miles D. Schreiner**

Mr. Schreiner is an attorney experienced in securities and consumer class action litigation.

Prior to joining the firm, Mr. Schreiner was an associate at a national class action firm where he represented clients in securities and consumer class action litigation. Mr. Schreiner also previously gained experience in complex litigation as an associate at a New York City firm that represents plaintiffs in civil RICO actions. Mr. Schreiner is a cum laude graduate of Brooklyn Law School, where he was a Dean's Merit Scholar and served as a Law Review Editor. While in law school, Mr. Schreiner developed practical skills through internships with the Kings County Supreme Court Law Department, the Office of General Counsel at a major New York hospital, and a boutique law firm that specializes in international fraud cases.

Below is a list of published articles authored by Mr. Schreiner:

> *Money-Back Guarantees Unlikely to Satisfy 'Superiority'*
> (http://www.law360.com/articles/563861/money-back-guarantees-unlikely-to-satisfy-superiority-)

- *A Deadly Combination: The Legal Response to America's Prescription Drug Epidemic*
  (http://www.tandfonline.com/doi/full/10.1080/01947648.2012.739060)

Mr. Schreiner graduated from Tulane University (B.A. in Political Science, cum laude) and Brooklyn Law School (J.D., cum laude).

Mr. Schreiner is admitted to practice law in the State of New York and New Jersey.

# EXHIBIT 4

# THE BILEK LAW FIRM, L.L.P.

ATTORNEYS AT LAW
700 Louisiana, Suite 3950
Houston, Texas  77002
Telephone (713) 227-7720 or (800) 909-4645
www.bileklaw.com

## FIRM RESUME

The Bilek Law Firm, L.L.P. is dedicated to the vigorous prosecution of plaintiffs' lawsuits in state and federal courts across the nation.  With over 29 years of experience, Thomas Bilek has taken a position as one of the top plaintiffs' trial lawyers in Texas and is sought by other law firms to serve as co- or lead counsel in cutting-edge securities fraud, consumer protection, environmental, and occupational injury cases throughout the United States.  Combined with Kelly Bilek's more than 22 years of class action, trial, and appellate expertise, the Firm's commitment to aggressive yet cost-effective counsel has frequently resulted in successful outcomes for its clients.

*Commercial Litigation cases*:

- Successfully represented shareholders as co-liaison counsel in the main securities fraud class action against *Enron Corporation, et al.*  Settlement in excess of $7,200,000,000.00. (2008)

- Successfully represented plaintiffs as lead trial counsel in a federal nationwide securities class action against *Compaq Corporation.*  Obtained a settlement in the amount of $28,650,000.00.  (2003)

- Successfully represented a class of plan participants for ERISA violations by their employer, *El Paso Corporation*.  Obtained a settlement in the amount of $17,000,000.00.  (2008)

- Successfully represented an individual investor in state court actions against Deloitte Touche and the Adelphia outside directors arising out of the *Adelphia* securities fraud. Obtained confidential settlements for both cases.  (2008)

- Successfully represented an individual investor in a state court action against Arthur Andersen relating to the sale of Sunbeam bonds.  Obtained a confidential settlement. (2002)

- Successfully represented plaintiffs as liaison counsel for shareholders in a federal nationwide securities class action against *NCI Building Systems, Inc*.  Obtained a settlement in the amount of $7,000,000.00.  (2004)

- Successfully represented plaintiffs in a federal nationwide securities class action against *Cooper Industries*.  Obtained a settlement in the amount of $6,850,000.00.  (1999)

- Successfully represented Enron shareholders as class counsel in a nationwide class action filed in Texas state court arising out of the failed merger with *Dynegy*.  Obtained a settlement in the amount of $6,000,000.00.  (2003)

- Successfully represented plaintiffs in a securities class action against *Mitcham Industries.* Obtained a settlement in the amount of $2,700,000.00.  (2002)

- Successfully represented plaintiffs in a federal nationwide securities class action against *A Pea in the Pod*.  Obtained a settlement in the amount of $2,150,000.00.  (1997)

- Successfully represented a class of plan participants for ERISA violations by their employer, *Affiliated Computer Services, Inc.*  Obtained a settlement in the amount of $1,500,000.00. (2008)

- Successfully represented a statewide class of California residents in their claims against an automobile manufacturer.  (2007)

- Appointed lead counsel by Texas state court in a nationwide suit on behalf of shareholders in a breach of fiduciary duty class action against the former officers and directors of *Pennzoil-Quaker State Company*.  (2007)

- Successfully represented *Dynacq Healthcare, Inc.* shareholders in a derivative action which resulted in greater board oversight of management of the company's accounting practices. (2003)

- Successfully represented shareholders of DTM in its merger with 3D Systems.  The action resulted in the reduction of certain anti-takeover provisions and additional disclosures to shareholders in connection with the merger.  (2003)

- Established significant legal precedent in Texas by successfully arguing creditor's (Lomas Bank USA) privilege from suit to impose liability for false statements negligently made to credit reporting agencies.  *Lomas Bank USA v. Flatow*, 880 SW2d 52 (Tex. App.-San Antonio 1994, writ denied).

- Successfully defended First USA Bank against $27,000,000.00 claim involving the sale of various credit accounts.  Case settled during trial for $50,000.00.  (1995)

- Obtained summary judgment in favor of First USA Bank in two separate class action lawsuits both alleging false credit collection practices in violation of the Fair Credit & Reporting Act.  Plaintiffs claimed damages in excess of $90,000,000.00.  (1996)

- Successfully represented an employee in trial and appeal of wrongful termination action. Appellate decision was termed as "the most significant case in employment wrongful termination in Texas" during the 1990s.  Case ultimately settled after affirmance by Texas Supreme Court.  *Higginbotham v. Allwaste, Inc.*, 889 SW2d 411 (Tex. App.-Houston [14th Dist.] 1994, writ denied).

*Environmental Litigation cases*:

- Successfully represented Plaintiffs residing around a landfill in San Patricio County, Texas, whose property had been contaminated.  Obtained total settlements of $12,500,000.00 after obtaining a verdict in favor of certain Bellwether plaintiffs in an eight-week jury trial.  (2001 and 2004)

- Successfully represented plaintiffs residing in an oilfield in Brookhaven, Mississippi, whose property had been contaminated.   Obtained a confidential settlement after obtaining a verdict in favor of certain Bellwether plaintiffs in a seven-week jury trial.  (2002)

- Successfully defended hazardous waste disposal facility against environmental claims stemming from the disposal of wastes at the MOTCO superfund site.   Plaintiff sought $27,000,000.00 solely from client for environmental clean-up costs.  Retained to defend the action by Aetna, Hartford, Protective National, and National Automobile & Casualty.  The action settled before trial for $125,000.00.  (1996)

- Represented apartment tenants in action for damages resulting from chlordane exposure. Case settled before trial for in excess of $4,000,000.00.  (1995)

## BIOGRAPHIES

**Partners:**

    **Thomas E. Bilek**, born Oakpark, Illinois, July 22, 1962; admitted to Texas bar, 1986. Admitted to practice before U.S. Supreme Court; U.S. Court of Appeals, Fifth Circuit; U.S. Claims Court; U.S. District Courts, Northern, Southern, Western, and Eastern Districts of Texas. Preparatory education: University of Texas (B.A. Economics, magna cum laude, Special Honors, 1983).  Legal education: Southern Methodist University (J.D., 1986).  Briefing Attorney to Chief Justice Brown, 14th Court of Appeals, 1986-87.  Recipient, American Jurisprudence Awards, Real Property I and UCC Law, SOUTHWESTERN LAW JOURNAL, 1984-85.  Author: "Accountant's Liability to Third Parties and Public Policy: A Calabresi Approach," 34 S.W.L.J. 689, 1985.  Member:  State Bar of Texas; Bar Association of the Fifth Federal Circuit; American Association for Justice.  Life Member of Who's Who.  Life Fellow of Texas Bar Foundation.

    **Kelly Cox Bilek**, born Dallas, Texas, June 26, 1968; admitted to Texas Bar, 1993. Admitted to practice before U.S. Court of Appeals, Fifth Circuit, and U.S. District Courts, Northern, Southern, Eastern, and Western Districts of Texas.   Preparatory education: Texas Christian University (B.A. History, PHI BETA KAPPA, magna cum laude, Departmental Honors, 1990).   Legal education: The University of Texas School of Law (J.D., 1992).   Research Assistant to Professor Jack Ratliff.   Member, THE REVIEW OF LITIGATION and The Board of Advocates.  Intern to Justice Raul A. Gonzalez, The Supreme Court of Texas.  Member, The College of the State Bar of Texas.