UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISAAC ARON, individually and on behalf of all others similarly situated, | § § § | |
| | § | Civil Action No. 4:15-cv-1367 |
| Plaintiff, | § § | |
| v. | § § | |
| CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD MIDSTREAM GP, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, MICHAEL G. FRANCE, PHILIP D. GETTIG, WARREN H. GFELLER, DAVID LUMPKINS, JOHN J. SHERMAN, DAVID WOOD, CRESTWOOD EQUITY PARTNERS LP, CRESTWOOD EQUITY GP LLC, CEQP ST SUB LLC, MGP GP, LLC, CRESTWOOD MIDSTREAM HOLDINGS LP, and CRESTWOOD GAS SERVICES GP, LLC, | § § § § § § § § § § § § § | |
| Defendants. | § § | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF THE LITIGATION AND DISCOVERY .................................................. 4

III.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED .................... 9

    A.    The Settlement Is Fair, Reasonable, and Adequate ................................. 9

        1.    There Was and Is No Fraud or Collusion in Connection with the Settlement .............................................................................. 10

        2.    The Complexity, Expense, and Likely Duration of this Litigation Supports the Settlement ........................................... 11

        3.    The Stage of Proceedings and the Amount of Discovery Completed Weighs in Favor of Settlement ................................. 13

        4.    The Probability of Success on the Merits and the Possible Range of Recovery Supports the Settlement ........................... 14

            a.    Plaintiff's Section 14(a) and Section 20 Claims Were Rendered Moot by the Supplemental Disclosures ........................ 15

            b.    The Remaining Released Claims Are Unviable ........................... 16

        5.    The Opinion of Plaintiff's Counsel and Settlement Class Members ........ 18

IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 ............................................................................................................. 19

    A.    The Numerosity Requirement Is Satisfied ........................................... 19

    B.    The Commonality Requirement Is Satisfied ........................................ 20

    C.    The Typicality Requirement Is Satisfied ............................................. 20

    D.    The Adequacy Requirement Is Satisfied ............................................. 21

    E.    The Proposed Settlement Satisfies Rule 23(b) .................................... 22

V.     THE COURT SHOULD GRANT PLAINTIFF'S COUNSEL'S REQUEST FOR REASONABLE ATTORNEYS' FEES AND EXPENSES ............................................. 24

    A.    The Applicable Legal Standard ........................................................... 24

    B.    Plaintiff's Counsel's Lodestar and an Appropriate Multiplier Support the Requested Fee Award ............................................................ 26

      C.      Fee Awards in Similar Cases ............................................................................. 27

VI.     CONCLUSION ............................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*,
    54 F.3d 69 (2d Cir. 1995) ................................................................2, 24

*Ayer v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) .............................................................24

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)................................................................14

*Brown v. Brewer*,
    No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010)..................4

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
    No. CV 11-2768 PSG, 2013 U.S. Dist. LEXIS 155091 (C.D. Cal. Oct. 25, 2013)..........22, 23

*Collier v. BrightPoint, Inc.*,
    No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 23616 (S.D. Ind. Feb. 21, 2013)........3

*Collier v. BrightPoint, Inc.*,
    No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 62125 (S.D. Ind. May 1, 2013) ........28

*Cooke v. Equal Energy Ltd.*,
    No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015)..............3, 28

*In re Covidien PLC Sec. Litig.*,
    No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015)............................3, 28

*In re Crestwood Midstream Partners Unitholder Litig.*,
    No. 4:13-cv-01528, Order and Final J. (S.D. Tex. May 16, 2014)....................................3, 28

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ............................................................... *passim*

*In re Dell Inc., Sec. Litig.*,
    591 F. Supp. 2d 877 (W.D. Tex. 2008).................................................................15

*In re Dell, Inc., Sec. Litig.*,
    No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281 (W.D. Tex. June 11, 2010) ...............26

*Dieckman v. Regency GP LP*,
    C.A. No. 11130-CB, 2016 Del. Ch. LEXIS 54 (Del. Ch. Mar. 29, 2016)........................17, 18

*Duncan v. JPMorgan Chase Bank, N.A.*,
    No. SA-14-CA-00912-FB, 2016 U.S. Dist. LEXIS 122663 (W.D. Tex. May 23, 2016)........19

*Dura Pharms., Inc. v. Broudo,*
   544 U.S. 336 (2005)................................................................................................18

*Emps. Ret. Sys. of St. Louis v. TC Pipelines GP, Inc.,*
   CA No. 11603-VCG, 2016 Del. Ch. LEXIS 71 (Del. Ch. May 11, 2016) .......................16, 17

*First State Orthopaedics v. Concentra, Inc.,*
   534 F. Supp. 2d 500 (E.D. Pa. 2007) ..................................................................15

*Folger Adam Co. v. PMI Indus., Inc.,*
   938 F.2d 1529 (2d Cir. 1991)...........................................................................3

*Garza v. Sporting Goods Props.,*
   No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. Feb. 6, 1996) .....................27

*Granada Inv., Inc. v. DWG Corp.,*
   962 F.2d 1203 (6th Cir. 1992) .....................................................................12, 13

*Hamilton v. First Am. Title Ins. Co.,*
   266 F.R.D. 153 (N.D. Tex. 2010) ......................................................................21

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)......................................................................................24

*J.I. Case Co. v. Borak,*
   377 U.S. 426 (1964).................................................................................2, 11

*Jenkins v. Trustmark Nat'l Bank,*
   300 F.R.D. 291 (S.D. Miss. 2014) .....................................................................13

*Johnson v. Ga. Highway Express, Inc.,*
   488 F.2d 714 (5th Cir. 1974) ....................................................................25, 26

*Koppel v. Wien,*
   743 F.2d 129 (2d Cir. 1984).............................................................................14

*Lambert v. Tellabs, Inc.,*
   No. 1:13-cv-07945, Final Order and J. (N.D. Ill. Sept. 11, 2015) ...........................27

*Lehocky v. Tidel Techs., Inc.,*
   220 F.R.D. 491 (S.D. Tex. 2004).......................................................................20

*Lightbourn v. Cnty. of El Paso, Tex.,*
   118 F.3d 421 (5th Cir. 1997) .........................................................................20

*Lone Star Steakhouse & Saloon, Inc. v. Adams,*
   148 F. Supp. 2d 1141 (D. Kan. 2001)..........................................................7, 8, 11, 12

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ........................................................................12

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996) ...............................................................14

*McDonough v. Horizon Blue Cross Blue Shield of N.J.*,
641 F. App'x 146 (3d Cir. 2015) ...................................................................14

*McNary v. Am. Sav. & Loan Ass'n*,
76 F.R.D. 644 (N.D. Tex. 1977) ......................................................................9

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) ...........................................................................9

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970).........................................................................14, 24, 25

*Moore v. Verizon Commc'ns, Inc.*,
No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013)......................28

*Mullen v. Treasure Chest Casino LLC*,
186 F.3d 620 (5th Cir. 1999) .........................................................................19

*Nichting v. DPL Inc.*,
No. 3:11-cv-141, Order and Final J. (S.D. Ohio Feb. 24, 2012) ......................27, 28

*Nowling v. Aero Servs. Int'l, Inc.*,
734 F. Supp. 733 (E.D. La. 1990) ..................................................................12

*Polaroid Corp. v. Disney*,
862 F.2d 987 (3rd Cir. 1988) .........................................................................12

*Purdie v. Ace Cash Express, Inc.*,
No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. Dec. 11, 2003) .................10

*Quintanilla v. A & R Demolition Inc.*,
No. H-04-1965, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. May 7, 2008)........................18, 19

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) .........................................................10, 11, 14, 15

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992).....................................................................26

*Rodriguez v. Countrywide Home Loans, Inc.*,
695 F.3d 360 (5th Cir. 2012) .........................................................................23

*Santa Fe Indus. v. Green*,
   430 U.S. 462 (1977)................................................................................................2

*In re Schering-Plough/Merck Merger Litig.*,
   No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010)......... *passim*

*Schwartz v. TXU Corp.*,
   No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005) ..................13

*Shaw v. Toshiba Am. Info. Sys.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000).....................................................................25

*Smith v. Robbins & Myers, Inc.*,
   969 F. Supp. 2d 850 (S.D. Ohio 2013) ...................................................................4

*Spencer v. Comserv Corp.*,
   No. 4-84-794, 1986 U.S. Dist. LEXIS 15863 (D. Minn. Dec. 30, 1986) ..............................26

*St. Louis Police Ret. Sys. v. Severson*,
   No. 12-CV-5086-YGR, 2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012)................8

*Stott v. Capital Fin. Servs.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................20

*Sved v. Chadwick*,
   783 F. Supp. 2d 851 (N.D. Tex. 2009) ...................................................................12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ...............................................................................10

*In re Volcano Corp. Stockholder Litig.*,
   C.A. No. 10485-VCMR, 2016 Del. Ch. LEXIS 99 (Del. Ch. June 30, 2016).......................18

*Yeung Chan v. Diamond*,
   No. 03 Civ. 8494 (WHP), 2005 U.S. Dist. LEXIS 6939 (S.D.N.Y. Apr. 25, 2005) .........14, 15

**Other Authorities**

Fed. R. Civ. P. 23(b) ......................................................................................22

Federal Rule of Civil Procedure 23(e) ....................................................................9

## I.      INTRODUCTION

Lead Plaintiff Isaac Aron ("Plaintiff"),[1] on behalf of himself and members of the Settlement Class,[2] respectfully requests that the Court: (i) grant final approval of the Settlement set forth in the Stipulation of Settlement dated June 13, 2016 (the "Stipulation" or "Settlement");[3] (ii) grant final certification of a non-opt-out class consisting of holders of Midstream units during the period beginning on and including May 5, 2015, through and including September 30, 2015;[4] and (iii) grant Plaintiff's request for an award of attorneys' fees and expenses, which is unopposed by Defendants.[5]

The Settlement is the product of a concerted effort by Plaintiff and his counsel ("Plaintiff's Counsel")[6] to ensure that Midstream unitholders were not forced to vote on the

---

[1]  Although Defendants do not oppose this Motion, this Memorandum of Law is submitted solely by Plaintiff and does not in all instances represent the views of Defendants.

[2]  All capitalized terms not defined herein have the same meaning as set forth in the Stipulation of Settlement.

[3]  A copy of the Stipulation was attached as Exhibit 1 to the Declaration of Juan E. Monteverde in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement filed on June 15, 2016 (ECF No. 54-1).

[4]  The Settlement Class does not include the Kenneth C. Halter Trust ("Halter Trust"), Glenda S. Moore ("Ms. Moore"), Defendants and, at all relevant times, the members of Defendants' immediate families, Defendants' legal representatives, heirs, successors, and assigns (the "Settlement Class").  Halter Trust and Ms. Moore previously sought to intervene in this Action, but the Court denied their motion (ECF No. 52).  Halter Trust and Ms. Moore have been excluded from the Settlement Class and are therefore free to individually pursue any claims they wish.

[5]  A copy of the [Proposed] Order and Final Judgment was attached as Exhibit D to the Stipulation.

[6]  Plaintiff's Counsel consists of Lead Counsel Faruqi & Faruqi, LLP, Associate Counsel Monteverde & Associates PC, and Liaison Counsel The Bilek Law Firm, L.L.P.  On June 9, 2016, Faruqi & Faruqi, LLP, attorneys of record for Plaintiff, associated Monteverde & Associates PC and attorney Juan E. Monteverde as co-counsel for Plaintiff.  ECF No. 53.  Mr. Monteverde was formerly a partner at Faruqi & Faruqi, LLP.

Simplification Transaction based on a materially incomplete and misleading proxy statement. Via the Settlement, Plaintiff and Plaintiff's Counsel were able to preserve the corporate suffrage rights of the Class, which is the very purpose of Section 14(a) of the Exchange Act.  *See J.I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964) ("The purpose of § 14 (a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation.  The section stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange.");[7] *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 71-72 (2d Cir. 1995) (explaining that in passing Section 14(a), Congress believed that "litigation that enhances suffrage benefits all those eligible to vote. . . . the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.").

In light of Section 14(a)'s "fundamental purpose" of requiring "full disclosure," *Santa Fe Indus. v. Green*, 430 U.S. 462, 478 (1977), courts have consistently approved settlements similar to the present one, where corporations agree to provide shareholders with previously withheld material information concerning a corporate transaction in exchange for a release of certain fiduciary duty and federal securities law claims related to the transaction.  *See, e.g., In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *48-49 (D.N.J. Mar. 25, 2010) (approving settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly.") (Appendix at App000013); *Collier v. BrightPoint, Inc.*, No. 1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS

---

[7]  Unless otherwise noted, emphasis, citations, quotation marks and footnotes are omitted.

23616, at *3 (S.D. Ind. Feb. 21, 2013) (approving settlement that "compel[led] Defendants to make certain disclosures to Defendants' shareholders.") (Appendix at App000017); *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528, Order and Final J. (S.D. Tex. May 16, 2014) (same) (Appendix at App000020-27); *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. (D. Mass. Sept. 23, 2015) (same) (Appendix at App000028-36); *Cooke v. Equal Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. (W.D. Okla. Apr. 8, 2015) (same) (Appendix at App000037-45).[8]

In connection with the Settlement, Defendants agreed to provide Midstream unitholders with two sets of financial forecasts that were prepared by Crestwood management and relied upon by Tudor, Pickering, Holt & Co. Advisors, LLC ("TPH") in opining that the Simplification Transaction was fair to Midstream unitholders, but were nonetheless omitted from the Definitive Proxy. The forecasts undoubtedly "assumed actual significance in the deliberations of the reasonable [Midstream] shareholder." *Folger Adam Co. v. PMI Indus., Inc*., 938 F.2d 1529, 1533 (2d Cir. 1991) (explaining the federal materiality standard as set forth by the Supreme Court in *TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976)). As a result of the Supplemental Disclosures, Midstream unitholders were able to assess Crestwood's anticipated future financial performance under various scenarios. The Supplemental Disclosures were thus material to Midstream's unitholders, and necessary for them to cast an adequately informed vote concerning the Simplification Transaction. *Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was

---

[8] Pursuant to your Honor's procedures, all unreported authorities are attached to Appendix and Compendium of Unreported Authorities in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Appendix").

being fairly valued.  There is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (Appendix at App000062); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 874 (S.D. Ohio 2013) ("[I]f a Proxy disclosed valuation information, it must be complete and accurate.").

The Settlement is the product of adversarial litigation, provided a valuable benefit to the Settlement Class, was consummated following arm's-length negotiations between experienced counsel and represents the best-possible resolution of this Action.  The reaction of the Settlement Class strongly supports this conclusion.  Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Order") (ECF No. 56) entered by the Court on June 22, 2016, Midstream was directed to mail Notice to the Settlement Class by July 12, 2016.  Objections to the Settlement are not due until Friday September 23, 2016 (21 calendar days prior to the Settlement Hearing), but, as of the date of this memorandum, no objections have been received by the parties or the notice administrator.

Plaintiff therefore respectfully submits that the proposed Settlement is fair, reasonable, and adequate, and should be approved by the Court.

## II.    SUMMARY OF THE LITIGATION AND DISCOVERY

On May 6, 2015, Midstream and Equity announced that they had entered into a definitive merger agreement (the "Merger Agreement"), pursuant to which Midstream would merge into a wholly-owned subsidiary of Equity, and holders of Midstream common units would receive 2.75 common units of Equity in exchange for each unit of Midstream held (the "Simplification Transaction").

On June 16, 2015, Equity filed with the U.S. Securities and Exchange Commission ("SEC") a preliminary proxy statement/prospectus on Form S-4 (the "Preliminary Proxy"), which purported to provide Midstream unitholders with all material information about the

Simplification Transaction and recommended that they vote to approve it.  However, the Preliminary Proxy failed to disclose certain material information concerning the Simplification Transaction, including: (i) the terms, risks and benefits of various alternative strategic transactions that were considered for Crestwood; (ii) the compensation received by TPH, the financial advisor to the conflicts committee of the Midstream Board (the "Conflicts Committee"), for the financial advisory services it provided to Midstream and certain affiliated entities during the past two years; and (iii) complete financial projections prepared by Crestwood management and utilized by TPH in connection with its fairness opinion.  Accordingly, on July 21, 2015, Plaintiff filed his complaint alleging Defendants violated Sections 14(a) and 20 of the Exchange Act by filing the materially incomplete and misleading Proxy with the SEC.

Because the unitholder vote on the Simplification Transaction (the "Unitholder Vote") was scheduled for September 30, 2015, expeditious action by Plaintiff and Plaintiff's Counsel was necessary to protect the right of Midstream unitholders to receive all material information necessary for them to cast an informed vote on the Simplification Transaction.  Plaintiff, through Plaintiff's Counsel, pressed Defendants to disclose the material information that had been omitted from the Preliminary Proxy prior to the Unitholder Vote.  As a result of Plaintiff's litigation efforts, Defendants included certain additional material information concerning the Simplification Transaction in the Amendment Nos. 1 and 2 to the Preliminary Proxy and the definitive proxy statement/prospectus (the "Final Proxy") they caused to be filed with the SEC on July 27, 2015, and August 28, 2015, respectively.  *See* Exhibit A-2 to the Stipulation.

However, Defendants continued to omit certain key pieces of material information from the Final Proxy, including certain sets of financial projections for Midstream, Equity and the pro forma combined company which were specifically relied upon by both the Midstream Conflicts

5

Committee and TPH in deciding whether or not to approve the Simplification Transaction. Without these projections, Midstream unitholders were unable to determine whether Midstream was being fairly valued in connection with the Simplification Transaction.

Accordingly, on September 3, 2015, Plaintiff filed a motion for a preliminary injunction,[9] and on September 17, 2015, Plaintiff filed a motion for a temporary restraining order, expedited preliminary injunction hearing, and preliminary injunction.  ECF No. 19.  Plaintiff sought an order enjoining the Unitholder Vote until Defendants provided Midstream unitholders with the material information that remained omitted from the Final Proxy, the most critical of which was the missing financial projections.   The Court set a hearing on Plaintiff's motion for September 23, 2015.

On September 22, 2015, after arm's-length negotiations regarding a resolution of Plaintiff's claims asserted in this Action and the relief sought in his preliminary injunction motion, Plaintiff and Defendants entered into a memorandum of understanding ("MOU"). Pursuant to the MOU, Defendants agreed to disseminate the financial projections which were omitted from the Final Proxy to Midstream unitholders prior to the Unitholder Vote by filing a Form 8-K containing the projections with the SEC on September 23, 2015 (the "Supplemental

---

[9]  The preliminary injunction motion (ECF No. 12) was filed on behalf of Plaintiff Aron and Lawrence G. Farber, another Midstream unitholder who had commenced an action challenging the Simplification Transaction in this Court.  On September 4, 2015, the Court consolidated the Farber action and Aron action.  ECF No. 14.  On September 16, 2015, Mr. Farber filed a Notice of Dismissal, dismissing his claims against Defendants.  ECF No. 16.  Accordingly, only Plaintiff Aron continued to prosecute this Action to ensure that Defendants disclosed the material information that had been omitted from their SEC filings prior to the Unitholder Vote.

Disclosures"),[10] and further agreed to allow Plaintiff to conduct discovery to confirm the fairness of the proposed Settlement afterwards.[11]

The Supplemental Disclosures included the "upside case" and "downside case" financial forecasts that were prepared by Crestwood management and relied upon by TPH in opining that the Simplification Transaction was fair to Midstream unitholders. These newly disclosed forecasts provided Midstream unitholders with key line item projections for EBITDA, Distributable Cash Flow, Distributable Cash Flow Per LP Unit, Distributions Per LP Unit, and Growth Capital Expenditures, for both Midstream, Equity and the combined company. As a result of the Supplemental Disclosures, Midstream unitholders were able to assess Crestwood's anticipated future financial performance under various scenarios.

It was critical that the Supplemental Disclosures were made before the Unitholder Vote. The forthcoming Unitholder Vote on the Simplification Transaction threatened "the free and intelligent voting rights of [Midstream] shareholders," which would have been forever "forfeited if such votes [were] exercised based upon false or misleading information." *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001). "Monetary damages [could not] restore the right of shareholders to effectively exercise their corporate suffrage rights." *Id.*; *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086-YGR, 2012 U.S. Dist. LEXIS 152392, at *16 (N.D. Cal. Oct. 23, 2012) ("[D]isclosure deficiencies cannot be remedied effectively by an after-the-fact damages case") (Appendix at App000077). After

---

[10]  A copy of the Supplemental Disclosures is attached as Exhibit A-1 to the Stipulation.

[11]  Any Midstream unitholder wishing to serve as Lead Plaintiff was required to file a motion by September 28, 2015. Plaintiff was the only Midstream unitholder that moved to serve as Lead Plaintiff (ECF No. 31), which the Court appointed him on December 8, 2015. ECF No. 50.

reviewing Supplemental Disclosures, a majority of Midstream's unitholders nevertheless decided to vote in favor of the Simplification Transaction, which was completed on September 30, 2015.

Following the execution of the MOU, Plaintiff's Counsel conducted discovery to confirm the reasonableness of the terms of the Settlement.  In particular, Plaintiff's Counsel reviewed non-public documents produced by Defendants related to the fairness of the Simplification Transaction, and conducted the depositions of:  (1) David Lumpkins, a member of the Midstream Conflicts Committee; (2) Aaron S. Blomquist, a managing director at TPH who was directly involved in advising the Midstream Conflicts Committee; and (3) Robert Thornberry Halpin, III, the Senior Vice President and Chief Financial Officer ("CFO") for Equity.  Plaintiff also retained and consulted with a financial expert, reviewed with the expert the Proxies and the Supplemental Disclosures, discovery materials and relevant public information.  Based upon the discovery conducted and an analysis of potential claims involving the Simplification Transaction, Plaintiff's Counsel has determined, based on their extensive experience litigating shareholder class actions,[12] that the Settlement is fair, adequate and reasonable to Midstream unitholders.

The parties filed the executed Stipulation with the Court on June 15, 2016.  The Court entered the Preliminary Order on June 21, 2016, which, *inter alia*, preliminarily certified the Settlement Class, preliminarily approved the Stipulation, approved the form and method of the Notice, and directed Defendants to mail the Notice to the Settlement Class.  On June 22, 2016, the Court set the date for the Settlement Hearing for October 14, 2016 at 9:30 am.

---

[12]  *See* resumes of the Faruqi Firm, Monteverde Firm, and Bilek Firm, attached as Exhibits 1-3 to the Decl. of Juan E. Monteverde in Support of Plaintiff's Motion for Final Approval of Settlement, Certification of the Settlement Class, and an Award of Attorneys' Fees and Expenses ("Monteverde FA Decl.").

## III.   THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED

### A.   The Settlement Is Fair, Reasonable, and Adequate

Under Federal Rule of Civil Procedure 23(e), the Court must approve any settlement that would result in dismissal of a class action.   The Fifth Circuit has consistently held that settlements are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'"   *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).   "[T]here is a strong presumption in favor of finding the Settlement Agreement fair.   The proposed settlement is not required to 'achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation.'   Rather, compromise is the essence of settlement . . . ."   *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (quoting *Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *41 (W.D. Tex. Feb. 6, 1996) (Appendix at App000254)) (citations omitted).   Thus, a court "generally will consider the facts of a settlement in a light favorable to promoting settlements."   *McNary v. Am. Sav. & Loan Ass'n*, 76 F.R.D. 644, 648 (N.D. Tex. 1977).

Once satisfied that counsel adequately represented the class and has bargained for the proposed settlement in good faith, the "only question" for the Court "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."   *McNary*, 76 F.R.D. at 649.   Courts in the Fifth Circuit consider the following six factors in determining whether to approve a proposed settlement: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Union*

9

*Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).  The Settlement here is fair when analyzed under each factor.

> **1.    There Was and Is No Fraud or Collusion in Connection with the Settlement**

Courts presume that settlement negotiations are free from fraud and collusion, unless affirmative evidence indicates otherwise.  *DeHoyos*, 240 F.R.D. at 287; *Purdie v. Ace Cash Express, Inc.*, No. 3:01-CV-1754-L, 2003 U.S. Dist. LEXIS 22547, at *19 (N.D. Tex. Dec. 11, 2003) (rejecting claim of fraud or collusion because objector pointed to no evidence in record supporting her claim) (Appendix at App000088).

Here, the Settlement was negotiated at arm's-length by experienced counsel after a concerted effort by Plaintiff and Plaintiff's Counsel to get Defendants to make the Supplemental Disclosures, and a thorough investigation of the facts surrounding the fairness of the Simplification Transaction during confirmatory discovery.  Further, Plaintiff's Counsel have significant experience in litigating shareholder class actions, are well-versed in the applicable law, and are committed to obtaining the best possible outcome for their clients.  *See* Plaintiff's Counsel's Firm Resumes, attached as Exs. 1-3 to Monteverde FA Decl.  Likewise, Defendants were represented by Vinson & Elkins LLP, an international law firm headquartered in Houston with a reputation for tenaciously defending corporate clients in class actions.[13]  As reflected by the procedural history of this Action, the negotiations surrounding the Settlement were adversarial.  Based on the record to date, and because there is no evidence—or even a hint—that the Settlement is the product of collusion between the parties, there can be no question the Class

---

[13]  Certain Defendants were represented by Andrews Kurth LLP and Schiffer Odom Hicks & Johnson PLLC.

was fairly and adequately represented in the course of these proceedings.  Accordingly, the first *Reed* factor supports approval of the Settlement.

### 2.     The Complexity, Expense, and Likely Duration of this Litigation Supports the Settlement

In assessing this factor, it is important to recognize that Plaintiff asserted claims under Section 14(a) of the Exchange Act, which Congress enacted to ensure that shareholders have all material information available to them when exercising their corporate suffrage rights.  *Borak*, 377 U.S. at 431.  Thus, the Settlement here ensured that Plaintiff and the Class received the very form of "consideration" envisioned by Congress when enacting Section 14(a) – material information.  *Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1149-50 ("Monetary damages [could not] restore the right of shareholders to effectively exercise their corporate suffrage rights.").

Once Defendants agreed to make the Supplemental Disclosures, Plaintiff's claims were rendered moot.  However, had the parties been unable to resolve Plaintiff's claims by entering into the MOU and subsequent Stipulation, this Action would have resulted in complex, expensive and time-consuming litigation, with significant hurdles for the Settlement Class.  While Plaintiff believes he could have prevailed on his preliminary injunction motion, the practical reality is that courts are increasingly reluctant to enjoin complex mergers even in light of material disclosure violations.

Thus, had the parties not resolved this Action via the Settlement, it likely would have resulted in time-consuming litigation, including: "(1) Contested class certification proceedings; (2) an appeal under Federal Rule of Procedure 23(f); (3) dispositive motions; (4) expert depositions leading to <u>Daubert</u> challenges; (5) extensive pretrial filings; (6) a lengthy trial; (7) post-trial proceedings in this District Court; and (8) further appeals."  *DeHoyos*, 240 F.R.D.

at 291-92; *Sved v. Chadwick*, 783 F. Supp. 2d 851, 861 (N.D. Tex. 2009) (same).  And, after all of that, Plaintiff and the Class would have still forever lost the ability "to effectively exercise their corporate suffrage rights," *Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1149-50, and would have faced significant hurdles in obtaining any recovery at all.  *See Polaroid Corp. v. Disney*, 862 F.2d 987, 1006 (3rd Cir. 1988) ("While Congress has determined that accurate disclosure is important to shareholders, it would often be impossible for shareholders to prove that on the facts of their particular tender offer accurate disclosure would have affected their decision making in a particular way with concomitant quantifiable monetary loss.  The inadequacy of a remedy at law and the importance that Congress has attached to accurate disclosure of material information establishes irreparable harm.").  For this reason, numerous courts have recognized that addressing disclosure deficiencies prior to a shareholder vote is the best way to resolve a Section 14(a) claim.  *See Nowling v. Aero Servs. Int'l, Inc*., 734 F. Supp. 733, 741 (E.D. La. 1990) ("if there has been a possible violation of Section 14(a) of the 1934 Act, injunctive relief is appropriate.").

In sum, the Settlement allowed the parties to avoid time-consuming litigation which would never have resulted in an adequate remedy for the Class, and which may have resulted in "shareholders [] receiv[ing] no relief at all." *Sved*, 783 F. Supp. 2d at 861.[14]  "Thus, this factor weighs in favor of settlement."  *Id*.

---

[14]  In an analogous context, courts consistently approve non-monetary settlements in derivative actions where defendants agree to implement corporate governance reforms that alleviate the problem that spurred the litigation.  *See, e.g., Maher v. Zapata Corp*., 714 F.2d 436, 466 (5th Cir. 1983) ("a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."); *Granada Inv., Inc. v. DWG Corp*., 962 F.2d 1203, 1206-07 (6th Cir. 1992) (affirming final approval of nonpecuniary corporate governance reform settlement and rejecting objection regarding scope of release).

### 3.      The Stage of Proceedings and the Amount of Discovery Completed Weighs in Favor of Settlement

This factor "considers whether the of [sic] amount of discovery completed in the case has permitted counsel to have an adequate appreciation of the merits of the case before negotiating." *In re Schering-Plough/Merck Merger Litig.*, No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *30 (D.N.J. Mar. 26, 2010) (Appendix at App000008).  "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 U.S. Dist. LEXIS 27077, at *64-66 (N.D. Tex. Nov. 8, 2005) (same) (Appendix at App000116).

Here, Plaintiff's Counsel conducted discovery that enabled them to assess the fairness of the Settlement to Midstream unitholders and the viability of the Released Claims.  Specifically, Plaintiff's Counsel reviewed various documents and took three depositions during which they explored the strategic review process, the Midstream Conflicts Committee's process of evaluating the fairness of the Simplification Transaction to Midstream unitholders, the valuation analyses utilized by TPH in support of its fairness opinion, and Crestwood Management's projections and views regarding Crestwood's business operations and the relevant industry. Throughout the litigation, Plaintiff's Counsel consulted with their financial expert, who has extensive experience in valuing companies like Crestwood, to evaluate the consideration to be received by Midstream unitholders.

Plaintiff's Counsel concluded that, in light of the facts garnered during discovery and the applicable law, the Settlement was and is fair to Midstream unitholders.  In other words, Plaintiff's Counsel entered into the Settlement with a "full understanding of the legal and factual

issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). This factor therefore also supports approval of the Settlement.

### 4. The Probability of Success on the Merits and the Possible Range of Recovery Supports the Settlement

In analyzing these factors, the Court should compare the terms of the settlement with the "likely rewards the class would have received" following a successful litigation outcome. *Reed*, 703 F.2d at 172. However, the Court should not decide the issues or try the case via the fairness hearing because, "the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.*

Further, it is well established that settlements resulting in the protection of shareholders' corporate suffrage rights provide meaningful consideration to a class. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970) ("[T]he stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders."); *Koppel v. Wien*, 743 F.2d 129, 134-35 (2d Cir. 1984) ("[i]t is well established that non-monetary benefits, such as promoting fair and informed corporate suffrage. . . may support a [settlement]."). Such settlements are particularly warranted in cases where monetary relief is unavailable or unlikely. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) (affirming approval of nonmonetary settlement given "the improbability of [plaintiffs'] success on the merits given the individual defendants' strong defenses."); *McDonough v. Horizon Blue Cross Blue Shield of N.J.*, 641 F. App'x 146, 151 (3d Cir. 2015) (affirming approval of non-monetary settlement where the "likelihood of the plaintiffs actually recovering any portion of that damages calculation was dubious."); *Yeung Chan v. Diamond*, No. 03 Civ. 8494 (WHP), 2005 U.S. Dist. LEXIS 6939, at *7 (S.D.N.Y. Apr. 25, 2005) (approving non-monetary

settlement where "any monetary recovery from defendants was far from assured. . . .") (Appendix at App000133).  The fact that "[t]he plaintiff class faces substantial obstacles to establishing liability for money damages. . . . is a legitimate consideration of counsel when assessing the appropriateness of a non-cash settlement." *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 521 (E.D. Pa. 2007).

Here, Plaintiff's Counsel has concluded that the Settlement rendered Plaintiff's Section 14(a) and 20 claims moot, and that the Released Claims, which are limited solely to those claims related to the Simplification Transaction possessed by the Settlement Class members in their capacity as Midstream unitholders, are not viable.  The Settlement therefore resulted in the best possible outcome for the Settlement Class.

### a.    Plaintiff's Section 14(a) and Section 20 Claims Were Rendered Moot by the Supplemental Disclosures

Plaintiff's Section 14(a) and Section 20 claims[15] were rendered moot as a result of the Supplemental Disclosures.  In other words, the Settlement provided the Class with the precise relief that Plaintiff sought to obtain via his preliminary injunction motion.  Thus, the benefit the Class obtained via the Settlement was the exact same as the "reward[] the class would have received following a successful" outcome on Plaintiff's preliminary injunction motion.  *Reed*, 703 F.2d at 172.  And, because Plaintiffs' Counsel did not unearth any additional disclosure issues during discovery, there was no additional basis to pursue a Section 14(a) claim for damages.

---

[15]  The Section 20 claim was predicated upon an underlying violation of Section 14(a), and was therefore also rendered moot as a result of the Supplemental Disclosures.  *See In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 912 (W.D. Tex. 2008) (explaining a Section 20 claim is "derivative-it is predicated on the existence of an independent violation of the securities laws.").

### b.      The Remaining Released Claims Are Unviable

In exchange for the Supplemental Disclosures, the Settlement Class will also release unviable claims relating to the Simplification Transaction by the finite group of Midstream unitholders that fall within the definition of the "Settlement Class." For all intents and purposes, there are only two categories of claims predicated upon the Simplification Transaction that a unitholder could bring: (i) claims predicated upon a breach of the limited partnership agreement; and (ii) claims for violations of the federal securities laws. And, after conducting discovery, Plaintiff's Counsel determined that the probability of succeeding on any remaining claims related to the Simplification Transaction is exceedingly low.

First, because Midstream is a Delaware limited partnership, the rights of Midstream unitholders are governed by the First Amended and Restated Agreement of Limited Partnership of Inergy Midstream, L.P., as amended (the "Crestwood Partnership Agreement").[16]  Plaintiff's Counsel, after assessing the applicable law and the facts garnered during discovery, concluded that the process undertaken by the Conflicts Committee in connection with evaluating the Simplification Transaction and valuing Midstream was sufficient and consistent with their obligations pursuant to the Crestwood Partnership Agreement, which allows Crestwood to "eschew a corporate-style suite of fiduciary duties and rights, and instead to provide for modified versions of such duties and rights—or none at all—by contract." *Emps. Ret. Sys. of St. Louis v. TC Pipelines GP, Inc*., CA No. 11603-VCG, 2016 Del. Ch. LEXIS 71, at *1 (Del. Ch. May 11, 2016) (Appendix at App000136-37). The likelihood of succeeding on such claims is exceedingly low in light of a series of recent opinions from the Delaware Court of Chancery,

---

[16]  The rights of Midstream unitholders are governed by the First Amended and Restated Agreement of Limited Partnership of Inergy Midstream, L.P., as amended (the "Crestwood Partnership Agreement"), *available at* http://www.sec.gov/Archives/edgar/data/1304464/000119312511348261/d269161dex42.htm.

which have consistently held that so long as a limited partnership forms a conflicts committee to approve a potentially conflicted transaction, such a transaction "shall not constitute a breach of the agreement or of any duty stated or implied in law or equity," and that common limited partnership agreement provisions (such as the ones in the Crestwood Partnership Agreement)[17] "preclude[] judicial review of the merger under Delaware law, requiring dismissal of plaintiff's complaint." *Regency GP LP*, 2016 Del. Ch. LEXIS 54, at *2, *4 (collecting cases holding same) (Appendix at App000148); *TC Pipelines GP, Inc.*, 2016 Del. Ch. LEXIS 71, at *13 (same) (Appendix at App000139-40).

Further, because Midstream unitholders voted to approve the Simplification Transaction after the dissemination of the Supplemental Disclosures, the Crestwood Partnership Agreement provisions concerning unitholder approval "shields a conflicted transaction from review," and renders inquiry into whether or not the conflicts committee functioned properly moot. *Regency GP LP*, 2016 Del. Ch. LEXIS 54, at *20 (Appendix at App000153); *see also In re Volcano Corp. Stockholder Litig.*, C.A. No. 10485-VCMR, 2016 Del. Ch. LEXIS 99, at *27-34 (Del. Ch. June

---

[17]  Specifically, Section 7.9(b) of the Crestwood Partnership Agreement contains provisions identical to those that the Delaware Court of Chancery has consistently held act as "safe harbor" provisions that shield limited partnerships and their directors from liability.  As in *Dieckman v. Regency GP LP*, the Crestwood Partnership Agreement contains a "special approval" safe harbor in section 7.9(c)(i) which shields a conflicted transaction from challenge if the transaction is approved by a conflicts committee consisting of one or more directors, none of whom are officers, directors, employees or security holders of the General Partner or any Affiliate and who meet the independence standards required of directors who serve on an audit committee of a board of directors.  C.A. No. 11130-CB, 2016 Del. Ch. LEXIS 54 (Del. Ch. Mar. 29, 2016) (Appendix at App000145-159).  Section 7.9(c)(ii) is a "unitholder approval safe harbor" which "shields a transaction if it is approved by a majority of the units not held by the General Partner or by any entity controlling, controlled by, or under common control with it."  *Regency*, 2016 Del. Ch. LEXIS 54, at *9 (Appendix at App000150).  As in *Regency*, the Crestwood Partnership Agreement also eliminates the Board's fiduciary duties by merely requiring that directors act in good faith and "shall not be subject to any higher standard contemplated hereby or under the Delaware Act or any other law, rule or regulation or at equity."  Crestwood Partnership Agreement § 7.9(a).  And, as in *Regency*, "Section 7.10(b) provides a conclusive presumption of good faith when the General Partner acts in reliance on legal or financial advisers."  *Compare Regency*, 2016 Del. Ch. LEXIS, at *10 (Appendix at App000150) *with* Crestwood Partnership Agreement § 7.10(b).

30, 2016) ("the approval of a merger by a majority of a corporation's outstanding shares pursuant to a statutorily required vote of the corporation's fully informed, uncoerced, disinterested stockholders renders the business judgment rule *irrebuttable*.") (Appendix at App000172-74). And, because it would be exceedingly difficult to establish an underlying claim for breach of fiduciary duty or breach of contract, any potential aiding and abetting claims against TPH or other entities would also be unlikely to succeed.  *See Regency GP LP*, 2016 Del. Ch. LEXIS 54, at *38 (Appendix at App000158).

Finally, Plaintiff's Counsel does not believe there is a viable securities fraud claim related to the Simplification Transaction.  To state a Section 10(b) claim, a plaintiff would have to show that some currently unknown material misrepresentation or omission (again, none were unearthed during discovery) which Defendants made with scienter caused the Settlement Class to suffer economic loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Here, it has been well over one year since the Simplification Transaction was announced, and no facts have emerged during discovery or publicly to suggest a viable securities fraud claim in connection with the Simplification Transaction exists, nor is Plaintiff's Counsel aware of any other counsel investigating such claims.

Accordingly, Plaintiff submits that the proposed Settlement is fair and in the best interests of all Midstream unitholders.

### 5.    The Opinion of Plaintiff's Counsel and Settlement Class Members

It is well settled that the reaction of the Class to the Settlement is perhaps the most significant factor to be weighed in considering its adequacy.  *See Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *15 (S.D. Tex. May 7, 2008) ("'If only a small number of objections are received, that fact can be viewed as indicative of the

adequacy of the settlement'") (quoting *Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.*, 396 F.3d 96, 118 (2d. Cir. 2005)) (Appendix at App000185).

Pursuant to the Court's Preliminary Approval Order, the Notice was sent by Defendants on or about July 12, 2016.   After receiving notice of the Settlement, no Settlement Class members have objected to the Settlement as of the date Plaintiff's Counsel filed this Motion. The lack of objection from Settlement Class members weighs heavily in favor of approving the Settlement. *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *29 (approving disclosure-only settlement where there was only five objections) (Appendix at App000008).

Further, for the reasons set forth above, Plaintiff's Counsel believes that the Settlement is fair and should be approved.   The opinion of experienced counsel should be afforded "great weight," and class counsel's opinion is "entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 U.S. Dist. LEXIS 122663, at *31 (W.D. Tex. May 23, 2016) (Appendix at App000198).

## IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23

### A.   The Numerosity Requirement Is Satisfied

The class is so numerous that joinder of all members is impracticable.   As of May 4, 2015, Midstream had over 188 million common units outstanding. *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).   In addition, the Settlement Class is too geographically dispersed to be easily

joined into one action.  *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011).

Because there is a significant number of Midstream unitholders who are dispersed throughout the

United States, the proposed Settlement Class satisfies the numerosity requirement.

**B.      The Commonality Requirement Is Satisfied**

The commonality requirement under Rule 23 (a)(2) is met where, as here, "there is at

least one issue, the resolution of which will affect all or a significant number of the putative class

members."  *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997).  Here, issues

common to the Settlement Class include, *inter alia*, whether Defendants violated Sections 14(a)

and 20(a) of the Exchange Act.  As these claims affect the entirety of the Settlement Class

equally, the proposed Settlement Class meets the commonality requirement.  *In re Schering-

Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *20 ("A common question of fact

concerns whether disclosures, pertaining to the proposed transaction, provided to shareholders

for the purpose of voting upon the Schering/Merck merger were adequate.") (Appendix at

App000006).

**C.      The Typicality Requirement Is Satisfied**

The typicality requirement is satisfied because Plaintiff's claims arise from a similar

course of conduct and assert the same legal theories as the claims of all Settlement Class

members.  *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 500 (S.D. Tex. 2004) (typicality is

found where claims raised by plaintiffs have "a common source and rest upon the same legal and

remedial theories" and "[f]actual differences will not defeat typicality").  Here, the typicality

requirement is satisfied because Plaintiff's claims arise from the same nucleus of operative facts

that give rise to the claims of other class members (i.e., the Simplification Transaction and the

sufficiency of the Proxy) and are based on the same legal theories (i.e. violations of the

Exchange Act).  Thus, Plaintiff's claims are typical of the Settlement Class.  *In re Schering-*

*Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at \*22 ("Typicality is present given that the misconduct at issue concerns whether Defendants fulfilled or disregarded obligations and duties to shareholders in consummating the underlying transaction.") (Appendix at App000006).

### D.     The Adequacy Requirement Is Satisfied

Plaintiff has adequately represented the interests of the proposed Settlement Class and has retained counsel qualified to pursue the litigation.   The adequacy requirement is met where, as here, "(1) the named plaintiffs' counsel [prosecuted] the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010), *vacated on other grounds by* 423 F. App'x 425 (5th Cir. 2011).

Plaintiff and Plaintiff's Counsel have fairly and adequately represented and protected the interests of all Settlement Class members, as demonstrated by the record showing vigorous prosecution of this litigation.   Plaintiff's Counsel is well qualified to litigate on behalf of the proposed Settlement Class as they have litigated numerous shareholder class actions throughout the country, including in this jurisdiction.[18]   There are no conflicts of interest between Plaintiff, Plaintiff's Counsel, and the Settlement Class members because their interests are aligned.   Thus, Plaintiff and Plaintiff's Counsel satisfy the adequacy requirement.   *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at \*23-24 ("There is an identity of interest with respect to prospective class members and any potential absentees, therefore, the first prong of the adequacy requirement is satisfied.   The national reputation of the firms involved in

---

[18] *See* Exhibits 1-3 to the Monteverde FA Decl. (firm resumes).

the present matter along with this Court's previous favorable recognition of these firms satisfies the second prong of the adequacy requirement.") (Appendix at App000007).

E.        The Proposed Settlement Satisfies Rule 23(b)

In addition to meeting all of the requirements of Rule 23(a), the proposed Settlement Class also satisfies the requirements of Rule 23(b)(1) and (b)(2).  Rule 23(b)(1) authorizes class certification if:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).

Here, because all Settlement Class members are former Midstream unitholders who were impacted by the Simplification Transaction, there is a substantial risk of varying or inconsistent results if the Settlement Class is not certified.   The possibility of conflicting court orders concerning the claims asserted by Plaintiff on behalf of the Settlement Class shows that certification is warranted under Rule 23(b)(1).  *See, e.g., In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG (SSx), 2013 U.S. Dist. LEXIS 155091, at *18 (C.D. Cal. Oct. 25, 2013) ("It would be inefficient to have individual members of the Class—who are likely geographically dispersed, given that CIL was a publicly-traded company—bring separate claims in scattered courts across the country.  Such fragmentation would . . . create a risk of inconsistent judgments.") (Appendix at App000210); *see also In re Schering-Plough/Merck*

*Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *25-26 ("The Court agrees that individual suits will likely result in disparate treatment where uniformity is otherwise required and practicable. Therefore, this Court concludes that the provision set forth in Fed. R. Civ. P. 23(b)(1)(A) is satisfied.") (Appendix at App000007).

The Court may also certify a class under Rule 23(b)(2) "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). Here, Defendants have acted on grounds generally applicable to the proposed Settlement Class members, as the Proxy was disseminated to the entire Settlement Class prior to the Simplification Transaction and the Simplification Transaction has affected all Midstream unitholders in the same way. Further, the relief obtained—dissemination of the Supplemental Disclosures—benefitted all members of the Settlement Class equally. As a result of the Settlement, Defendants agreed to disseminate the material Supplemental Disclosures to Midstream unitholders prior to the Unitholder Vote, and thus all Midstream unitholders were able to make an informed decision whether to vote for or against the Simplification Transaction. Accordingly, a mandatory non opt-out class should be certified under Rules 23(b)(1) and (b)(2). *See In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *27 (certifying settlement class under 23(b)(1) and (b)(2) where "the underlying factual circumstances revolve around Defendants' conduct towards prospective class members, specifically with respect to disclosures advanced and the circumstances surrounding the consummation of the Merger.") (Appendix at App000008).

## V.   THE COURT SHOULD GRANT PLAINTIFF'S COUNSEL'S REQUEST FOR REASONABLE ATTORNEYS' FEES AND EXPENSES

### A.   The Applicable Legal Standard

Plaintiff's Counsel respectfully request that the Court award them reasonable attorneys' fees and expenses of $575,000, which is unopposed by Defendants.  The Supreme Court has encouraged this type of consensual resolution of attorneys' fees as the ideal toward which litigants should strive.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), *superseded in part on other grounds by* 42 U.S.C. § 1997e(d)(1) ("request for attorney's fees should not result in a second major litigation.  *Ideally, of course, litigants will settle the amount of a fee.*"); *Ayer v. Thompson*, 358 F.3d 356, 375 (5th Cir. 2004) (same).

Here, Plaintiff's Counsel are entitled to an award of reasonable fees and expenses pursuant to the "common benefit doctrine," which recognizes that counsel who create a benefit for others should recover their expenses and reasonable attorneys' fees.  *See, e.g., Mills*, 396 U.S. at 394-95; *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores*, 54 F.3d 69, 71 (2d Cir. 1995).  Under the common benefit doctrine, "the vindication of the class' rights. . . is the common benefit conferred on the class that justifies an award of attorneys' fees." *In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *18 (quoting *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983)) (Appendix at App000005); *Amalgamated Clothing & Textile Workers Union*, 54 F.3d at 71 ("The common-benefit rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company.").  The common benefit doctrine is applicable in the context of class and shareholder derivative actions when there is no ascertainable fund from which attorneys' fees can be paid, but the litigation has conferred a substantial non-monetary benefit on an ascertainable group and the court has jurisdiction over both the subject matter of

the lawsuit and the defendant.  *See Mills*, 396 U.S. at 396.  In light of the substantial benefits conferred on Midstream Unitholders as a result of Plaintiff's Counsel's efforts, the requested fee and expense amount is appropriate here under the common benefit doctrine.

In determining the appropriate amount of an award of attorneys' fees, the Court should consider Plaintiff's Counsel's lodestar and expenses, and the relevant "*Johnson*"[19] factors set forth by the Fifth Circuit.  *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 966 (E.D. Tex. 2000) ("the Fifth Circuit blended the lodestar and *Johnson* analysis into a class action that was not a traditional common-fund class action.").  The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 965.

Plaintiff's Counsel respectfully submit that their request is fair and reasonable in light of the benefits achieved,[20] awards in other similar cases, and other relevant factors.

---

[19]  *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

[20]  As noted above, in addition to the Supplemental Disclosures regarding Crestwood's financial projections, Plaintiff's Counsel's litigation efforts also caused Defendants to include certain other material information that had been omitted form the Preliminary Proxy in the Final Proxy.

**B.     Plaintiff's Counsel's Lodestar and an Appropriate Multiplier Support the Requested Fee Award**

Plaintiff's Counsel expended 863.40 hours of attorney and paralegal time in prosecuting the Action.  *See* Monteverde FA Decl. ¶ 2, Ex. 4-5.[21]   The work performed was necessary to protect the rights of the Class, and resulted in the Settlement.   Applying the regular hourly rates of Plaintiff's Counsel, which, are within the range charged by attorneys in similar actions,[22] results in a total lodestar of $512,723.75.   *In re Dell, Inc., Sec. Litig.*, No. A-06-CA-726-SS, 2010 U.S. Dist. LEXIS 58281, at *39 (W.D. Tex. June 11, 2010) ("[T]he lodestar method [asks the court to] multiply[] the number of reasonable hours expended by a reasonable hourly rate and apply[] a lodestar multiplier.") (Appendix at App000221).   Plaintiff's Counsel also incurred $28,678.35 in expenses in litigating this Action.

Plaintiff's Counsel respectfully submits that, consistent with the *Johnson* factors, a reasonable multiplier of 1.065 is also appropriate in this case.   "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier. The

---

[21]  The Declaration of Nadeem Faruqi in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and an Award of Attorneys' Fees and Expenses is attached as Exhibit 4 to the Monteverde FA Declaration.  The Declaration of Thomas E. Bilek in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and an Award of Attorneys' Fees and Expenses is attached as Exhibit 5 to the Monteverde FA Declaration.

[22]  *See National Law Journal 2015 Billing Survey* (Jan. 5, 2015) (reporting average partner billing rates between $715.00 and $1,055.00 per hour; and average associate billing rates between $290.00 and $678.00 per hour).  http://www.nationallawjournal.com/id=1202713809557/Billing-Rates-Rise-Discounts-Abound?slreturn=20150412191141 (Ex. 6 to Monteverde FA Decl.).  The requested fee of $575,000 after expenses would represent an average hourly rate of $632.10.  "The Supreme Court in *Blum v. Stenson* . . . held that 'reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant community,' i.e., where counsel maintain their office . . . ."  *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (quoting *Blum*, 465 U.S. at 895); *see also Spencer v. Comserv Corp.*, No. 4-84-794, 1986 U.S. Dist. LEXIS 15863, at *32-33 (D. Minn. Dec. 30, 1986) ("Compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate.") (Appendix at App000236).

multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Schering-Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121, at *55 (Appendix at App000014).

Here, Plaintiff's Counsel pursued this Action on an entirely contingent basis, obtained the best-possible outcome for the Class with respect to their Section 14(a) claim after litigating on an expedited basis, and then conducted discovery to confirm the fairness of the Settlement. Additionally, Plaintiff's Counsel's acceptance of this Action necessarily precluded them from devoting resources to other litigation and the prosecution of additional cases. These factors warrant applying a reasonable multiplier of 1.065. *See, e.g., Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *114 (W.D. Tex. Feb. 6, 1996) (suggesting that "a standard risk multiplier of 2 should be used in all contingent fee arrangements.") (Appendix at App000270); *In re Schering-Plough/Merck Merger*, 2010 U.S. Dist. LEXIS 29121, at *55-58 (applying multiplier of 2.18 in disclosure-only settlement and noting that a multiplier of 3 may be awarded even in "a simple case where no risks pertaining to liability or collection were pertinent," and that "the application of a multiplier of 2.18 is not uncommon where the lodestar method is applied.") (Appendix at App000014-15).

## C.    Fee Awards in Similar Cases

The requested attorneys' fee award is also fair and reasonable in light of the fees awarded in similar disclosure-only settlements approved by courts across the country. *See, e.g., In re Schering-Plough/Merck Merger Litig.*, 2010 U.S. Dist. LEXIS 29121, at *48-49 ($3.5 million fee) (Appendix at App000013); *Lambert v. Tellabs, Inc.*, No. 1:13-cv-07945, Final Order and J. 9 (N.D. Ill. Sept. 11, 2015) ($700,000) (Appendix at App000318); *Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld projections) (Appendix at App000326); *Collier v. BrightPoint, Inc.*, No.

1:12-cv-1016-TWP-DKL, 2013 U.S. Dist. LEXIS 62125, at *9 (S.D. Ind. May 1, 2013) ($600,000 fee) (Appendix at App000329); *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528, Order and Final J. at 7 (S.D. Tex. May 16, 2014) ($595,000 fee) (Appendix at App000026); *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Order and Final J. 7 (D. Mass. Sept. 23, 2015) ($540,000 fee) (Appendix at App000034); *Cooke v. Equal Energy Ltd.*, No. 5:14-cv-00087-C, Fed. Court Order and Final J. 9 (W.D. Okla. Apr. 8, 2015) ($650,000 fee) (Appendix at App000045).

Further, the requested fee and expense award was negotiated by the parties based upon the work performed by Plaintiff's Counsel, the results achieved, and the fee awards in similar cases, and reflects a compromise reached through arm's-length bargaining.  Defendants' counsel undoubtedly sought to protect the financial interests of their clients, who, unlike the Settlement Class, have a financial stake in the amount of the fees and expenses to be paid.  *See Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *48 (N.D. Cal. Feb. 5, 2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one "ultimate objective - paying as little as possible. . . .") (Appendix at App000340).  In such circumstances, the end result of those negotiations—which reflects all of the counsel's experience and views as to what is appropriate—is entitled to significant weight in considering Plaintiffs' Counsel's fee request.  As the Western District of Texas explained in awarding the agreed upon amount of attorneys' fees in a nonpecuniary settlement: "This award of attorneys' fees and expenses is separate and apart from the class settlement which is not a monetary common fund--and will not in any way diminish the class settlement.  Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but

rather would only benefit [defendant]." *DeHoyos*, 240 F.R.D. at 322.  The same reasoning warrants approving the agreed upon attorneys' fee and expense award here.

In sum, the above-referenced factors support a fee and expense award of $575,000 to Plaintiff's Counsel.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Order and Final Judgment, thereby: (a) finally approving the Settlement; (b) finally certifying the Settlement Class for settlement purposes; and (c) approving Plaintiff's request for reasonable attorneys' fees and reimbursement of expenses.

DATED:  September 16, 2016.

Respectfully submitted,


*/s/ Thomas E. Bilek*
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

Nadeem Faruqi
James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY  10017
Tel:  212-983-9330
Fax: 212-983-9331

Juan E. Monteverde
Miles D. Schreiner
**MONTEVERDE & ASSOCIATES PC**
350 Fifth Avenue, 59th Floor
New York, NY  10118
Tel.: (212) 971-1341

*Counsel for Plaintiff*

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiff's counsel conferred with Defendants' counsel, who are not opposed to this motion.

_/s/ Thomas E. Bilek_
Thomas E. Bilek

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the District CM/ECF system on September 16, 2016, which caused an electronic copy of same to be served automatically upon all counsel of record.

_/s/ Thomas E. Bilek_
Thomas E. Bilek