**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| ISAAC ARON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **CRESTWOOD MIDSTREAM PARTNERS** | § | |
| **LP, CRESTWOOD MIDSTREAM GP,** | § | |
| **LLC, ROBERT G. PHILLIPS, ALVIN** | § | |
| **BLEDSOE, MICHAEL G. FRANCE,** | § | |
| **PHILIP D. GETTIG, WARREN H.** | § | **CASE NO. 4:15-CV-1367** |
| **GFELLER, DAVID LUMPKINS, JOHN** | § | |
| **J. SHERMAN, DAVID WOOD,** | § | |
| **CRESTWOOD EQUITY PARTNERS LP,** | § | |
| **CRESTWOOD EQUITY GP LLC, CEPQ** | § | |
| **ST SUB LLC, MGP GP, LLC,** | § | |
| **CRESTWOOD MIDSTREAM HOLDINGS** | § | |
| **LP, and CRESTWOOD GAS SERVICES** | § | |
| **GP, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## O R D E R

Pending before the Court is Plaintiff's Motion for Final Approval of Class Action
Settlement, Certification of the Settlement Class, and an Award of Attorneys' Fees and Expenses
("Motion for Final Approval"). (**Instrument No. 59**).

### I.

### A.

On May 6, 2015, Crestwood Midstream Partners LP ("Midstream") announced that it had
entered into a definitive merger agreement with Crestwood Equity Partners LP ("Equity").
(Instrument No. 3 at 2). Under this agreement, Midstream would become a wholly-owned
subsidiary of Equity, and holders of Midstream common units would receive 2.75 common units

of Equity in exchange for each unit of Midstream. *Id.* On June 16, 2015, Equity filed a preliminary proxy statement/prospectus on Form S-4 with the U.S. Securities and Exchange Commission ("SEC"). (Instrument No. 59 at 11). Lead Plaintiff Isaac Aron ("Plaintiff") claims that this proxy statement omitted material information in violation of Section 14(a) of the Securities Exchange Act and that Midstream directors breached their fiduciary duty in approving the merger. (Instrument No. 3 at 3).

On May 20, 2015, Plaintiff filed suit on behalf of himself and other unitholders of Midstream common stock against 16 named defendants (collectively, "Defendants"). (Instrument No. 3). At all relevant times, Plaintiff has been a Midstream shareholder. (Instrument No. 50). Plaintiff brings claims against Midstream and Crestwood Midstream GP, LLC ("Midstream GP")—the general partner of Midstream—as well as eight members of the boards of directors of Midstream, Equity, and Midstream GP. (Instrument No. 3 at 4-6).[1] The remaining defendants are Crestwood Equity Partners LP, Crestwood Equity GP LLC, CEQP ST SUB LLC, MGP GP, LLC, Crestwood Midstream Holdings LP, and Crestwood Gas Services GP, LLC. *Id.*

According to Plaintiff, there is substantial overlap between the Midstream and Equity boards of directors. (Instrument No. 3 at 11). Midstream GP is the general partner of both entities and six of Midstream's eight board members also serve on Equity's board. (Instrument No. 3 at 12). The two remaining board members serve on Midstream's conflicts committee, which is tasked with screening potential conflicts of interest among the directors. *Id.* The Midstream and Equity boards hold their quarterly meetings jointly because the boards are nearly identical. *Id.*

Starting in August 2014, the Midstream board began exploring merger options, which resulted in the proposed sale to Equity. (Instrument No. 3 at 12). According to Plaintiff,

---

[1] These directors/defendants include Robert G. Phillips, Alvin Bledsoe, Michael G. France, Philip D. Gettig, Warren H. Gfeller, David Lumpkins, John J. Sherman, and David Wood.

Midstream board members authorized Midstream's sale to Equity below market value. (Instrument No. 3 at 15). Plaintiff alleges that Defendants sought to maximize the merger's value to Equity instead of obtaining the full market value for Midstream shareholders. *Id.* The Midstream board allegedly failed to advertise the sale to any other entity and only evaluated merger options between Midstream and Equity. *Id.* The merger agreement also contained a "no solicitation" clause that barred other entities from bidding against Equity. (Instrument No. 3 at 18). Based on this agreement, Plaintiff alleges that Midstream directors breached their fiduciary duties of loyalty and due care. (Instrument No. 3 at 3). Plaintiff also claims that the proxy statement filed by Midstream on June 16, 2015 omitted material information that was required for shareholders to properly evaluate the proposed merger. *Id.*

## B.

After the merger agreement was announced on May 6, 2015, the shareholder vote was set for September 30, 2015. (Instrument No. 59 at 12). Plaintiff filed suit on May 20, 2015. (Instrument No. 1). Plaintiff also filed a motion for a preliminary injunction on September 3, 2015 (Instrument No. 12), and a motion for a temporary restraining order, expedited preliminary injunction hearing, and preliminary injunction on September 17, 2015. (Instrument No. 19). This Court scheduled a hearing to consider Plaintiff's motions for September 23, 2015.

The parties reached a settlement agreement on September 22, 2015, the day before the scheduled hearing. (Instrument No. 29). Defendants agreed to disclose financial projections that were omitted from the proxy statement and to allow Plaintiff to conduct discovery to confirm the fairness of the merger. (Instrument No. 54-1). Financial projections containing the "upside" scenario for the company's highest possible value were disseminated to Midstream shareholders and filed with the SEC on September 23, 2015. *Id.* Equipped with this new information, a

majority of Midstream shareholders voted on September 30, 2015 to approve the merger as proposed by the Midstream board. (Instrument No. 59 at 15).

After the merger vote, Plaintiff's counsel conducted discovery to confirm the reasonableness of Equity's acquisition of Midstream. (Instrument No. 59 at 15). Plaintiff's counsel deposed two members of the Midstream Board Conflicts Committee as well as Equity's Chief Financial Officer. *Id.* Based on counsel's experience with shareholder class actions, Plaintiff determined that the merger and settlement agreement were fair, adequate, and reasonable for Midstream shareholders. *Id.*

On June 21, 2016, this Court issued a preliminary order ("Preliminary Order") granting preliminary approval of the settlement agreement and certification of a settlement class of Midstream unitholders between May 5, 2015 and September 30, 2015. (Instrument No. 56). The Preliminary Order also directed Defendants to give notice to members of the settlement class. *Id.* Pursuant to the Preliminary Order, Defendants obtained A.B. Data to serve as Notice Administrator. (Instrument No. 64 at 2). A.B. Data identified 50,145 unit holders of Midstream stock between May 5, 2015 and September 30, 2015. (Instrument No. 64 at 5). A.B. Data then mailed a total of 50,145 notices to Midstream unit holders. *Id.* The deadline to object to settlement was September 23, 2016. (Instrument No. 56 at 7). There were no objections filed prior to September 23, 2016 and only one objection that was subsequently filed on October 3, 2016. (Instrument No. 65). Plaintiff supplemented the Motion for Final Approval on September 26, 2016 (Instrument No. 63) and on October 7, 2016 (Instrument No. 66). A Final Approval Hearing took place on October 14, 2016 at 9:30 a.m.

## II.

### A.

Federal Rule of Civil Procedure 23(e) requires court approval for settlements of class actions. *Parker v. Anderson*, 667 F.2d 1204, 1208 (5th Cir. 1982). The Fifth Circuit has consistently held that settlements "are highly favored in the law and will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits." *D.H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971). The Fifth Circuit has also stated that in class action suits "there is an overriding public interest in favor of settlement," because such suits "have a well-deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

In determining whether to approve a proposed settlement, the Fifth Circuit has identified a "cardinal rule," which is "that the District Court must find that the settlement is fair, adequate, and reasonable and is not the product of collusion between the parties." *Id.*, at 1330. The District Court enjoys broad discretion in determining whether or not the settlement is fair, reasonable, and adequate. *See Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). In evaluating whether a settlement is fair, adequate, and reasonable, the Court looks to:

(1) Whether the settlement was a product of fraud or collusion;

(2) The complexity, expense, and likely duration of the litigation;

(3) The stage of the proceedings and the amount of discovery completed;

(4) The factual and legal obstacles [to] prevailing on the merits;

(5) The possible range of recovery and the certainty of damages; and

(6) The respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker*, 667 F.2d at 1209. "The district court's approval of a proposed settlement may not be overturned on appeal absent an abuse of discretion." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

**B.**

**1.**

The fact that a class-action settlement is reached after arms-length negotiations by experienced counsel generally gives rise to a presumption that the settlement is fair, reasonable, and adequate. *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (Rosenthal, J.).

In this case, the settlement is the product of *bona fide* negotiations, and there is no evidence of collusion between counsel for Plaintiff and Defendants. Prior to the settlement on September 22, 2015, Plaintiff filed a complaint, an amended complaint, a motion for a preliminary injunction, and a motion for a temporary restraining order (TRO). The parties settled on the day before the Court's TRO hearing and eight days before the shareholder vote scheduled for September 30, 2015. Given this time pressure, both parties had an incentive to reach an agreement.

Once the settlement was reached, Plaintiff's counsel conducted limited discovery to examine the reasonableness of the proposed merger. Plaintiff deposed two members of the Midstream board and one member of the Equity board, and Plaintiff also examined non-public documents. This discovery was conducted after the parties had already reached an agreement on settlement and attorneys' fees. (Instrument No. 54-1). However, the parties' agreement was conditioned on Plaintiff's counsel reviewing the reasonableness of the settlement. (Instrument No. 54-1 at 10). If Plaintiff's counsel could have obtained a greater recovery for the class, then

Plaintiff could have abrogated the agreement. *Id.* Accordingly, there is no evidence of fraud or collusion and the arms-length negotiations between Plaintiff and Defendants weigh in favor of approving the settlement.

## 2.

The time and cost of further litigation also favors approving the settlement. *See In re: Enron Corp. Securities, Derivative & ERISA Litigation*, 228 F.R.D. 541, 565 (S.D. Tex. 2005) (Harmon, J.) (approving class-action settlement because "the settlement avoids the risks and additional great expense inherent in these challenges in a vigorously litigated action"). This case involves mixed federal and state law claims concerning financial disclosures and fiduciary duties during a merger. By settling on the eve of the Court's hearing on the temporary restraining order (TRO), the parties saved substantial litigation costs, including preliminary injunction hearings, class certification hearings, expert witnesses, a complex trial, and appeals.

Plaintiff asserts that the settlement agreement provides the class with the same relief that was initially sought: the disclosure of material information about the merger agreement. (Instrument No. 59 at 18). In Section 14(a) cases concerning non-disclosure in proxy statements, plaintiffs are made whole where the company fully and adequately discloses material facts before the shareholder vote. *See Nowling v. Aero Servs. Int'l, Inc.,* 734 F. Supp. 733, 741 (E.D. La. 1990) (finding that injunctive relief is appropriate for Section 14(a) claims involving omissions from a proxy statement).

In this case, Plaintiff also alleged that Midstream board members breached their fiduciary duties by supporting a merger that understated the value of Midstream. (Instrument No. 3 at 15). Despite the disclosure of additional financial forecasts, a majority of Midstream shareholders still voted to approve the merger as proposed by Midstream directors. After this vote, Plaintiff

conducted limited discovery and determined that the merger was fair and reasonable. Even though Plaintiff alleged in the Complaint that Midstream was undervalued, Plaintiff would need to prove this at trial in light of the shareholder vote. If this case were to proceed, the parties would likely produce expert reports with complex financial modeling. By reaching a settlement early on in the litigation process, the parties avoided these expenses, and this factor weighs in favor of approving the settlement.

**3.**

The Court must also ask "whether the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching, Grades 7–12 Litigation,* 447 F.Supp.2d 612, 620 (E.D. La. 2006). This question is not "whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed." *Id.* at 620–21.

Here, the parties reached a settlement the day before the TRO hearing and a week before the shareholder vote on the merger. The parties admit that the settlement was reached before they could fully explore the merits of the case, which is why the agreement permitted Plaintiff's counsel to conduct depositions and access non-public documents. (Instrument No. 59 at 13). In conducting this discovery, Plaintiff's counsel relied on an independent financial expert, who has extensive experience in valuing companies like Midstream. *Id.* After completing discovery, Plaintiff has chosen to affirm the settlement agreement because Plaintiff has determined that the merger and settlement agreements are fair, reasonable, and in the best interests of Midstream shareholders. Accordingly, this factor supports granting final approval of the settlement.

**4.**

The Court must also compare the settlement terms with the likely rewards the class would receive at trial. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). When making this comparison, "the district court's 'evaluation is not and cannot involve a trial on the merits,' because the policy of encouraging settlements is effected by 'the very uncertainty of the outcome of the litigation and the avoidance of wasteful litigation and expense.'" *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195 (5th Cir. 1981).

Here, the settlement resulted in financial disclosures to Midstream shareholders prior to a vote on the merger with Equity. Although the settlement did not obtain any financial award for the shareholders, they were placed in the same position had the disclosures been made in the first place. In *Mills v. Electric Auto-Lite Company*, the Supreme Court found that "fair and informed corporate suffrage" is itself a form of vindication; and that by attaining full disclosure prior to a shareholder vote, a plaintiff "render[s] a substantial service to the corporation and its shareholders." 396 U.S. 375, 396 (1970). Because this relief was obtained prior to the shareholder vote, Plaintiff's claims under Section 14(a) were rendered moot since the shareholders obtained the alleged material information prior to voting. *See Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 385 (1970) (imposing Section 14(a) liability when a shareholder suffers an injury by voting without knowing material facts). It is therefore unlikely that Plaintiff would be entitled to damages for Section 14(a) claims if this case proceeded to trial.

Plaintiff also brought breach of fiduciary claims under Delaware state law. In the Complaint, Plaintiff alleged significant overlap between the Midstream and Equity boards. (Instrument No. 3 at 15). Based on conflicts of interest, Plaintiff alleged that Midstream board members agreed to sell the partnership to Equity at less than market value. *Id.* By settling this

claim without any monetary recovery for the class, Plaintiff has essentially abandoned this claim. In the Motion for Final Approval, Plaintiff's counsel wrote that "after conducting discovery, Plaintiff's counsel determined that the probability of succeeding on any remaining claims related to the [merger] is exceedingly low." (Instrument No. 59 at 23).

Plaintiff's counsel based this assessment on Delaware state law, where it is difficult to prove a breach of fiduciary duty when a board of directors relies on a conflicts committee and independent counsel to assess a prospective merger. *See Dieckman v. Regency GP LP*, 2016 WL 1223348, at *1 (Del. Ch. Mar. 29, 2016) (holding that "a potentially conflicted transaction . . . shall not constitute a breach" if approved by a conflicts committee or any other "safe harbor" provision in the partnership agreement). Recent cases from the Delaware Court of Chancery have insulated board members from liability when they go through the formal process of having a conflicts committee with independent directors. *See id.* Even though only two of the eight Midstream directors are independent of Equity, this is sufficient to form a conflicts committee under Delaware law. *See In re Volcano Corp. Stockholder Litig.*, 143 A.3d 727, 748 (Del. Ch. 2016). In other words, it appears that Midstream directors complied with the legal formalities of approving a merger, even though their actions initially seemed suspect. As a result, Plaintiff determined that it "would be exceedingly difficult to establish an underlying claim for breach of fiduciary duty or breach of contract," and also that "any potential aiding and abetting claims against . . . other entities would also be unlikely to succeed." (Instrument No. 59 at 18). The legal obstacles to recovery therefore weigh in favor of approving the settlement.

**5.**

To assess the reasonableness of a proposed settlement seeking monetary relief, a district court must "contrast settlement rewards with likely rewards if the case goes to trial." *In re*

*Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir 1982). "[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982).

In this case, Plaintiff failed to obtain monetary damages for the class but nevertheless compelled financial disclosures prior to a shareholder vote. Prior to the settlement, Plaintiff sought a preliminary injunction and temporary restraining order to stop the shareholder vote until material disclosures took place. By quickly consenting to these disclosures, Defendants mooted Plaintiff's claims. After conducting limited discovery, Plaintiff determined that the merger and settlement agreement were fair and reasonable. Even though a zero-dollar settlement is not ideal for the class members, Plaintiff has determined that it is the best possible recovery under existing law and that litigation resources would be unnecessarily expended if the case were to proceed to trial. This factor therefore supports approving the settlement.

**6.**

The opinion of counsel and other participants also supports approving the settlement. "[W]here the parties have conducted an extensive investigation, engaged in significant fact finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005). In this case, attorneys for Plaintiff and Defendants are experienced in class-action litigation and have a substantial amount of information available to evaluate, negotiate, and make well-informed judgments about the

adequacy of the settlement. Counsel for all parties agree that the settlement is fair, reasonable, and adequate, which therefore supports granting final approval.

Out of 50,145 notices sent to putative class members, there was only one objection filed after the objection deadline. (Instrument No. 65). The Court-ordered deadline to object to the settlement was three weeks prior to the hearing date on September 23, 2016. (Instrument No. 56 at 7). On October 3, 2016, putative class member David G. Duggan filed an objection *pro se.* (Instrument No. 65). Duggan's objection takes issue with what he calls the "'racket' of plaintiffs' lawyers' [sic] collecting 6-figure fees for 'disclosure only' merger cases (in which only new 'disclosures' are made, and no 'sweetening of the pot' for investors in the form of money or other consideration.)" (Instrument No. 65 at 2). Duggan cited a recent opinion from the Seventh Circuit in which Judge Richard Posner criticized a disclosure-only, zero-dollar class action settlement as a "racket" for plaintiffs' lawyers. *In re Walgreen Co. Stockholder Litig.,* 2016 WL 4207962, at *5 (7th Cir. Aug. 10, 2016). Duggan did not cite any Fifth Circuit precedent or point out any other deficiency with the settlement. The Court acknowledges Duggan's frustrations with disclosure-only recoveries but is mindful that this frustration must be balanced against the need for companies to make full and adequate disclosures. Accordingly, although the Court notes Duggan's objection, the Court must also consider the opinion of counsel and other class members who did not object to the settlement.

In light of the foregoing analysis, final approval of the class action settlement is **GRANTED**.

### III.

Plaintiff has also moved for certification of a non-opt-out class of Midstream unitholders during the period from May 5, 2015 to September 30, 2015. (Instrument No. 59). A district court

must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The party seeking the class certification bears the burden of proof. *Id.*, at 740. To be certified, the class must meet all the requirements of Rule 23(a), as well as the requirements of one of the subsections of Rule 23(b). 5 *Moore's Federal Practice* § 23.61[1]. The district court has broad discretion in deciding to certify, and will be reversed on appeal only for abuse of discretion. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *Castano*, 84 F.3d at 740; 5 *Moore's Federal Practice* § 23.61[1]. In determining whether a class should be certified, a court may not inquire into the merits of the suit, but may "look past the pleadings" to assess whether the Rule 23 requirements have been met. *Castano*, 84 F.3d at 744.

## A.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, rather that joinder would be "extremely difficult or inconvenient." 5 *Moore's Federal Practice* § 23.22[1], [2]; *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). Relevant factors include: geographic dispersion of the class members; the ease of identification of the class members; the nature of the action; the size of each individual plaintiff's claim; and the effect of injunctive relief on future class members. *Zeidman*, 651 F.2d at 1038. In order to prove numerosity, the moving party must proffer some evidence of the number of class members, or a reasonable estimate. *Id.*; 5 *Moore's Federal Practice* § 23.22[3][b].

As of May 4, 2015, Midstream had over 188 million common units outstanding, and Defendants sent notice to 50,145 putative class members who are geographically dispersed. (Instrument No. 59 at 26). This vast class size meets the numerosity requirements of Rule

23(a)(1). *See Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).

## B.

Rule 23(a)(2) states that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement tests the sufficiency of the class itself. 5 *Moore's Federal Practice* § 23.23 [3]. The test for commonality is not stringent; the class need only share one common question of law or fact to satisfy the requirement. *See Forbush v. J.C. Penny Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) ("The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'").

In this case, every member of the putative class owned Midstream units between May 5, 2015 and September 30, 2015, and therefore had the ability to vote on the proposed merger. There is a common question of law as to whether Defendants violated Section 14(a) by omitting material facts from the original proxy statement. Because the claims among class members arise from the same nucleus of operative facts and raise identical legal questions, the commonality requirement of Rule 23(a)(2) is satisfied.

## C.

The Court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement focuses on the relationship between the interests of the representative parties and the interests of the class as a whole. 5 *Moore's Federal Practice* § 23.24[1] ("if the legal theories of the class representative conflict with those of the absent class members, that lack of typicality

precludes certification of the class"). Typicality is satisfied if the representative's claims arise from the same events, practice, or conduct as the class plaintiffs. 5 *Moore's Federal Practice* § 23.24[2]. In this case, Plaintiff was a Midstream unitholder between May 5, 2015 and September 30, 2015. Plaintiff's claims arise under the same legal theories and from the same nucleus of operative facts. Plaintiff's claims are therefore typical for purposes of Rule 23(a)(3).

### D.

The Court must also determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy test functions to reveal conflicts between the representatives and the class members they claim to represent. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Adequacy of representation is tied to both commonality and typicality. *Amchem*, 521 U.S. at 626 n.20. The adequacy requirement of Rule 23(a)(4) applies both to the class representative and the representative's counsel. *In re Asbestos Litigation*, 90 F.3d 963, 977 (5th Cir. 1996). First, the class representative must not have interests adverse to the class. Courts also consider whether the named representative will "vigorously prosecute" the interests of the class. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Second, class counsel must be qualified, experienced, and generally able to conduct the litigation. 5 *Moore's Federal Practice* § 23.25[5][a]. In assessing the adequacy of class counsel, the court may consider the counsel's prior litigation experience and expertise. *See Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

In this case, Plaintiff is a shareholder of Midstream units and was the largest shareholder to move for lead plaintiff. (Instrument No. 31). Plaintiff has a financial stake in the outcome of the litigation and was motivated to seek the maximum possible benefit for himself and other

class members. There are no alleged conflicts of interest between Plaintiff or Plaintiff's counsel, who has extensive experience litigating class-action securities cases. In this case, Plaintiff's counsel fairly and adequately represented Plaintiff and the members of the class. Accordingly, the adequacy requirement of Rule 23(a)(4) is satisfied.

## E.

A class action may be maintained if it meets the four prerequisites of Rule 23(a) and falls within one of the three categories of Rule 23(b). In this case, Plaintiff alleges that the action satisfies the requirements for Rule 23(b)(1) and Rule 23(b)(2). Rule 23(b)(1) authorizes class certification if:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) authorizes class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, there is a substantial risk of varying or inconsistent results if the settlement class is not certified. Because there are some 50,145 shareholders who are geographically dispersed, it would be impractical to individually adjudicate every claim. Individual adjudication would likely lead to contradictory results for identical claims. Thus, the requirements of Rule 23(b)(1) are met in this case. *See Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 318 (5th Cir. 2007) (finding

that Rule 23(b)(1) class certification is appropriate where "incompatible standards" could result from separate actions).

Rule 23(b)(2) class certification is appropriate where injunctive or declaratory relief is warranted for the class as a whole. *Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d 360, 365 (5th Cir. 2012). In this case, Plaintiff sought injunctive relief for material omissions in a proxy statement on behalf of similarly situated unitholders. By filing motions for a preliminary injunction and a temporary restraining order, Plaintiff sought to force public disclosure of material facts. (Instruments No. 12; 19). The resulting disclosure benefited the entire class and was the exact form of relief sought by the Plaintiff. As a result, the class can be appropriately certified under Rule 23(b)(2).

In light of the foregoing analysis, final certification of a Rule 23 class of Midstream unitholders between May 5, 2015 and September 30, 2015 is **GRANTED**.

## IV.

### A.

Rule 23(h) authorizes the District Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in class actions. Fed. R. Civ. P. 23(h). Unless the Court provides otherwise, the request for attorney's fees must be made by motion no later than 14 days after entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). The Fifth Circuit has "encouraged litigants to resolve fee issues by agreement," *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322 (W.D. Tex. 2007), but the Court is not bound by parties' agreement, *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980). "To fully discharge its duty . . . a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849 (5th Cir. 1998).

In a class action, there is "greater need for the judge to act as a fiduciary for the beneficiaries (who are paying the fee) . . . because few if any of the action's beneficiaries actually are before the court at the time the fees are set." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 744–45 (S.D. Tex. 2008) (Harmon, J.). Judicial scrutiny is needed when the fee "will be paid out of the fund established by the litigation, in which the defendant no longer has any interest, and the plaintiff's attorney's financial interests conflict with those of the fund beneficiaries." *Id.*

Courts typically use one of two methods for calculating attorneys' fees: "(1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012).

Even where the common fund is zero, attorneys' fees may still be awarded based on the "common benefit doctrine." Under this doctrine, "the vindication of the class' rights . . . is the common benefit conferred on the class that justifies an award of attorneys' fees." *Pawlak v. Greenawalt*, 713 F.2d 972, 983 (3d Cir. 1983). In *Mills v. Electric Auto-Lite Company*, the Supreme Court explained that "[i]n many suits under § 14(a), particularly where the violation does not relate to the terms of the transaction for which proxies are solicited, it may be impossible to assign monetary value to the benefit." 396 U.S. 375, 396 (1970). Nevertheless, the Court held that attorneys' fees could still be awarded because of "the stress placed by Congress on the importance of fair and informed corporate suffrage." *Id.*

When calculating attorneys' fees for non-monetary recoveries, courts analyze the lodestar and whether the *Johnson* framework supports the reasonableness of the award. In *Johnson v. Georgia Highway Express*, the Fifth Circuit outlined twelve factors that courts should use to assess the reasonableness of attorneys' fees, including:

(1) The time and labor required;
(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The 'undesirability' of the case;
(11) The nature and length of the professional relationship with the client;
(12) Awards in similar cases.

488 F.2d 714, 717-19 (5th Cir. 1974). "After calculating the lodestar, the court may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson*." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

## B.

Plaintiff has requested an overall award of $575,000 for attorneys' fees and expenses, which is unopposed by Defendants. (Instrument No. 59 at 24). Plaintiff's Counsel has expended a total of 863.40 hours of attorney and paralegal time in prosecuting this action, which results in a lodestar $512,723.75. *Id.* The lodestar was calculated from the work of two law firms, which have submitted their resumes to the Court. (Instruments No. 60-2 and 60-3). Faruqi & Faruqi incurred expenses totaling $27,807.86 and Bilek Law Firm, LLP incurred expenses totaling $870.49. (Instruments No. 60-4 and 60-5). The attorneys and paralegals for Faruqi & Faruqi worked a total of 744.65 hours for a requested amount of $438,461.25. The attorney and paralegal at Bilek worked a total of 118.75 hours for a requested amount of $74,262.50.

To support the requested fee award, Plaintiff's counsel submitted an article from the *National Law Journal* entitled "Billing Rates at the Nation's Priciest Law Firms." (Instrument No. 60-6). This article lists the partner and associate rates at the country's top law firms, which bill between $715 and $1,055 for partners and $290 and $678 for associates. *Id.* Plaintiff's counsel has not submitted any evidence that these rates are comparable to what law firms charge in Houston. Plaintiff has also failed to address each of the *Johnson* factors in turn. Instead, Plaintiff asserts that this case differs from most common fund cases because the recovery is not monetary. Unlike the typical common fund settlement, where attorneys' fees are awarded from the class fund, these fees are paid directly by the Defendants. Because Defendants have agreed to pay the total amount of $575,000, Plaintiff has not addressed every *Johnson* factor.

A shortened analysis of the *Johnson* factors nonetheless supports the reasonableness of the attorneys' fees. Under the first factor, there was significant time and labor expended on the case. For the second factor, the case involved novel and difficult questions, including a hybrid action brought under Section 14(a) of the Securities Exchange Act and claims under Delaware state law. Under the third factor, this case required significant expertise to perform the legal services properly, including seeking an injunction and temporary restraining order prior to a shareholder vote. Under the fourth factor, Plaintiff's counsel was precluded from other employment while working on this case.

The fifth factor—the customary fee—calls into question the reasonableness of the fee award. Apart from the *National Law Journal* article on the nation's top 50 law firms, Plaintiff's counsel has not submitted any evidence of hour billing rates in the Houston area or for similar cases. *See Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 718 (5th Cir. 1974) (basing the "customary fee" on "similar work in the community"). As previously discussed, Defendants

agreed to the attorneys' fee award, including hourly rates. Because the fees will not be deducted from a common fund, this factor alone does not undermine the overall reasonableness of the award.

The sixth factor—whether the fee is fixed or contingent—is not relevant here. The seventh factor—time limitations imposed by the circumstances—weighs in favor of the fee award because the attorneys acted quickly to secure relief before the shareholder vote on September 30, 2015. The attorneys billed most of their hours over the span of only four months between May 20, 2015 and September 30, 2015.

Under the eighth factor—the amount involved and the results obtained—Plaintiff's counsel secured financial disclosures that helped the shareholders make an informed vote about the merger. Although Plaintiff attempted to secure a monetary recovery for the class, Plaintiff was unable to do so in the settlement. Accordingly, this factor weighs in favor of approving the fee award.

Under the ninth factor—the experience, reputation, and ability of the attorneys—Attorney Thomas Bilek for Bilek Law Firm, LLP has practiced law in Texas for 30 years. (Instrument No. 60-3 at 4). He is a life fellow of the Texas Bar Foundation and has litigated many securities class actions. *Id.* Juan Monteverde is the founder and managing partner of a securities class action law firm and has also litigated numerous cases. (Instrument No. 60-2 at 4). This factor also supports the reasonableness of the fee award.

The tenth factor—the undesirability of the case—is not relevant here, nor is the eleventh—the nature and length of the relationship with the client. The twelfth factor—the awards in similar cases—is the only factor that Plaintiff's counsel addressed extensively in the Motion for Final Approval. (Instrument No. 59 at 27-28). Plaintiff cited seven cases involving

non-disclosure of proxy statements in which the fee award was greater than $540,000. Although these cases are unpublished, Plaintiff submitted them in an appendix to the Court. (Instrument No. 61). Taken together, these cases support the reasonableness of the fee award. A total award for Plaintiff's counsel of $575,000 including expenses is reasonable based on the lodestar and the *Johnson* factors.

In light of the foregoing analysis, Plaintiff's request for an award of attorneys' fees and expenses is **GRANTED**.

**V.**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and an Award of Attorneys' Fees and Expenses is **GRANTED**. **(Instrument No. 59)**.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the ____ day of October, 2016.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**
