

United States District Court
Southern District of Texas
FILED

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
4:15-CV-1367

No. 16-20742

JUL 1 7 2017

_____, Clerk of Court

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2017

Lyle W. Cayce
Clerk

LAWRENCE G. FARBER

      Plaintiff

v.

CRESTWOOD MIDSTREAM PARTNERS L.P.; CRESTWOOD MIDSTREAM
GP, L.L.C.; ROBERT G. PHILLIPS; ALVIN BLEDSOE; MICHAEL G.
FRANCE; PHILIP D. GETTIG; WARREN H. GFELLER; DAVID
LUMPKINS; JOHN J. SHERMAN; DAVID WOOD; CRESTWOOD EQUITY
PARTNERS L.P.; CRESTWOOD EQUITY GP L.L.C.; CEQP ST SUB L.L.C.;
MGP GP, L.L.C.; CRESTWOOD MIDSTREAM HOLDINGS L.P.;
CRESTWOOD GAS SERVICES GP, L.L.C.,

      Defendants - Appellees

v.

DAVID G. DUGGAN,

      Appellant

--------------------------------------------------

ISAAC ARON, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff - Appellee

v.

CRESTWOOD MIDSTREAM PARTNERS L.P.; CRESTWOOD MIDSTREAM
GP, L.L.C.; ROBERT G. PHILLIPS; ALVIN BLEDSOE; MICHAEL G.
FRANCE; PHILIP D. GETTIG; WARREN H. GFELLER; DAVID
LUMPKINS; JOHN J. SHERMAN; DAVID WOOD; CRESTWOOD EQUITY
PARTNERS L.P.; CRESTWOOD EQUITY GP L.L.C.; CEQP ST SUB L.L.C.;

No. 16-20742

MGP GP, L.L.C.; CRESTWOOD MIDSTREAM HOLDINGS L.P.;
CRESTWOOD GAS SERVICES GP, L.L.C.,

        Defendants - Appellees

v.

DAVID G. DUGGAN,

        Appellant

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before STEWART, Chief Judge, and JOLLY and WIENER, Circuit Judges.
E. GRADY JOLLY, Circuit Judge.

    The class members get nothing.  The attorneys get their fees.  A class member objects, but untimely.  Consequently, we lack appellate jurisdiction.

    More specifically, this appeal arises from the district court's approval of a zero-dollar class action settlement and award of attorneys' fees in a consolidated lawsuit stemming from a merger between two Delaware entities: Crestwood Midstream Partners LP ("Midstream") and Crestwood Equity Partners LP ("Equity").  In the class action lawsuit, Isaac Aron, a Midstream unitholder and the class representative, alleged that Midstream's directors breached their fiduciary duty in approving the merger and that Equity's preliminary proxy statement omitted material information in violation of federal securities laws and Securities and Exchange Commission ("SEC") rules.  The parties settled for additional disclosures, confirmatory discovery, and attorneys' fees. David Duggan, a class member, objected to the settlement.  The district court approved the parties' settlement and awarded Aron

2

No. 16-20742

attorneys' fees over Duggan's objection.  Duggan appeals.  We DISMISS for lack of appellate jurisdiction.

I.

On May 5, 2015, Midstream and Equity entered into a merger agreement in which Midstream would become a wholly-owned subsidiary of Equity and Midstream's unitholders would receive 2.75 common units of Equity for each unit of Midstream that they owned.  The agreement was, however, subject to a vote by Midstream's unitholders.

Fifteen days later, Lawrence Farber, a Midstream unitholder, filed a putative class action against sixteen named defendants, most notably Midstream and Equity, asserting that: (1) Midstream's directors breached their fiduciary duty by attempting to sell Midstream by means of an unfair process and for an unfair price; and (2) Equity aided and abetted such breaches.

In June 2015, Equity filed a preliminary proxy statement with the SEC related to the merger.  The preliminary proxy, among other things, summarized the merger agreement, explained the events leading up to the agreement, and summarized the financial analyses of Tudor, Pickering, Holt & Co. Advisors, LLC ("Tudor"), one of the financial advisors to the Midstream Conflicts Committee.  Two parts of the proxy addressing Tudor's financial analyses are particularly relevant.  First, in the Contribution Analysis section, the proxy stated that the contribution analysis indicated a range of implied exchange ratios in the merger of 1.432x to 4.179x, as compared to the exchange ratio of 2.750x.  Second, in the Unaudited Financial Projections section, the proxy included a table showing unaudited financial projections[1] from 2015 to

---

[1] The financial projections were for: (1) earnings before interest, tax, depreciation, and amortization ("EBITDA"); (2) distributable cash flow; (3) distributable cash flow per LP unit; (4) distributions per LP unit; and (5) growth capital expenditures.

No. 16-20742

2019 for Equity, Midstream, and the pro forma combined entity that would result from the merger.  Importantly, the proxy stated that each financial forecast "included a base case[2] . . . , as well as an upside case[3] and a downside case,[4] resulting from adjustments by . . . management to the applicable base case."  But the relevant table included only one case and never identified whether it reflected the base, upside, or downside case.

On July 6, 2015, Farber amended his complaint to add the claim that the preliminary proxy violated SEC Rule 14a-9[5] and Section 14(a) of the Securities Exchange Act of 1934[6] because it was materially misleading and omitted material facts unitholders needed to properly evaluate the proposed merger.

Fifteen days later, Aron filed his own putative class action against the Farber suit defendants, alleging that Midstream and Equity violated Securities Exchange Act §§ 14(a) and 20(a)[7] and Rule 14a-9.  Pertinently, Aron contended that the preliminary proxy violated Section 14(a) and Rule 14a-9 because it omitted material facts regarding, among other things, key inputs and assumptions of the financial analyses performed by Tudor.

---

[2] The expected financial scenario.

[3] The most optimistic financial scenario.

[4] The most pessimistic financial scenario.

[5] This Rule prohibits false or misleading statements with respect to any material fact or the omission of any material fact in proxy statements.  17 C.F.R. § 240.14a-9(a) (stating that a proxy statement shall not "contain[] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading").

[6] Section 14(a) provides that "[i]t shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe . . . to solicit . . . any proxy . . . in respect of any [registered, non-exempt] security . . . ."  15 U.S.C. § 78n(a)(1).

[7] Section 20(a) provides for joint and several liability.  15 U.S.C. § 78t(a).

No. 16-20742

Equity filed two amendments to the preliminary proxy in July and August 2015. While they provided some of the information Farber and Aron sought, these amendments did not provide the requested data underpinning Tudor's financial analyses.

On August 28, 2015, Equity filed its final proxy with the SEC. Notably, Equity did not change the Contribution Analysis and Unaudited Financial Projections sections.

Three days later, Midstream announced that it would hold a special meeting for unitholders to vote on the proposed merger on September 30, 2015. Shortly thereafter, Farber and Aron jointly moved for a preliminary injunction, seeking to enjoin the unitholder vote until Midstream and Equity disclosed the "material" information they had allegedly omitted from the final proxy in violation of federal securities laws and regulations.

The district court consolidated Aron and Farber's cases. Farber then filed a voluntary notice of dismissal. But Aron moved for a temporary restraining order, expedited preliminary injunction hearing, and preliminary injunction.

The district court granted Farber's motion to dismiss all of his claims against Midstream and Equity and set a hearing on Aron's motion.

The day before the scheduled hearing and after arm's-length negotiations, Aron, Midstream, and Equity reached a proposed settlement. Midstream and Equity agreed to: (1) disclose financial projections that they omitted from the proxy statement; (2) allow Aron to conduct discovery to confirm that the proposed settlement was fair, adequate, and reasonable and to terminate the settlement if he determined that it was not fair; and (3) not oppose Aron's application for an award of attorneys' fees and expenses not to exceed $575,000, which Midstream or its successor(s)-in-interest or their respective insurer(s) would pay. Aron, in turn, agreed to a general release of

5

No. 16-20742

the known and unknown claims that class members possessed in their capacity as Midstream unitholders.

A week before the merger vote, Midstream supplemented the final proxy statement with an addendum to the Unaudited Financial Projections section that: (1) explained that the relevant table contained base case projections; and (2) provided additional tables showing the upside and downside case projections (together, the "supplemental disclosures"). The supplemental disclosures showed that Midstream's financial growth projections for EBITDA and distributable cash flow increased at a significantly greater pace than Equity's under the upside case compared to the base case—facts relevant to the fairness of the 2.75 exchange ratio.

Midstream's unitholders voted to approve the merger on September 30, 2015.

Meanwhile, Aron reviewed both public and confidential documents related to the merger and consulted with a financial expert to evaluate the claims in his lawsuit. Then, in February and May 2016, Aron deposed a member of Midstream's Conflicts Committee, a managing director at Tudor, and Equity's senior vice president and chief financial officer.

After completing discovery and reviewing and analyzing his claims with an expert, Aron concluded that his claims were not viable and that the proposed settlement terms were fair, reasonable, and adequate. He therefore entered into a stipulation of settlement and release.

In an order signed June 21, 2016, the district court preliminarily approved the stipulation and certified the settlement class. The court found that the settlement warranted notice to the class and scheduled a fairness hearing for October 7, 2016, at which time it would hear any objections and consider whether to give final approval to the settlement. The court then formally approved the form and content of the proposed notice, ordering

No. 16-20742

Midstream to mail a copy of the notice "[w]ithin fourteen (14) business days following entry of [the] Order" to all members of the class who could "be identified with reasonable effort." Further, the court ordered that all record holders who were not also beneficial owners of Midstream units must forward notice to the beneficial owners or provide the notice administrator with a list of the names and address of the owners. The notice administrator was then required to use reasonable efforts to give notice to beneficial owners. The order also specifically stated that the court would consider only objections submitted in accordance with the procedure that it detailed in the order.[8] The order also clearly stated that non-compliant objectors would "be deemed to have waived [their] objection(s) (including any right of appeal) and [would] be forever barred from making any such objection(s) . . . unless otherwise ordered by the Court."

On June 22, 2016, the clerk entered the order, and the district court reset the fairness hearing for October 14, 2016.

Midstream's notice administrator, A.B. Data, Ltd., was responsible for mailing notice. A.B. Data mailed 50,145 notices to unitholders, starting with its initial mailing on July 13, 2016[9]—the fourteenth business day after the clerk entered the order. The notice explained how to object and that, if objectors did not object in the prescribed manner, they would "be deemed to have waived such objection and [would] forever be barred from raising such objection in the Action or any other action or proceeding." However, the notice,

---

[8] The court required objectors to file with the court and serve upon specified counsel no later than twenty-one calendar days prior to the hearing: (1) written notice of the intention to appear; (2) proof of membership in the class by way of brokerage statement, account statement, or other document evidencing ownership of Midstream units; (3) a detailed summary of any objection(s); (4) the grounds for or reasons why they desired to appear and be heard; and (5) all documents or writings they wanted the court to consider.

[9] This initial mailing was made to the 4,534 names and addresses on a mailing list A.B. Data compiled from a record owner list and a database of domestic brokerage firms, banks, financial institutions, and other nominee purchasers.

No. 16-20742

which was undated, mistakenly stated that the fairness hearing would be held on October 7, 2016, instead of the later amended date, October 14.

No objections were filed prior to September 23, 2016, the deadline to object to the settlement. One objection—Duggan's—was, however, filed about two weeks past the deadline on October 3, 2016.

This objection first asserted "good cause" for its untimeliness. Duggan stated that, although the notice was dated June 21, 2016, he did not receive it until "sometime in August." But he was not, he asserted, able to file his objection before the submission deadline of September 16th[10] because he had to go on "a long-planned European vacation" from September 7–21, 2016. Turning to the merits of his objection, Duggan argued that, in the context of mergers and securities class actions, disclosure-only settlements were often strike suits that "sold out" the class and were designed to accrue attorneys' fees. Thus, the district court should follow *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718 (7th Cir. 2016), and *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 894 (Del. Ch. 2016), and not approve the settlement— that is, unless the court found that "the supplemental disclosures address[ed] a *plainly material misrepresentation or omission*." And, he argued, neither the notice nor the supplemental disclosures asserted a plainly material misrepresentation or omission in the proxy statements.

On October 14, 2016, the district court conducted the fairness hearing. The hearing focused on Duggan's objection. The district court interrogated counsel at length about her concern that this was "a scenario where every single time there's . . . a merger on the table, that somebody is going to say that there hasn't been enough disclosed, and that's just sort of like the new game in

---

[10] If the court had not pushed the fairness hearing back a week in its subsequent order, this date would have been the submission deadline instead of September 23rd.

No. 16-20742

town, and . . . [whether there] should be attorneys' fees for disclosure" if that were the case. The court concluded, however, that "everybody believes that the attorneys' fees are fair and warranted in this particular case." The court then: approved the class action settlement, granted certification of the settlement class, awarded attorneys' fees and expenses of $575,000, and entered final judgment.

Duggan has timely appealed. He contends that we have jurisdiction to hear the merits of his appeal, arguing that he has Article III standing and that the untimeliness of his objection to the settlement did not constitute a waiver of his right to appeal. Turning to the merits of his objection, he argues that the district court erred in approving the settlement because: (1) it applied an incorrect legal standard; (2) it did not determine whether the supplemental disclosures provided a material benefit to the class, much less a plainly material benefit; (3) the supplemental disclosures were immaterial as a matter of law; (4) the court's finding that notice was constitutionally satisfactory was clearly erroneous; and (5) the court abused its discretion in awarding attorneys' fees because the settlement achieved no value for the class.

II.

A.

We begin by addressing the threshold issue of our appellate jurisdiction. Where, as here, an appellant is a "nonnamed member of a class certified under Federal Rule of Civil Procedure 23(b)(1)" who has not "intervene[d] in the litigation," the underlying question is "whether [the] appellant should be treated as a party for purposes of appealing a judgment when it was not a party in the proceedings below," not whether the appellant has Article III standing or prudential standing. *E.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 3–4, 6–7 (2002); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 77 (2d Cir. 2006) (citation omitted).

9

No. 16-20742

The Supreme Court has often underscored that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *E.g.*, *Devlin*, 536 U.S. at 7 (citation omitted); *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (citing FED. R. APP. P. 3(c) ("The notice of appeal shall specify the party or parties taking the appeal.")). But then the *Devlin* Court came along and concluded that it should carve out a limited exception to this well-established rule: "[N]onnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Devlin*, 536 U.S. at 14. Central to this appeal, however, the Court stated that its holding did not address a case in which an objector made an "untimely objection[]." *Id.* at 13. That situation "implicates basic concerns about waiver that should be easily addressable by courts of appeals." *Id.* We rise to the assigned task.

## B.

Duggan provides three reasons why his failure to comply with the notice does not constitute waiver of his appeal. First, even though he failed to file a notice of appearance in the district court, Duggan contends that this failure is not a waiver because the district court's notice stated that objectors need not appear at the fairness hearing and he did not appear. Second, *Devlin* did not create a jurisdictional rule forbidding the district court from considering his objection. And because the district court considered the merits of his objection, we may infer that: (1) Duggan satisfied the court's objection procedures; and (2) the court implicitly allowed the filing deadline to be extended. Finally, Duggan argues, Aron, the appellee, has waived his argument against Duggan's objection by failing to move to strike Duggan's objection in the district court.

Notwithstanding Duggan's arguments, we conclude that we lack jurisdiction over this appeal because Duggan, a nonparty, non-intervenor,

No. 16-20742

waived his right to appeal by filing an untimely, procedurally deficient[11] objection.

Turning to Duggan's arguments, the fact that the district court considered the merits of Duggan's objection before dismissing it does not cure the waiver problem for Duggan. The district court's June order stated that objectors who filed noncompliant objections would "be deemed to have waived [their] objection(s) (including any right of appeal) . . . unless otherwise ordered by the Court." The court, in approving the settlement agreement, did indeed interrogate the parties relating to the subject matter of Duggan's objection, but it neither indicated that it had accepted, approved, or waived the objection's procedural defects. It certainly did not hold that Duggan had good cause for failing to timely submit his objection. Moreover, waiver of appellate rights does not turn on how a district court chooses to address a late or deficient objection. As *Devlin* recognized, "waiver of objections below" is "the type of issue[] . . . typically addressed only by an appellate court." *Devlin*, 536 U.S. at 14. And the issue of waiver essentially turns on whether waiver "was made knowingly and voluntarily." *See United States v. Anglin*, 215 F.3d 1064, 1068 (9th Cir. 2000), *superseded on other grounds by United States v. Lo*, 839 F.3d 777 (9th Cir. 2016); *see also United States v. Walters*, 732 F.3d 489, 491 (5th Cir. 2013) (citation omitted). This test is easily applied here because Duggan duly received specific notice of the objection requirements, yet knowingly failed to comply with those requirements.

Furthermore, Duggan's argument that Aron was required to move the district court to strike Duggan's objection as a predicate to raising Duggan's procedural failures is unpersuasive. Duggan bases his argument upon the

---

[11] Duggan's objection was procedurally deficient because he did not file with the court, or serve upon counsel, written notice of his intent to appear at the fairness hearing.

11

No. 16-20742

unpublished case *Younce v. Barnhart*, 98 F. App'x 305 (5th Cir. 2004). In *Younce*, the magistrate judge ruled in favor of a Social Security claimant, Younce, reversing the Commissioner of Social Security's denial of benefits. *See id.* at 305–06. The district court rejected the magistrate judge's report and recommendation and, instead, affirmed the Commissioner's denial of benefits. *Id.* at 305. Younce appealed, arguing that the district court had "erred by considering the Commissioner's untimely objections to the magistrate's" report. *Id.* We held that Younce had "no basis to complain of the district court's [decision] . . . even though [the Commissioner's] objections were untimely" because the "court was free to reject the . . . report . . . in [the] absence of the filing of objections." *Id.* at 306. Duggan's argument hinges on our additional statement—made without any citation—that "if Younce felt aggrieved by the district court's acceptance of [late] objections . . . , his proper course was to file a motion to strike, a motion for an extension of time to file a counter written objection, or a motion for reconsideration." *Id.*

We find *Younce* completely inapposite. The case does not touch upon the rights of a nonparty to appeal the judgment of a district court. Nor does it in any other way address appellate jurisdiction as such. *Younce* addressed the plenary powers that district courts possess over their magistrate judges—i.e., whether a district court is constrained from exercising its power to reject a magistrate's report when the losing party before the magistrate fails to timely object to the report. *Id.* at 306. And its statement with respect to motions to strike seems gratuitous: the Commission likely did not have to file any objections at all given the fact that the district court did not accept, but instead rejected, the magistrate judge's report. *See id.*; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (setting out the rule raised in *Younce*: if parties do not object to a magistrate's report in a timely manner, this Court will apply plain error review to any of "the unobjected-to proposed

No. 16-20742

factual findings and legal conclusions accepted by the district court"), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Duggan attempts to bootstrap his jurisdictional untimeliness argument to a case based on irrelevant facts, irrelevant procedure, and irrelevant law.

In sum, Duggan's reasons for his several failures are lame. Duggan opted to go on vacation, which may well have seemed like a good idea at the time. He submitted his procedurally deficient objection, however, after he returned from vacation and ten days after the actual deadline. Such choices have consequences. *Devlin*'s specific exception for nonparty objectors is limited to those who have "who have objected in a timely manner." *Devlin*, 536 U.S. at 14. In short, what we have decided today is consistent with the application of *Devlin* to nonparty objectors.[12] Duggan fails to qualify for the *Devlin* exception, and, because Duggan is also a nonparty to the judgment below, we have no appellate jurisdiction over his claims.

_____

[12] *E.g.*, *Abeyta v. City of Albuquerque*, 664 F.3d 792, 796 (10th Cir. 2011) (holding "that the *Devlin* exception . . . will only apply where the nonparty has a unique interest in the litigation and becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal"); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F.3d 913, 916–17 (8th Cir. 2011) ("A shareholder—or an unnamed class member for that matter—must file a timely objection pursuant to district court procedure, or else he loses any right he would have otherwise had to appeal a settlement agreement."); *In re Plastics Additives Antitrust Litig.*, No. 08-3358, 2009 WL 405522, at *1 (3d Cir. Feb. 19, 2009) ("For an unnamed class member to have standing to appeal a decision in a class action, he or she must have properly raised objections to that decision during the pendency of the litigation."); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1251, 1257–58 (10th Cir. 2004) (holding that a class member waived his right to appeal because he did not strictly comply with the objection procedure laid out by the district court); *Grinberg v. Maria's Holding Corp.*, No. B244535, 2013 WL 6061764, at *6 & n.9 (Cal. Ct. App. Nov. 18, 2013) (looking to *Integra* and *UnitedHealth Grp.* in holding that it had no appellate jurisdiction over an appeal to a settlement brought by an unnamed class member who filed an untimely objection and was not permitted to intervene); *Velma-Alma Indep. Sch. Dist. No. 15 v. Texaco, Inc.*, 162 P.3d 238, 242 (Okla. Civ. App. 2007) ("*Devlin* and *Integra* make plain that to preserve an objection to a class settlement agreement, and to be considered a party, *for purposes of appeal*, the objecting party must present his objection at the settlement fairness hearing by following whatever directions are given in the notice to secure the right to present those objections at the hearing.").

13

No. 16-20742

III.

For the reasons we have set out above, this appeal, for lack of appellate jurisdiction, is DISMISSED.